No. 19-3290

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

CITY OF CHICAGO,

Plaintiff-Appellee,

v.

WILLIAM P. BARR, ATTORNEY
GENERAL OF THE UNITED STATES,

Defendant-Appellant.

On Appeal from the United States District Court for the
Northern District of Illinois, No. 18-cv-06859 (Leinenweber, J.)

BRIEF FOR APPELLANT

JOSEPH H. HUNT
  *Assistant Attorney General*

JOHN R. LAUSCH, JR.
  *United States Attorney*

MARK B. STERN
DANIEL TENNY
BRAD HINSHELWOOD
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7256*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-7823*

# TABLE OF CONTENTS

**<u>Page</u>**

INTRODUCTION ........................................................................................................1

STATEMENT OF JURISDICTION ........................................................................2

STATEMENT OF THE ISSUES...............................................................................2

STATEMENT OF THE CASE ..................................................................................3

      A.     The Immigration and Nationality Act ...........................................3

      B.     The Byrne JAG Program .................................................................4

      C.     Prior Proceedings..............................................................................8

SUMMARY OF ARGUMENT................................................................................12

STANDARD OF REVIEW .....................................................................................15

ARGUMENT .............................................................................................................15

I.      This Court Has Appellate Jurisdiction Over The Entire Appeal........................15

II.     The §§ 1373 and 1644 Certification Conditions for FY 2018, and
       §§ 1373 and 1644 Themselves, Are Both Valid ......................................20

III.    The Other Four FY 2018 Conditions at Issue Are Valid....................................21

IV.    The District Court Improperly Extended the Injunction to
       Entities Other Than Chicago.......................................................................25

CONCLUSION ........................................................................................................26

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

CIRCUIT RULE 30(d) STATEMENT

STATUTORY ADDENDUM

SHORT APPENDIX

# TABLE OF AUTHORITIES

**Cases:**                                                                                          <u>**Page(s)**</u>

*ADT Sec. Servs., Inc. v. Lisle-Woodridge Fire Prot. Dist.*,
   672 F.3d 492 (7th Cir. 2012) ...................................................................................15

*City of Chicago v. Sessions*,
   888 F.3d 272 (7th Cir. 2018), *vacated in part*, No. 17-2991,
   2018 WL 4268817 (7th Cir. June 4, 2018) ................................................... 6, 10

*City of Los Angeles v. Barr*,
   941 F.3d 931 (9th Cir. 2019) ............................................................................ 21, 22

*Coopers & Lybrand v. Livesay*,
   437 U.S. 463 (1978) ..............................................................................................16

*India Breweries, Inc. v. Miller Brewing Co.*,
   612 F.3d 651 (7th Cir. 2010) ........................................................................... 17, 20

*ITOFCA, Inc. v. MegaTrans Logistics, Inc.*,
   235 F.3d 360 (7th Cir. 2000) ........................................................................17, 18, 19

*JTC Petroleum Co. v. Piasa Motor Fuels, Inc.*,
   190 F.3d 775 (7th Cir. 1999) ...............................................................................16

*Lacy v. Cook County*,
   897 F.3d 847 (7th Cir. 2018) ...............................................................................15

*Sims v. EGA Prods., Inc.*,
   475 F.3d 865 (7th Cir. 2007) ...............................................................................19

*South Dakota v. Dole*,
   483 U.S. 203 (1987) ..............................................................................................21

*Union Oil Co. of Cal. v. John Brown E&C*,
   121 F.3d 305 (7th Cir. 1997) ........................................................................16, 17, 19

*United States v. City of Milwaukee*,
   144 F.3d 524 (7th Cir. 1998) ...............................................................................19

*West v. Louisville Gas & Elec. Co.*,
  920 F.3d 499 (7th Cir. 2019) ............................................................17, 19, 20

**Statutes:**

8 U.S.C. § 1226(a) ............................................................................ 7, 22

8 U.S.C. § 1226(c) ............................................................................ 7, 22

8 U.S.C. § 1231 ....................................................................................3

8 U.S.C. § 1231(a) ................................................................................7

8 U.S.C. § 1324 ..................................................................8, 9, 11, 18

8 U.S.C. § 1324(a) ..............................................................................24

8 U.S.C. § 1357(a) ......................................................................... 7, 22

8 U.S.C. § 1366 ....................................................................................7

8 U.S.C. § 1366(1) ...............................................................................7

8 U.S.C. § 1366(3) ...............................................................................7

8 U.S.C. § 1373....................................... 2, 3, 4, 6, 7, 8, 13, 15, 16, 17, 18

8 U.S.C. § 1644............................................ 2, 3, 4, 7, 8, 13, 15, 16, 17, 18

28 U.S.C. § 1291 ............................................................................ 2, 15

28 U.S.C. § 1292(a)(1) ..............................................................2, 12, 15, 19

28 U.S.C. § 1331 ..................................................................................2

34 U.S.C. § 10102(a)(2) ...............................................................1, 9, 14, 23

34 U.S.C. § 10102(a)(4) ...............................................................1, 9, 14, 23

34 U.S.C. § 10102(a)(6) .................................................................5, 14, 21

34 U.S.C. § 10153(A) .................................................................5

34 U.S.C. § 10153(A)(4) ......................................................... 5, 22

34 U.S.C. § 10153(A)(5)(C) ........................................................5

34 U.S.C. § 10153(A)(5)(D) ..................................................... 2, 9

**Regulation:**

28 C.F.R. § 66.12(a) (2014) .......................................................22

**Rule:**

Fed. R. App. P. 4(a)(1)(B) ..........................................................2

**Other Authority:**

*Liaison*, Merriam-Webster.com, https://www.merriam-
webster.com/dictionary/liaison (last visited Dec. 26, 2019) .......................................24

# INTRODUCTION

This case is the latest chapter in the City of Chicago's efforts to simultaneously accept federal law enforcement grants, yet maintain local policies that frustrate federal immigration enforcement.  As with the consolidated case before this Court, this case involves conditions that the Department of Justice has placed on the receipt of law-enforcement grants under the Edward Byrne Memorial Justice Assistance Grant (Byrne JAG), though the district court's judgment in this case pertains to a different fiscal year (2018) and extends its injunction indefinitely.  In this iteration of the dispute, in addition to seeking to withhold basic cooperation of the sort at issue in the prior case, Chicago contends that it is entitled to receive a federal law-enforcement grant despite asserting a right to publicly disclose sensitive federal law enforcement information  communicated to the City in confidence.

Chicago's efforts to avoid these grant conditions (and to declare unconstitutional two Acts of Congress) are in error for many of the same reasons discussed in our briefing in the consolidated case.  Moreover, the condition concerning public disclosure of sensitive information is separately authorized by 34 U.S.C. § 10102(a)(2) and (4), which give authority to the relevant Department official to "maintain liaison" with local law enforcement.  The district court's judgment should therefore be reversed.  And in any event, for the reasons discussed in the consolidated case, the district court erred in granting nationwide injunctive relief instead of limiting its injunction solely to Chicago.

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1331 over the federal claims asserted here.  The district court entered final judgment on October 10, 2019, granting plaintiff a permanent injunction and declaratory judgment on various issues, and disposing of all claims in the case.  Short Appendix (SA) 48-52.  The government timely filed its notice of appeal on November 18, 2019.  *See* Fed. R. App. P. 4(a)(1)(B); Dkt. No. 87.  As explained more fully below, this Court has jurisdiction under 28 U.S.C. § 1291 because the district court's judgment is a final judgment.  In the alternative, this Court has jurisdiction over the appeal from the permanent injunction under 28 U.S.C. § 1292(a)(1).

## STATEMENT OF THE ISSUES

1.     Whether this Court has appellate jurisdiction over the full appeal, or solely over the injunctive portion of the district court's judgment.

2.     Whether the district court erred in holding that 8 U.S.C. §§ 1373 and 1644 are not "applicable federal laws" with which Byrne JAG applicants must certify compliance under 34 U.S.C. § 10153(A)(5)(D).

3.     Whether the district court erred in holding that four additional conditions exceeded the Department's statutory authority.

4.     Whether the district court at a minimum erred in extending the injunction beyond Chicago to preclude the Department from enforcing the conditions against non-plaintiffs.

2

## STATEMENT OF THE CASE

Much of the relevant background for this appeal can be found in the government's brief in the consolidated case, *Chicago v. Barr*, No. 18-2885 (7th Cir.), concerning Fiscal Year 2017. We therefore provide only a summary of that background, supplementing where necessary with additional materials specifically relevant to this appeal.

### A.    The Immigration and Nationality Act

Under the Immigration and Nationality Act, the federal government has broad powers over the removal of aliens. Congress has provided that aliens in state criminal custody generally cannot be removed until they are released, yet has simultaneously required the Department of Homeland Security (DHS) to detain and remove certain categories of aliens within 90 days of such release. *See* 8 U.S.C. § 1231. Congress designed this system based on the premise that states and localities would not interfere with the federal government's detention and removal of aliens once state custody has ended. *See* Appellant Br. in No. 18-2885 ("FY 2017 Opening Br."), at 5-6.

Against this backdrop, Congress has enacted two related statutes that seek to ensure that no obstacles will prevent the sharing of information between federal, state, and local governments that is crucial to operation of the immigration laws: 8 U.S.C. §§ 1373 and 1644.

The first of these, section 1373, has three parts. Section 1373(a) provides that "State" and "local government entit[ies] or official[s]" "may not prohibit, or in any way

restrict," any government entity or official from sharing "information regarding the citizenship or immigration status, lawful or unlawful, of any individual" with federal immigration authorities. Section 1373(b) provides that "no person or agency may prohibit, or in any way restrict, a Federal, State, or local government entity from" "[s]ending" to or "requesting or receiving" from federal immigration authorities "information regarding the immigration status, lawful or unlawful, of any individual," "[m]aintaining" such information, or "[e]xchanging" such information with "any other . . . government entity." Section 1373(c) provides, in turn, that federal immigration authorities "shall respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information."

The other statute, section 1644, is quite similar to section 1373(b). It states that "no State or local government entity may be prohibited, or in any way restricted, from sending to or receiving from" federal immigration authorities "information regarding the immigration status, lawful or unlawful, of an alien in the United States." 8 U.S.C. § 1644. Like section 1373, section 1644 expressly overrides any contrary provisions "of Federal, State, or local law." *Id.*; *see id.* § 1373(a), (b).

### B. The Byrne JAG Program

**1.** As discussed more fully in the consolidated case, the Department of Justice administers the Byrne JAG program through the Office of Justice Programs (OJP), and

that program provides criminal justice grants to states and localities.  FY 2017 Opening Br. 7-8.  States and localities that seek grant funding must submit an application "in such form as the Attorney General may require."  34 U.S.C. § 10153(A).  Among other requirements, applicants must certify that they "will comply with" the Byrne JAG statute "and all other applicable Federal laws," that "for each fiscal year covered by an application, the[y] shall maintain and report such data, records, and information (programmatic and financial) as the Attorney General may reasonably require," and that "there has been appropriate coordination with affected agencies."  *Id.* § 10153(A)(4), (5)(C), (D).

**2.**    In soliciting Byrne JAG applications for FY 2017, OJP specified that applicants would be required to certify their compliance with § 1373 in connection with their applications (the "§ 1373 certification" condition).  FY 2017 Opening Br. 9.  The Department also added two related conditions, imposed by the Assistant Attorney General for OJP pursuant to his statutory powers, which "includ[e] placing special conditions on all grants, and determining priority purposes for formula grants."  34 U.S.C. § 10102(a)(6).

One of these two conditions—the "notice" condition—required that, with respect to any "program or activity" funded by the grant, the grantee must have a policy designed to ensure that, when DHS provides a formal written request for advance notice of the scheduled release date and time for a particular alien at a particular facility, the facility will "as early as practicable" provide notice to DHS.  The other—the

"access" condition—required that, with respect to any "program or activity" funded by the grant, the grantee must have a policy providing that federal agents will be "given access" to correctional facilities for the purpose of meeting with aliens and to "inquire as to such individuals' right to be or remain in the United States." The Acting Assistant Attorney General for OJP announced that compliance with these special conditions also would "be an authorized and priority purpose of the award." Like the § 1373 certification condition, these two conditions are designed to ensure that the activities of federal law-enforcement grant recipients do not impair the federal government's ability to ensure public safety and the rule of law by detaining and removing aliens upon their release from local criminal custody. *See* FY 2017 Opening Br. 9-10.

Chicago wanted to accept Byrne JAG funds for FY 2017, but did not want to comply with these conditions, and it filed a lawsuit seeking to enjoin their enforcement. After this Court affirmed a preliminary injunction against the notice and access conditions, *City of Chicago v. Sessions*, 888 F.3d 272 (7th Cir. 2018), *vacated in part*, No. 17-2991, 2018 WL 4268817 (7th Cir. June 4, 2018), that litigation culminated in district court in a final judgment including (1) an injunction barring the three conditions nationwide, and (2) a declaratory judgment stating that the three conditions exceeded the Attorney General's authority and that 8 U.S.C. § 1373 was unconstitutional. That judgment is currently on appeal in the consolidated case. *See City of Chicago v. Barr*, No. 18-2885 (7th Cir.) (argued Apr. 10, 2019).

**3.**  In the midst of this litigation over FY 2017—litigation that spanned over a year—OJP initiated the process for FY 2018 awards.  As part of that process, OJP sought to impose a total of six conditions that are at issue here.

Three of those—the notice, access, and § 1373 compliance conditions—were very similar to what had been imposed (and litigated) regarding FY 2017.  *Compare* Appendix (A) 133-37 (FY 2017 Award), *with* A158-60, A162-64 (FY 2018 Award).  And a fourth (the "§ 1644 condition") merely added a reference to 8 U.S.C. § 1644 in addition to § 1373.  A158-60.

A fifth condition, the "additional certification condition," required that jurisdictions certify that they do not have laws or policies that would "impede" DHS's "exercise of authority under 8 U.S.C. § 1357(a)" or "impede the exercise . . . of authority relating to 8 U.S.C. § 1226(a) or (c), 8 U.S.C. § 1231(a), or 8 U.S.C. § 1366(1) or (3)." A172.  The referenced federal statutes relate to the powers and responsibilities of federal officials with regard to the investigation, apprehension, and detention of aliens, *see* 8 U.S.C. § 1226(a), (c); *id.* § 1231(a), and to an annual report to Congress, *see id.* § 1366.  For purposes of this condition, "impede" refers to actions, laws, policies, or practices that are either "designed to prevent or to significantly delay or complicate," or have that effect.  A162.

Finally, a sixth condition, the "public disclosure" condition, sought to prevent grant recipients from improperly disclosing sensitive federal law-enforcement information.  That condition specifically stated that "[c]onsistent with the purposes and

objectives of" various laws, including 8 U.S.C. § 1324 and 18 U.S.C. chs. 1, 49, and 227, grant recipients could not make a public disclosure "of any federal law enforcement information" in an attempt to conceal, harbor, or shield a "fugitive from justice . . . or any alien who has come to, entered, or remains in the United States in violation of 8 U.S.C. ch. 12 . . . ." A161. The referenced federal laws are 8 U.S.C. § 1324, which includes a bar on "conceal[ing], harbor[ing], or shield[ing] from detection" unlawfully present aliens, *id.* § 1324(a)(iii), and various provisions of the criminal code.

Although OJP sought to impose these six conditions for FY 2018, it recognized that the district court's reasoning in the FY 2017 case called most of them into question. Accordingly, OJP announced that all of the above conditions, aside from the public disclosure condition, would not presently be enforced against Chicago. *See* Dkt. No. 44-1, Ex. D, at 2. OJP issued a FY 2018 Byrne JAG award to Chicago in November 2018. A143.

## C.    Prior Proceedings

As it had done regarding the FY 2017 program, Chicago filed suit in the Northern District of Illinois and challenged aspects of the FY 2018 program. In its Amended Complaint, Chicago argued that the six above-mentioned conditions were *ultra vires*, A38-44, and arbitrary and capricious, A53-54, and that the imposition of all six also were unconstitutional under separation of powers principles, A44-46, or under the Spending Clause, A46-49. Chicago also contended that 8 U.S.C. §§ 1373 and 1644 were unconstitutional under the Tenth Amendment, and that Chicago's "Welcoming

8

City Ordinance" in any event complied with those two statutes as well as with 8 U.S.C. § 1324. A49-53. Chicago sought both declaratory and injunctive relief. A45.

The government moved to partially dismiss the compliant, while Chicago cross-moved for partial summary judgment. The district court largely granted Chicago's motion and denied the government's.

The court invalidated five of the six conditions based largely on its prior reasoning. Three of those—the notice, access, and § 1373 compliance conditions—were functionally identical to analogous conditions from FY 2017. And since § 1644 is materially identical to § 1373, the § 1644 compliance condition would be governed by any ruling regarding the § 1373 compliance condition. The additional certification condition, which relied on the same "special conditions" authority as the notice and access conditions, was likewise invalidated based on prior analysis of that authority (along with the district court's rejection of arguments the government had not made about whether the condition was justified under 34 U.S.C. § 10153(A)(5)(D)). SA 27-31, 35-37.

As to the public disclosure condition, the court again rejected the government's reliance on the "special conditions" authority. SA 35-37. The court additionally rejected the government's position that this condition could be justified by 34 U.S.C. § 10102(a)(2) and (4), which provide that the Assistant Attorney General for OJP "shall . . . maintain liaison with the executive and judicial branches of the Federal and State governments in matters relating to criminal justice" and "maintain liaison with . . .

State and local governments . . . relating to criminal justice." The district court thought this did not provide a relevant "delegation of authority" but was instead better "read as an instruction for the AAG to maintain bilateral communications or act as a point of contact with state and local governments." SA 33. The court also held that the public disclosure condition goes beyond the authority that § 10102(a)(2) and (4) would authorize in any event, because it is not limited to "fugitives of justice." SA 34. This broad condition, the court held, would be "up for interpretation by the AAG," and "[s]uch sweeping authority is hardly implicit in the AAG's responsibility to communicate with and disseminate criminal justice information to various state and local entities." *Id.* Finally, the court reasoned that, given the "'ministerial nature'" of the powers described in § 10102 and the formula nature of the Byrne JAG program, "it would be 'inconceivable' that Congress would have anticipated that the AAG could abrogate that distribution scheme and deny funds to localities based on a new condition related to harboring aliens." SA 35 (quoting *City of Chicago v. Sessions*, 888 F.3d at 287).

Based on all the above conclusions, the district court granted summary judgment on Chicago's counts contending that the six conditions are *ultra vires* under the APA and violated the separation of powers, and granted summary judgment on Chicago's claim that § 1373 and § 1644 are facially unconstitutional. In light of its grant of summary judgment on these counts, the court dismissed three of Chicago's other counts as moot. SA 47. The court also dismissed with prejudice a moot count challenging the appointment of Matthew Whitaker as Acting Attorney General. SA 11.

The district court declined to dismiss Chicago's claim seeking a declaratory judgment that its laws and policies comply with 8 U.S.C. § 1324. The government had contended in its motion to dismiss that the claim was unripe, yet the district court instead found that Chicago had alleged sufficient facts to show a justiciable threat. But because Chicago had not separately sought judgment on this claim, the court did not grant any judgment on it in Chicago's favor, and it asked Chicago to advise it on how it wished to proceed. SA 11-17, 47.

Chicago subsequently agreed to dismiss the count without prejudice. SA 51-52. The district court therefore entered final judgment, issuing a nationwide permanent injunction against the conditions or "materially identical conditions" for FY 2018 and all future grant years,[1] and entering declaratory relief stating that § 1373 and § 1644 are facially unconstitutional, that imposition of the conditions exceeded the Attorney General's statutory authority, and that imposition of the conditions "violated the constitutional principle of separation of powers." SA 49-50. The district court stayed the nationwide effect of its injunction pending this Court's decision in the consolidated case, which presents an identical question about the proper scope of relief. SA 51.

The government noticed an appeal. Soon thereafter, this Court issued an order suggesting that the district court's judgment might not be "final" because one of the

---

[1] The court's earlier opinion had explained that in the absence of further direction from this Court, the district court was unwilling to "depart from its earlier analysis" on the propriety of granting nationwide relief. SA 46.

claims was dismissed without prejudice. The Court therefore asked the government to clarify whether it was appealing only the grants of injunctive relief, or if it was instead appealing additional matters. The government's response explained that it was also appealing the grants of declaratory relief, and advised that it would address appellate jurisdiction in its opening brief.

## SUMMARY OF ARGUMENT

This case concerns six conditions attached to the FY 2018 Byrne JAG program, and two related statutory provisions. The justifications for these conditions and provisions overlap to a significant extent with the issues before this Court in the FY 2017 case, and to a large extent the district court here erred for the same reasons it erred in the earlier litigation. The district court also committed additional errors specific to this case.

**1.** As an initial matter, this Court has appellate jurisdiction. As this Court recognized, 28 U.S.C. § 1292(a)(1) would provide appellate jurisdiction over the grants of injunctive relief if there were no final judgment, and so the only jurisdictional question presented is whether the Court also has jurisdiction over the grants of declaratory relief. It does, because the district court's judgment was final—it disposed of every claim in the case.

The dismissal without prejudice of a single claim, unrelated to the ones at issue on appeal, does not deprive the judgment of finality. The considerations that led this Court in some prior cases to hold that dismissal without prejudice of certain claims

12

deprived a judgment of finality lead to the opposite conclusion here.  Resolving all claims presented here would not give rise to piecemeal appeals; rather, failure to address the district court's declaratory judgment would give rise to a risk of piecemeal appeals, because the declaratory judgment is related to the injunctive relief over which this Court has appellate jurisdiction and not to the claim that was dismissed without prejudice.

Moreover, the defendants' position had always been that the claim was unripe, and thus should be dismissed without prejudice, and plaintiff ultimately agreed to that disposition.  It makes no sense to force a defendant to forgo its preferred resolution of an unripe claim on pain of being stuck with what may be perpetually unappealable declaratory judgments—the result that would obtain if the district court's judgment were deemed non final.

**2.**  As the district court recognized, four of the conditions at issue—the section 1373 and 1644 compliance conditions, the notice condition, and the access condition—are very similar to the three conditions at issue in the FY 2017 case.  The district court erred in enjoining those FY 2018 conditions for the same reasons it erred in enjoining the equivalent conditions in FY 2017.

The district court was doubly mistaken in concluding that 8 U.S.C. §§ 1373 and 1644 are unconstitutional.  Those conditions are lawfully applied here as grant conditions, and the district court should not have reached out to address the constitutionality of Acts of Congress.  And in any event, the district court's analysis is mistaken on its own terms.

13

**3.** The district court erred in enjoining the additional certification and public disclosure conditions because it applied the same mistaken understanding of 34 U.S.C. § 10102(a)(6) that it had articulated in the FY 2017 case. That statute authorizes the Assistant Attorney General for OJP to place "special conditions on all grants, and determin[e] priority purposes for formula grants," 34 U.S.C. § 10102(a)(6), and as we explained in the FY 2017 case, this power authorizes the kinds of conditions at issue here.

The public disclosure condition highlights the extreme nature of Chicago's position. Congress did not require the Department of Justice to provide law-enforcement funding to localities that insist on publicly disclosing sensitive law-enforcement information that the federal government provides to local authorities. In addition to being a reasonable exercise of the authority previously discussed, the public disclosure condition is separately justified by provisions that authorize the Assistant Attorney General to "maintain liaison" with (inter alia) state and local governments in matters relating to "criminal justice." 34 U.S.C. § 10102(a)(2), (4).

**4.** As in the FY 2017 case, the district court issued a permanent injunction that applied nationwide. This was erroneous for the same reason it was erroneous in the earlier case, and so at minimum the injunction should be reversed to the extent that it applied to any entities besides Chicago.

14

## STANDARD OF REVIEW

This Court reviews "de novo the district court's decision to grant summary judgment." *ADT Sec. Servs., Inc. v. Lisle-Woodridge Fire Prot. Dist.*, 672 F.3d 492, 498 (7th Cir. 2012). This Court reviews the "grant of injunctive relief for an abuse of discretion," but reviews the district court's "underlying legal conclusions de novo." *Lacy v. Cook County*, 897 F.3d 847, 867 (7th Cir. 2018). "Where a permanent injunction has been issued," this Court determines, among other things, whether the plaintiff has shown "success, as opposed to a likelihood of success, on the merits." *ADT Sec. Servs.*, 672 F.3d at 498.

## ARGUMENT

## I.     This Court Has Appellate Jurisdiction Over The Entire Appeal

As this Court's earlier order recognized, this Court plainly has appellate jurisdiction to review the district court's issuance of an injunction, because if the district court has not entered a final judgment reviewable under 28 U.S.C. § 1291, an injunctive order would be subject to review under 28 U.S.C. § 1292(a)(1). The only question is thus whether this Court also has jurisdiction over the non-injunctive portions of the district court's Final Judgment and Order—that is, the declaratory judgment that 8 U.S.C. §§ 1373 and 1644 are unconstitutional. Appellate jurisdiction exists under 28 U.S.C. § 1291, because the district court has issued a final judgment.

"Whether a decision is final for purposes of § 1291 generally depends on whether the decision by the district court . . . 'ends the litigation on the merits and leaves nothing

15

for the court to do but execute the judgment.'" *Union Oil Co. of Cal. v. John Brown E&C*, 121 F.3d 305, 309 (7th Cir. 1997) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467 (1978)).  That is the case here: no dispute remains in the district court, and this Court should therefore consider the entirety of the judgment on appeal.  Although, in some cases, a final order entered after dismissing all (or even some) claims without prejudice "does not terminate the litigation in the district court in any realistic sense," and therefore "is not a final decision within the meaning of 28 U.S.C. § 1291," *JTC Petroleum Co. v. Piasa Motor Fuels, Inc.*, 190 F.3d 775, 776 (7th Cir. 1999), as discussed below, the considerations that have led this Court to conclude that jurisdiction is lacking in prior cases cut in the opposite direction here, confirming that there is appellate jurisdiction to review the district court's entire judgment.

**A.**  The district court's final judgment resolved all the live controversies between the parties regarding the FY 2018 Byrne JAG conditions.  The court's opinion concluded that the challenged conditions were issued without statutory authority, SA 23-37, and that sections 1373 and 1644 violate the anti-commandeering doctrine, making unlawful the conditions requiring grant recipients to certify compliance with those statutory provisions, SA 25-27.  The judgment therefore (1) declared 8 U.S.C. §§ 1373 and 1644 unconstitutional, (2) declared that the Attorney General exceeded his authority in imposing the challenged conditions, and (3) permanently enjoined the government from imposing the challenged conditions against any grant recipient in FY 2018 and all future years.  SA 49-51.  The court had dismissed the remaining claims

16

related to the Byrne JAG program and to 8 U.S.C. §§ 1373 and 1644 as moot in light of its disposition of these claims. SA 47.

That otherwise-final judgment is not rendered non-final simply because Count VI of the complaint was dismissed without prejudice by stipulation of the parties. Indeed, this case does not present any of the concerns that has led this Court in the past to treat dismissals without prejudice as inadequate to dispose of a claim for purposes of a final judgment. To the contrary, the considerations this Court has previously treated as relevant counsel in favor of appellate jurisdiction over the entire judgment in this case.

In prior cases, dismissal without prejudice of certain claims gave rise to the opportunity for piecemeal appeals on the same issues, because the parties sought to create appellate jurisdiction over certain claims in anticipation of relying on this Court's ruling on those claims to resolve other, related claims. Thus, finality was lacking where the parties conditionally agreed to dismiss claims based on the outcome of an appeal. *See, e.g.*, *West v. Louisville Gas & Elec. Co.*, 920 F.3d 499, 502-05 (7th Cir. 2019); *Union Oil*, 121 F.3d at 308-10. And finality was similarly lacking where the parties sought appellate review of the plaintiff's claims after the defendant's counterclaims were dismissed without prejudice. *See, e.g.*, *ITOFCA, Inc. v. MegaTrans Logistics, Inc.*, 235 F.3d 360, 362-64 (7th Cir. 2000); *India Breweries, Inc. v. Miller Brewing Co.*, 612 F.3d 651, 657 (7th Cir. 2010). In each case, the parties sought to create appellate jurisdiction over an issue while preserving the right to revive a related claim at some point in the future and

17

thus "develop[] the same issue and hav[e] it adjudicated (at the same time) at the district court level." *ITOFCA*, 235 F.3d at 364.

Those concerns are not present here. Count VI of the complaint raised a separate claim regarding 8 U.S.C. § 1324 that did not depend on the resolution of the issues presented by the other counts of the complaint. Indeed, the sole challenged condition that references Section 1324 does so only to establish that provision's *inapplicability* to condition requirements. SA 7 (public disclosure condition prohibits certain disclosures "*without regard* to whether such disclosure would constitute (or could form a predicate for) a violation of . . . 8 U.S.C. 1324(a)") (emphasis added).

Because the issues on appeal—that is, the lawfulness of six FY 2018 Byrne JAG conditions and the constitutionality of 8 U.S.C. §§ 1373 and 1644—are unrelated to plaintiff's compliance with 8 U.S.C. § 1324, allowing this appeal to go forward in its entirety generates no risk of generating parallel or redundant litigation in the trial and appellate courts. Because the claims are unrelated, there is likewise no prospect that the claim would be renewed in this case contingent on the Court's decision in this appeal. The government agreed to dismissal without prejudice because it would bring this case to a close on the terms that the government sought, since the government's position is that the claim was not ripe in any event and thus should be dismissed for that reason, without prejudice to filing a new complaint raising the same substantive arguments if circumstances change. The government should not be forced to refuse to accept the dismissal without prejudice that it originally sought, and insist on litigating the claim on

18

the merits, in order to obtain appellate review of other portions of the district court's order.

To hold otherwise would create precisely the risk of piecemeal appeals that this Court's precedents on this issue have sought to prevent.  *See, e.g.*, *West*, 920 F.3d at 503. Because this Court indisputably has appellate jurisdiction over the grants of injunctive relief, *see* 28 U.S.C. § 1292(a)(1), to deny jurisdiction over the declaratory relief would be to split into two appellate proceedings "what is, in practical consequence, but a single controversy," *Union Oil*, 121 F.3d at 310.  That cannot be what the statute requires.  To the contrary, "Section 1291 reflects a strong preference for resolving all disputed issues as to all parties in one appeal, to the extent possible." *West*, 920 F.3d at 503; *see also ITOFCA*, 235 F.3d at 364 ("The finality requirement of § 1291 should be applied practically rather than technically."); *Sims v. EGA Prods., Inc.*, 475 F.3d 865, 868 (7th Cir. 2007) (explaining that "[i]n evaluating 'finality,' … it is essential to look at the whole picture"); *United States v. City of Milwaukee*, 144 F.3d 524, 531 (7th Cir. 1998) (noting that the Court "do[es] not accord talismanic importance to the fact that the district court denied" a motion "without prejudice" and instead "look[s] to the totality of the circumstances in determining" whether an order in a "particular case is not final").

**B.**  If this Court concludes that jurisdiction would be lacking over the non-injunctive portions of the district court's judgment unless plaintiff takes further action to disavow proceeding on Count VI, plaintiff should be required to make an express decision on this point.  Such a course of action would allow plaintiff to choose between

19

having a final declaratory judgment, on the one hand, or preserving the option of reviving its Section 1324 claim, on the other. If plaintiff elects in its briefing or at oral argument to "disclaim[] the right to resurrect" its claim, that would remove any doubt about whether the entirety of the judgment is final and appealable. *West*, 920 F.3d at 506; *accord India Breweries*, 612 F.3d at 657-58.

## II. The §§ 1373 and 1644 Certification Conditions for FY 2018, and §§ 1373 and 1644 Themselves, Are Both Valid

The government's brief in the consolidated case explained why the § 1373 condition was valid as a statutory matter, irrespective of § 1373's stand-alone constitutionality under the Tenth Amendment or separation of powers principles. *See* FY 2017 Opening Br. 20-23. That brief also explained why § 1373 was in any event constitutional. *Id.* at 24-31. Those arguments apply to the same extent in this consolidated appeal.

They also apply in this appeal to Chicago's challenge to the § 1644 condition, as well as to Chicago's attack on § 1644 itself. As the district court recognized, § 1644 is "materially identical" to § 1373, and the district court invalidated § 1644 and its associated condition by simply incorporating its prior reasoning regarding § 1373. *See* SA 24-27. The district court therefore erred in enjoining the § 1644 condition.

The district court's declaratory judgment with regard to these statutes should likewise be vacated. The dispute regarding these provisions arose only when they were attached as grant conditions, and the constitutionality of these provisions in this context

20

is governed by the Spending Clause (which the grant conditions plainly satisfy).  *See South Dakota v. Dole*, 483 U.S. 203, 210 (1987).  Under basic principles of constitutional avoidance, this case presents no basis for addressing the constitutionality of Acts of Congress as hypothetically applied in some other setting.  In particular, facial invalidation is inappropriate where, as here, the statutes can constitutionally be enforced as grant conditions, even apart from the government's arguments that the statutes are constitutional as a stand-alone matter.

## III.   The Other Four FY 2018 Conditions at Issue Are Valid

**A.**  In the consolidated case, the government explained that the FY 2017 notice and access conditions were valid under 34 U.S.C. § 10102(a)(6).  An amendment to that statute in 2006 makes clear that the Assistant Attorney General for OJP has power to place "*special conditions* on all grants, and determin[e] *priority purposes* for formula grants." 34 U.S.C. § 10102(a)(6) (emphases added).  As the Ninth Circuit recently recognized, no amendment to the statute would have been necessary to permit the Assistant Attorney General to exercise authority that he already possesses (or that has already been delegated to him), so reading this statute as adding nothing to the Assistant Attorney General's powers "deprives the 2006 amendment to § 10102(a)(6) of any meaning."  *City of Los Angeles v. Barr*, 941 F.3d 931, 939 (9th Cir. 2019).  The Ninth Circuit's reasoning in this regard, which postdated the district court's decision and this Court's prior decision in the preliminary-injunction appeal, is persuasive and should be followed.

The Ninth Circuit erred, however, in concluding that the "special conditions" authority did not encompass the types of conditions at issue here. The Ninth Circuit concluded that "special conditions" was a term of art by noting that it had been used in a since-superseded regulation targeted at "high-risk" grantees. *Los Angeles*, 941 F.3d at 940-42. But the regulation cited as support for this supposed term of art, 28 C.F.R. § 66.12(a), had been in place since 1988. Just as Congress would not have enacted an amendment to the statute to confirm authority that OJP already possessed, Congress would have had no basis for providing additional statutory authority for conditions like the ones imposed under a regulation that existed, apparently unchallenged, under the authority that predated the 2006 enactment.

For these reasons, and those given in our briefing in the consolidated case, the exercise of the "special conditions" authority in this case should be upheld. The same logic applies to the additional certification condition, which requires grant recipients to certify that they are not actively impeding DHS's enforcement of various statutory provisions (such as provisions governing the arrest and detention of aliens, including criminal aliens, *see* 8 U.S.C. §§ 1226(a),(c) & 1357(a)). As with the notice and access provisions, this condition ensures appropriate coordination between law enforcement entities (and it also involves the provision of programmatic information to the extent that any active impeding takes the form of withholding information, *see* 34 U.S.C. § 10153(A)(4)). It should therefore be upheld.

**B.**   The error in the district court's limited reading of OJP's authority is underscored by its rejection of the public disclosure condition, which requires grant recipients to agree not to publicly disclose sensitive federal law enforcement information in an attempt to "conceal, harbor, or shield from detection" either a fugitive from justice, or certain categories of aliens who have violated immigration laws. By refusing to agree to this condition, Chicago claims an entitlement to obtain a federal law-enforcement grant while reserving its right to publicly disclose sensitive law-enforcement information provided by the federal government, to the detriment of the federal government's efforts to enforce federal law.   Congress did not compel the Department of Justice to provide federal law enforcement grants to entities that assert a right to disrupt federal law enforcement operations in this manner.

In addition to the authorities cited in the companion case, Congress enacted other provisions directing the Assistant Attorney General for OJP to "maintain liaison" with (*inter alia*) state and local governments in matters relating to "criminal justice."   34 U.S.C. § 10102(a)(2), (4).   That provision, too, allows OJP to take minimal steps to ensure that when it shares information with its state and local law-enforcement partners, that information is not disseminated in a manner that stymies federal law enforcement.

Preventing the improper public disclosure of sensitive federal law enforcement information that the federal government shares with states and localities is surely an important law-enforcement interest, as many federal operations could be entirely compromised if the operations' targets had advance notice of federal law enforcement

action.  And preventing such disclosures easily falls under the auspices of "maintaining liaison."    Indeed, "liaison" is defined as "communication for establishing and maintaining mutual understanding and cooperation (as between parts of an armed force)."  *See Liaison*,  Merriam-Webster.com,  https://www.merriam-webster.com/dictionary/liaison (last visited Dec. 26, 2019).  Thus, when one party to a relationship fails to keep communications confidential, cooperation breaks down and the liaison between them is threatened.  It is entirely natural, as one aspect of maintaining liaison, to decline to provide federal monies to entities that decline to provide basic cooperation.

It is no answer to contend, as the district court did here, that the authority to "maintain liaison" was simply an instruction for the Assistant Attorney General "to maintain bilateral communications or act as a point of contact with state and local governments."  SA 33.  The whole point is that such communications are threatened, and may break down, without assurances that sensitive information will be kept confidential.   And the district court was similarly wrong to assert that the public disclosure condition is overbroad relative to its liaison-maintaining purpose.  *See* SA 34. The information at issue relates to federal law enforcement operations, and is communicated by the federal government to the law enforcement arms of states and localities.  The condition protects the confidentiality of information that might be used by individuals to commit criminal harboring violations, *see* 8 U.S.C. § 1324(a), further tying it to criminal justice.

24

Finally, the district court relied on language from this Court's preliminary-injunction opinion to contend that § 10102(a)(2) and (4) cannot have effect on the Byrne JAG program.  SA 34-35.  Our brief in the consolidated case explained why provisions in section 10102 can, as their plain text suggests, appropriately apply to any program administered by OJP's Assistant Attorney General, which includes the Byrne JAG program.  *See* FY 2017 Opening Br. 35-36, 38-39.

## IV.  The District Court Improperly Extended the Injunction to Entities Other Than Chicago

As it did in the FY 2017 case, the district court again issued a permanent nationwide injunction.  In fact, the nationwide injunction here is broader than the one issued in the FY 2017 case, as this injunction applies not just to FY 2018, but to all future fiscal years as well.

The government's brief in the consolidated case explains why, at a minimum, any injunctive relief issued in that case should be limited solely to Chicago.  *See* FY 2017 Opening Br. 39-55.  For the same reasons, any injunctive relief in this case should be similarly limited.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed or at least limited to Chicago.

Respectfully submitted,

JOSEPH H. HUNT
  *Assistant Attorney General*

JOHN R. LAUSCH, JR.
  *United States Attorney*

MARK B. STERN
DANIEL TENNY

  *s/ Brad Hinshelwood*
BRAD HINSHELWOOD
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7256*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-7823*
  *bradley.a.hinshelwood@usdoj.gov*

DECEMBER 2019

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Seventh Circuit Rule 32(c) because it contains 6,355 words. This brief also complies with the typeface and type-style requirements of Circuit Rule 32(b) because it was prepared using Microsoft Word 2013 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Brad Hinshelwood*
Brad Hinshelwood

## CERTIFICATE OF SERVICE

I hereby certify that on December 30, 2019, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system.  I further certify that I will cause 15 paper copies of this brief to be received by the Clerk within seven days of the Notice of Docket Activity generated upon acceptance of the brief, in compliance with Seventh Circuit Rule 31(b) and ECF Procedure (h)(2).

Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*s/ Brad Hinshelwood*
Brad Hinshelwood

## CIRCUIT RULE 30(d) STATEMENT

Pursuant to Circuit Rule 30(d), counsel certifies that all materials required by Circuit Rule 30(a) and (b) are included in the appendix.

*s/ Brad Hinshelwood*

Brad Hinshelwood

**STATUTORY ADDENDUM**

# TABLE OF CONTENTS

34 U.S.C. § 10102 ................................................................................................A1

34 U.S.C. § 10152 ................................................................................................A2

34 U.S.C. § 10153 ................................................................................................A4

8 U.S.C. § 1373 ....................................................................................................A7

8 U.S.C. § 1644 ....................................................................................................A8

**34 U.S.C. § 10102**

**§ 10102. Duties and functions of Assistant Attorney General.**

(a) Specific, general and delegated powers

The Assistant Attorney General shall--

(1) publish and disseminate information on the conditions and progress of the criminal justice systems;

(2) maintain liaison with the executive and judicial branches of the Federal and State governments in matters relating to criminal justice;

(3) provide information to the President, the Congress, the judiciary, State and local governments, and the general public relating to criminal justice;

(4) maintain liaison with public and private educational and research institutions, State and local governments, and governments of other nations relating to criminal justice;

(5) coordinate and provide staff support to coordinate the activities of the Office and the Bureau of Justice Assistance, the National Institute of Justice, the Bureau of Justice Statistics, the Office for Victims of Crime, and the Office of Juvenile Justice and Delinquency Prevention; and

(6) exercise such other powers and functions as may be vested in the Assistant Attorney General pursuant to this chapter or by delegation of the Attorney General, including placing special conditions on all grants, and determining priority purposes for formula grants.

(b) Annual report to President and Congress

The Assistant Attorney General shall submit an annual report to the President and to the Congress not later than March 31 of each year.

**34 U.S.C. § 10152**

**§ 10152. Description.**

(a) Grants authorized

    (1) In general

From amounts made available to carry out this part, the Attorney General may, in accordance with the formula established under section 10156 of this title, make grants to States and units of local government, for use by the State or unit of local government to provide additional personnel, equipment, supplies, contractual support, training, technical assistance, and information systems for criminal justice, including for any one or more of the following programs:

        (A) Law enforcement programs.

        (B) Prosecution and court programs.

        (C) Prevention and education programs.

        (D) Corrections and community corrections programs.

        (E) Drug treatment and enforcement programs.

        (F) Planning, evaluation, and technology improvement programs.

        (G) Crime victim and witness programs (other than compensation).

        (H) Mental health programs and related law enforcement and corrections programs, including behavioral programs and crisis intervention teams.

    (2) Rule of construction

Paragraph (1) shall be construed to ensure that a grant under that paragraph may be used for any purpose for which a grant was authorized to be used under either or both of the programs specified in section 10151(b) of this title, as those programs were in effect immediately before January 5, 2006.

(b) Contracts and subawards

A State or unit of local government may, in using a grant under this part for purposes authorized by subsection (a), use all or a portion of that grant to contract with or make one or more subawards to one or more--

    (1) neighborhood or community-based organizations that are private and nonprofit; or

    (2) units of local government.

    (3) Repealed. Pub.L. 109-271, § 8(h)(3), Aug. 12, 2006, 120 Stat. 767

(c) Program assessment component; waiver

(1) Each program funded under this part shall contain a program assessment component, developed pursuant to guidelines established by the Attorney General, in coordination with the National Institute of Justice.

(2) The Attorney General may waive the requirement of paragraph (1) with respect to a program if, in the opinion of the Attorney General, the program is not of sufficient size to justify a full program assessment.

(d) Prohibited uses

Notwithstanding any other provision of this Act, no funds provided under this part may be used, directly or indirectly, to provide any of the following matters:

(1) Any security enhancements or any equipment to any nongovernmental entity that is not engaged in criminal justice or public safety.

(2) Unless the Attorney General certifies that extraordinary and exigent circumstances exist that make the use of such funds to provide such matters essential to the maintenance of public safety and good order--

(A) vehicles (excluding police cruisers), vessels (excluding police boats), or aircraft (excluding police helicopters);

(B) luxury items;

(C) real estate;

(D) construction projects (other than penal or correctional institutions); or

(E) any similar matters.

(e) Administrative costs

Not more than 10 percent of a grant made under this part may be used for costs incurred to administer such grant.

(f) Period

The period of a grant made under this part shall be four years, except that renewals and extensions beyond that period may be granted at the discretion of the Attorney General.

(g) Rule of construction

Subparagraph (d)(1) shall not be construed to prohibit the use, directly or indirectly, of funds provided under this part to provide security at a public event, such as a political convention or major sports event, so long as such security is provided under applicable laws and procedures.

A3

**34 U.S.C. § 10153**

## § 10153. Applications

(A) In general

To request a grant under this part, the chief executive officer of a State or unit of local government shall submit an application to the Attorney General within 120 days after the date on which funds to carry out this part are appropriated for a fiscal year, in such form as the Attorney General may require. Such application shall include the following:

(1) A certification that Federal funds made available under this part will not be used to supplant State or local funds, but will be used to increase the amounts of such funds that would, in the absence of Federal funds, be made available for law enforcement activities.

(2) An assurance that, not fewer than 30 days before the application (or any amendment to the application) was submitted to the Attorney General, the application (or amendment) was submitted for review to the governing body of the State or unit of local government (or to an organization designated by that governing body).

(3) An assurance that, before the application (or any amendment to the application) was submitted to the Attorney General--

(A) the application (or amendment) was made public; and

(B) an opportunity to comment on the application (or amendment) was provided to citizens and to neighborhood or community-based organizations, to the extent applicable law or established procedure makes such an opportunity available.

(4) An assurance that, for each fiscal year covered by an application, the applicant shall maintain and report such data, records, and information (programmatic and financial) as the Attorney General may reasonably require.

(5) A certification, made in a form acceptable to the Attorney General and executed by the chief executive officer of the applicant (or by another officer of the applicant, if qualified under regulations promulgated by the Attorney General), that--

(A) the programs to be funded by the grant meet all the requirements of this part;

(B) all the information contained in the application is correct;

(C) there has been appropriate coordination with affected agencies; and

(D) the applicant will comply with all provisions of this part and all other applicable Federal laws.

(6) A comprehensive Statewide plan detailing how grants received under this section will be used to improve the administration of the criminal justice system, which shall--

(A) be designed in consultation with local governments, and representatives of all segments of the criminal justice system, including judges, prosecutors, law enforcement personnel, corrections personnel, and providers of indigent defense services, victim services, juvenile justice delinquency prevention programs, community corrections, and reentry services;

(B) include a description of how the State will allocate funding within and among each of the uses described in subparagraphs (A) through (G) of section 10152(a)(1) of this title;

(C) describe the process used by the State for gathering evidence-based data and developing and using evidence-based and evidence-gathering approaches in support of funding decisions;

(D) describe the barriers at the State and local level for accessing data and implementing evidence-based approaches to preventing and reducing crime and recidivism; and

(E) be updated every 5 years, with annual progress reports that--

(i) address changing circumstances in the State, if any;

(ii) describe how the State plans to adjust funding within and among each of the uses described in subparagraphs (A) through (G) of section 10152(a)(1) of this title;

(iii) provide an ongoing assessment of need;

(iv) discuss the accomplishment of goals identified in any plan previously prepared under this paragraph; and

(v) reflect how the plan influenced funding decisions in the previous year.

(b) Technical assistance

(1) Strategic planning

Not later than 90 days after December 16, 2016, the Attorney General shall begin to provide technical assistance to States and local governments requesting support to develop and implement the strategic plan required under subsection (a)(6). The Attorney General may enter into agreements with 1 or more non-governmental organizations to provide technical assistance and training under this paragraph.

(2) Protection of constitutional rights

Not later than 90 days after December 16, 2016, the Attorney General shall begin to provide technical assistance to States and local governments, including any agent thereof with responsibility for administration of justice, requesting support to meet the obligations established by the Sixth Amendment to the Constitution of the United States, which shall include--

    (A) public dissemination of practices, structures, or models for the administration of justice consistent with the requirements of the Sixth Amendment; and

    (B) assistance with adopting and implementing a system for the administration of justice consistent with the requirements of the Sixth Amendment.

(3) Authorization of appropriations

For each of fiscal years 2017 through 2021, of the amounts appropriated to carry out this subpart, not less than $5,000,000 and not more than $10,000,000 shall be used to carry out this subsection.

**8 U.S.C. § 1373**

## § 1373. Communication between government agencies and the Immigration and Naturalization Service

(a) In general

Notwithstanding any other provision of Federal, State, or local law, a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, the Immigration and Naturalization Service information regarding the citizenship or immigration status, lawful or unlawful, of any individual.

(b) Additional authority of government entities

Notwithstanding any other provision of Federal, State, or local law, no person or agency may prohibit, or in any way restrict, a Federal, State, or local government entity from doing any of the following with respect to information regarding the immigration status, lawful or unlawful, of any individual:

(1) Sending such information to, or requesting or receiving such information from, the Immigration and Naturalization Service.

(2) Maintaining such information.

(3) Exchanging such information with any other Federal, State, or local government entity.

(c) Obligation to respond to inquiries

The Immigration and Naturalization Service shall respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information.

**8 U.S.C. § 1644**

## § 1644. Communication between State and local government agencies and Immigration and Naturalization Service

Notwithstanding any other provision of Federal, State, or local law, no State or local government entity may be prohibited, or in any way restricted, from sending to or receiving from the Immigration and Naturalization Service information regarding the immigration status, lawful or unlawful, of an alien in the United States.

**SHORT APPENDIX**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THE CITY OF CHICAGO,

                Plaintiff,

        v.

WILLIAM P. BARR, in his
official capacity as the
Attorney General of the
United States,

                Defendant.

Case No. 18 C 6859

Judge Harry D. Leinenweber

**MEMORANDUM OPINION AND ORDER**

    This litigation concerns the Executive Branch's ability to attach conditions to money it offers to state and local governments. In this case—the latest chapter of a dispute playing out in district and appellate courts around the country—the City of Chicago takes issue with the conditions that the U.S. Attorney General placed on the FY 2018 Edward Byrne Memorial Justice Assistance Grant ("Byrne JAG") Program. The City contends that certain conditions attached to Byrne JAG funds violate the constitutional requirements of federalism and the separation of powers. For the reasons stated herein, Defendant's Motion to Dismiss (Dkt. No. 42) is granted in part and denied in part. Plaintiff's Motion for Summary Judgment (Dkt. No. 48) is granted in part and denied in part.

**SA 1**

## I.  <u>BACKGROUND</u>

In addition to describing the most relevant facts here, the Court incorporates those facts previously described in its earlier ruling. *See City of Chicago v. Sessions*, 321 F. Supp. 3d 855 (N.D. Ill. 2018).

The Byrne JAG program is the primary source of federal criminal justice funding available to state and local governments. (Def.'s Resp. to Pl.'s Stmt. of Facts ("PSOF") ¶ 11, Dkt. No. 62.) This program is overseen by the Office of Justice Programs (OJP) within the U.S. Department of Justice (DOJ). (PSOF ¶ 11.) The Byrne JAG program distributes funds by a statutorily-defined formula based on a state's population and the number of violent crimes reported within that jurisdiction in the past year. *See* 34 U.S.C. § 10156. To receive Byrne JAG funds, a state or local government must apply and comply with all conditions outlined in the Solicitation document that the Attorney General provides. *See* 34 U.S.C. § 10153.

Chicago has received Byrne JAG funds every year since 2005. (PSOF ¶ 12.) But in 2017 the City ran into trouble when it came time to apply for and accept Byrne JAG funds. The Attorney General attached several new immigration-related conditions to the FY 2017 funds that conflicted with Chicago's stated policy goals of promoting cooperation between local law enforcement and immigrant communities and ensuring access to essential city services for all

- 2 -

**SA 2**

city residents regardless of citizenship status. Therefore, in August of 2017, the City sued the Attorney General (then Jefferson Sessions) to enjoin his office from attaching those conditions to the FY 2017 Byrne JAG funds. *See City of Chicago v. Sessions*, No. 17-cv-5720 (N.D. Ill.).

In the 2017 case, Chicago challenged three conditions that the Court will explain in detail later and will refer to as the "notice, access, and Section 1373 compliance conditions." In September of 2017, this Court issued a nationwide preliminary injunction as to the notice and access conditions. *See City of Chicago v. Sessions*, 264 F. Supp. 3d 933 (N.D. Ill. 2017). The Court denied the Attorney General's request to stay the nationwide application of the preliminary injunction. *See City of Chicago v. Sessions*, No. 17-cv-5720, 2017 WL 4572208 (N.D. Ill. Oct. 13, 2017). The Seventh Circuit affirmed the Court's decision to grant the preliminary injunction, but later decided to take up the limited issue of the injunction's nationwide scope *en banc*. *See City of Chicago v. Sessions*, 888 F.3d 272 (7th Cir. 2018) (affirming the preliminary injunction), *reh'g en banc granted in part, opinion vacated in part*, No. 17-2991, 2018 WL 4268817 (7th Cir. June 4, 2018) (granting *en banc* review as to the issue of whether a nationwide injunction was proper).

Then, in July 2018, this Court granted partial summary judgment for the City. *See City of Chicago v. Sessions*, 321 F.

Supp. 3d 855 (N.D. Ill. 2018). The Court held the notice and access
conditions unconstitutional because neither the Byrne JAG statute
nor any other federal law gave the Attorney General statutory
authority to impose them. *Id.* at 873-74. The Court further found
that 8 U.S.C. § 1373 is unconstitutional as it violates the
anticommandeering doctrine, and that therefore the Section 1373
compliance condition is unlawful because the Attorney General
cannot demand compliance with an unconstitutional law. *Id.* at 875-
76. The Court entered a permanent nationwide injunction preventing
the Attorney General from attaching the three aforementioned
conditions to the FY 2017 Byrne JAG funds. *Id.* at 881; Final
Judgment and Order, *Chicago v. Sessions*, No. 17-cv-5720 (N.D.
Ill.), Dkt. No. 211. However, as the Seventh Circuit had at the
time stayed the nationwide scope of the preliminary injunction
pending an *en banc* rehearing, this Court stayed the nationwide
scope of the permanent injunction in the same fashion. *See City of
Chicago*, 321 F. Supp. 3d at 881-82. However, the Seventh Circuit
vacated the *en banc* hearing after this Court issued its permanent
injunction, as by that point the preliminary injunction "ha[d] all
but evaporated." *City of Chicago*, 2018 WL 4268814, at *2. Thus,
the permanent injunction regarding the notice, access, and Section
1373 compliance conditions currently applies only to the FY 2017
funds and Chicago. *See* Final Judgment and Order. The Court's 2018

- 4 -

**SA 4**

summary judgment opinion is on appeal before the Seventh Circuit. *See City of Chicago v. William Barr*, No. 18-2885 (7th Cir.).

The Attorney General began issuing FY 2018 Byrne JAG funds in October of 2018. (PSOF ¶ 34.) Chicago filed this suit on October 12, 2018, seeking to enjoin the Attorney General from again imposing certain immigration-related conditions on the FY 2018 funds. On November 20, 2018, DOJ notified Chicago that OJP had awarded the City $2,268,856 for its FY 2018 Byrne JAG award. (PSOF ¶ 35.) However, as before, to accept the money, Chicago had to agree to a variety of conditions. (*See* Chicago FY 2018 Byrne JAG Award, Ex. C to Def.'s Request for Judicial Notice ("RJN"), Dkt. No. 44-1.)

Several funding conditions are at issue in this case. Some this Court has already ruled upon, and others are new. The first four conditions, which have already been before this Court and therefore will be referred to as the "repeat conditions," are as follows:

> 1.    **The notice condition.** This condition requires the State or local government to "provide—as early as practicable… —advance notice to [the Department of Homeland Security (DHS)] of the scheduled release date and time for a particular alien, if a State or local government (or government-contracted) correctional facility receives from DHS a formal written request pursuant to the INA that seeks such advance notice." (Chicago FY 2018 Byrne JAG Award ¶ 46.)

> 2.    **The access condition.** This condition requires the State or local government to permit federal government agents "access to any State or local government (or

- 5 -

**SA 5**

government-contracted) correctional facility by such agents for the purpose" of "interrogat[ing] any alien or person believed to be an alien as to his [or her] right to be or to remain in the United States." (*Id.* ¶ 45.)

3.  **The Section 1373 compliance condition.** This condition requires the Chief Legal Officer of the recipient jurisdiction to certify that the "program or activity" funded under the Byrne JAG award complies with 8 U.S.C. §§ 1373 (a) and (b). (*Id.* ¶¶ 41-43.) 8 U.S.C. § 1373 provides: "Notwithstanding any other provision of Federal, State, or local law, a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, the Immigration and Naturalization Service information regarding the citizenship or immigration status, lawful or unlawful, of any individual." 8 U.S.C. § 1373.

4.  **The Section 1644 compliance condition.** This condition requires the Chief Legal Officer to certify that the "program or activity" funded under the Byrne JAG award complies with 8 U.S.C. § 1644. (Chicago FY 2018 Byrne JAG Award ¶¶ 41-43.) 8 U.S.C. § 1644 provides: "Notwithstanding any other provision of Federal, State, or local law, no State or local government entity may be prohibited, or in any way restricted, from sending to or receiving from the Immigration and Naturalization Service information regarding the immigration status, lawful or unlawful, of an alien in the United States." 8 U.S.C. § 1644.

On November 2, 2018, DOJ announced that, "at this time" it would not "use or enforce" the repeat conditions against Chicago, because these conditions were the subject of pending litigation. (*See* FY 2017 and FY 2018 JAG Award Special Notices at 2, Ex. D to Def.'s RJN.) However, DOJ reserved the right to enforce the repeat conditions against Chicago in the future if "the posture of the pending litigation changes (or if the pending litigation is

resolved) in a manner such that DOJ decides to use or enforce any or all of [the repeat conditions.]" (*Id.*)

There are also two new conditions attached to the FY 2018 grants that are at issue in this case:

> 1.  **The harboring condition.** This condition prohibits the recipient jurisdiction from making any "public disclosure… of any federal law enforcement information in a direct or indirect attempt to conceal, harbor, or shield from detection any fugitive from justice under 18 U.S.C. ch. 49, or any alien who has come to, entered, or remains in the United States in violation of 8 U.S.C. ch. 12—without regard to whether such disclosure would constitute (or could form a predicate for) a violation of 18 U.S.C. 1071 or 1072 or of 8 U.S.C. 1324(a)." (Chicago FY 2018 Byrne JAG Award.)

> 2.  **The additional certification requirement.** This condition requires the recipient jurisdiction to submit a "Certifications and Assurances by the Chief Executive of the Applicant Government." (Chicago FY 2018 Byrne JAG Award ¶ 61.) The condition incorporates a requirement that the City's Chief Legal officer certify that "neither the jurisdiction nor any entity, agency, or official of the jurisdiction has in effect… any law, rule, policy, or practice that would apply to the 'program or activity' to be funded… that would or does— (a) impede the exercise by federal officers of authority under 8 U.S.C. § 1357(a); or (b) impede the exercise by federal officers of authority relating to 8 U.S.C. § 1226(a) or (c), 8 U.S.C. § 1231(a), or 8 U.S.C. § 1366(1) or (3)." (State or Local Government: FY 2018 Certification, Ex. M to Pl.'s RJN, Dkt. No. 52-13.)

The Court will refer to these two conditions as the "new conditions." As with the repeat conditions, DOJ announced that it would not enforce the additional certification requirement against Chicago. (*See* FY 2017 and FY 2018 JAG Award Special Notices at 2.)

The Court will refer to all six funding conditions together as the "challenged conditions."

The present motions concern Chicago's Amended Complaint, which contains eight Counts. Count I charges that the challenged conditions are *ultra vires,* as the Attorney General does not have statutory authority to impose them. Count II alleges that the challenged conditions violate the separation of powers doctrine. Count III alleges that the challenged conditions violate the Spending Clause of the U.S. Constitution. Count IV alleges that 8 U.S.C. §§ 1373 and 1644 violate the Tenth Amendment's anticommandeering doctrine and thus the Attorney General cannot impose compliance with these laws as conditions on the Byrne JAG program. Count V asserts that, notwithstanding the unconstitutionality of §§ 1373 and 1644, Chicago's Welcoming City Ordinance and implementing policies comply with §§ 1373 and 1644, and the City deserves declaratory judgment to that effect. In Count VI, Chicago seeks a declaratory judgment that its Welcoming City Ordinance and implementing policies comply with 8 U.S.C. § 1324. Count VII alleges that the challenged conditions are arbitrary and capricious in violation of the Administrative Procedure Act ("APA"). Finally, Count VIII asserts that the President lacked statutory authority under the DOJ's succession statute, 28 U.S.C. § 508, to appoint Matthew Whitaker as acting Attorney General. Chicago seeks a permanent injunction preventing

the challenged conditions from taking effect. The City further reserves its right, upon final judgment of the Court and pursuant to 28 U.S.C. § 2412, to seek reasonable attorneys' fees, expenses, and costs.

Chicago now moves for summary judgment in its favor on Counts I, II, III, IV, and VII, seeking a declaration that the challenged conditions violate the U.S. Constitution and the APA, and a permanent injunction that prohibits the DOJ from imposing the challenged conditions on the FY 2018 funds or in any future program year. The Attorney General moves under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss various aspects of the Amended Complaint. Specifically, the Attorney General argues that Chicago lacks standing to challenge the additional certification requirement, seek a declaration regarding its compliance with 8 U.S.C. § 1324, and challenge the President's appointment of former Acting Attorney General Whitaker; and Chicago fails to state a claim on its APA counts and its challenges to the harboring condition.

The Court will first address the standing and jurisdictional arguments for dismissal, and then turn to the merits of the Counts at issue in Plaintiff's Motion for Summary Judgment.

## II.    <u>MOTION TO DISMISS</u>

The Attorney General moves to dismiss Counts I, II, III, VI, VII and VIII of Chicago's Amended Complaint under Rules 12(b)(1)

and 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(1) tests
the jurisdictional sufficiency of the complaint. *See* FED. R. CIV.
PRO. 12(b)(1). Defendant asserts a facial challenge to Chicago's
Amended Complaint. *See Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th
Cir. 2015) (noting that in evaluating a challenge to subject matter
jurisdiction, a court must first determine whether a defendant has
raised a factual or facial challenge). A facial challenge argues
that the plaintiff has not sufficiently alleged a basis of subject
matter jurisdiction. *Id*. In a facial challenge to subject matter
jurisdiction, the court does not look beyond the allegations in
the complaint, which are taken as true for purposes of the motion.
*Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th
Cir. 2009). The plaintiff bears the burden of establishing the
elements necessary for jurisdiction. *See Silha*, 807 F.3d at 173.

Rule 12(b)(6) allows dismissal for "failure to state a claim
upon which relief can be granted." *See* FED. R. CIV. PRO. 12(b)(6).
A court entertaining a Rule 12(b)(6) motion must construe the
complaint in the light most favorable to the plaintiff and accept
as true all well-pleaded facts alleged. *Tamayo v. Blagojevich*, 526
F.3d 1074, 1081 (7th Cir. 2008). To survive a motion to dismiss
under Rule 12(b)(6), a complaint must "provide a short and plain
statement of the claim showing that the pleader is entitled to
relief, sufficient to provide the defendant with fair notice of
the claim and its basis." *Id.*; *see also* FED. R. CIV. P. 8(a)(2).

- 10 -

**SA 10**

## A.  Whitaker Appointment (Count VIII)

The Court can dispense of the first issue quickly. In Count VIII, Plaintiff challenges the President's 2018 appointment of Matthew Whitaker as Acting Attorney General. In February 2019, the President appointed, and the Senate confirmed, William Barr to serve as Attorney General. Accordingly, in its response to Defendant's Motion to Dismiss, Plaintiff concedes that it is abandoning this claim. (*See* Pl.'s Memo. at 24, Dkt. No. 50 ("[T]he Court need not take up this weighty constitutional issue now.").) Thus, Defendant's Motion to Dismiss Count VIII with prejudice is granted.

## B.  Welcoming City Ordinance Declaratory Judgment (Count VI)

The Court turns to the Attorney General's argument against Count VI, in which the City seeks a declaratory judgment that its Welcoming City Ordinance (the "Ordinance") and its implementing policies comply with 8 U.S.C. § 1324. Section 1324 contains the federal prohibition against harboring illegal aliens. *See* 8 U.S.C. § 1324(a) (establishing criminal liability for any person who "knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place").

- 11 -

**SA 11**

This Ordinance, codified as Chapter 2-173 of the Chicago
Municipal Code, reflects the City's determination that, "as a City
in which one out of five of its residents is an immigrant, 'the
cooperation of all persons, both documented citizens and those
without documentation status, is essential to achieve the City's
goals of protecting life and property, preventing crime and
resolving problems.'" *City of Chicago*, 888 F.3d at 279 (citing
Chicago, Ill. Muni. Code § 2-173-005). The Ordinance prohibits
City agents from arresting, detaining, or continuing to detain a
person based upon an immigration detainer when such detainer is
for a civil immigration law violation, or on the belief that the
person is not present legally in the U.S. or has committed a civil
immigration violation. Chicago, Ill. Muni. Code § 2-173-042(a). So
too are City agents prohibited from allowing Immigrations and
Customs Enforcement (ICE) agents access to a person in City
custody, allowing ICE agents use of City facilities for
investigative purposes, expending their time on duty responding to
ICE inquiries, and informing ICE of a person's custody status or
release date. Chicago, Ill. Muni. Code § 2-173-042(b). The
prohibitions in § 2-173-042 do not apply when the individual in
question is a gang member, convicted felon, has a felony charge
pending, or has an outstanding criminal warrant. *Id*. § 2-173-
042(c). There is also an exception for when City agents act

pursuant to a "legitimate law enforcement purpose that is unrelated to the enforcement of a civil immigration law." *Id.* § 2-173-042(b).

In its Amended Complaint, Chicago alleges that high-ranking officials in President Trump's administration have threatened to "weaponize" 8 U.S.C. § 1324 against Chicago and other jurisdictions seeking to prioritize local law enforcement over enforcement of federal immigration law. Chicago cites to two such incidents: (1) a January 4, 2018, interview on Fox News in which then-Acting Director of ICE Thomas Homan states that he had asked DOJ to "look into criminal charges for elected officials with sanctuary policies, as they are harboring illegal aliens, according to 8 U.S.C. § 1324." (Am. Compl. ¶ 65, Dkt. No. 34.) And (2) a January 16, 2018, hearing before the Senate Judiciary Committee in which Kirstjen Nielsen, the then-Secretary of Homeland Security, stated during her testimony that "the Department of Justice is reviewing what avenues may be available" to charge elected officials in so-called sanctuary jurisdictions. (*Id.*) The City emphasizes that in the approximately 70 years of the law's existence, the federal government has never attempted to prosecute an elected official acting in his or her official capacity for a violation of Section 1324. This, despite the fact that Chicago has had a version of a policy of prohibiting City officials from assisting in federal immigration investigations since 1984. (Am. Compl. ¶ 24.) Chicago contends that these comments

- 13 -

**SA 13**

from Trump Administration officials suggest that DOJ is considering criminally prosecuting elected officials in Chicago under Section 1324.

The Attorney General asserts that Chicago's request for a declaration that its Ordinance complies with Section 1324 is unripe because the City does not allege that the federal government has taken any effort to charge the City or its leaders with violating that statute. Nor does the City allege that federal government officials have suggested future Section 1324 prosecutions against *Chicago* officials specifically.

To establish Article III standing, a plaintiff must show (1) an "injury in fact," (2) a sufficient "causal connection between the injury and the conduct complained of," and (3) a "likelihood" that the injury "will be redressed by a favorable decision." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555 at 560-61 (1992)). The Attorney General's argument concerns the injury in fact requirement, ensures that a plaintiff has a "personal stake in the outcome of the controversy." *Id*. at 158, 157 n.5 (noting that standing and ripeness issues in a pre-enforcement challenge case "boil down to the same question"). An injury sufficient to satisfy Article III must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id*. (internal quotations omitted). An allegation of future injury may suffice if

- 14 -

**SA 14**

the threatened injury is "certainly impending," or there is a "substantial risk that the harm will occur." *Id*. (citation and internal quotations omitted).

Count VI raises a "pre-enforcement challenge." When a plaintiff claims that the threatened enforcement of a law creates an injury sufficient to create Article III standing, an actual arrest, prosecution, or other enforcement action is "not a prerequisite to challenging the law." *Susan B. Anthony*, 573 U.S. at 158-59. A court may undertake pre-enforcement when circumstances "render the threatened enforcement sufficiently imminent." *Id*. at 159. Specifically, a plaintiff satisfies the injury-in-fact requirement if he alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Id*. (citing *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)).

Chicago has met the ripeness standard. The City has alleged an intention to engage in—or more accurately, declared that it is already engaging in—a course of conduct arguably affected with a constitutional interest but proscribed by 8 U.S.C. § 1324. *See Driehaus*, 573 U.S. at 159. The Attorney General has not raised an argument as to why Chicago's constitutionally protected interests are not in play. Regardless, the City properly identifies two constitutional interests relevant to its desire to implement its

- 15 -

**SA 15**

Ordinance: (1) Chicago's First Amendment free speech rights, *see Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 833 (1995); and (2) the anticommandeering doctrine, which limits Congress's ability to issue orders directly to State and local governments, *see Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1475 (2018). Furthermore, Chicago alleged that the federal government made a credible threat of prosecution under Section 1324. *Driehaus*, 573 U.S. at 159; *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 625 n.1, (1986) ("[A] reasonable threat of prosecution creates a ripe controversy."). No less than the Acting Director of ICE and the Secretary of Homeland Security advised the public that DOJ was considering charging elected officials in "sanctuary cities" with violating Section 1324. The high-ranking nature of these individuals' roles in the executive branch renders their threats credible. The fact that these officials did not threaten Chicago or its elected officials by name does not doom the City's claim. The federal government has "not disavowed any intention of invoking the criminal penalty" behind Section 1324, leaving the City "some reason in fearing prosecution" for violation of that statute. *See Babbitt*, 442 U.S. at 302. Thus, Chicago's pre-enforcement challenge is ripe, and the Court denies Defendant's Motion to Dismiss Count VI.

- 16 -

**SA 16**

However, the Court notes that while Chicago opposed the Motion to Dismiss Count VI, it did not move for summary judgment on this Count.  Thus, Count VI remains in the case at this time.

## C.  Standing to Challenge the Additional Certification Requirement

The Attorney General argues that the Court lacks subject matter jurisdiction over Chicago's challenges to the additional certification requirement (contained in Counts I, II, and III) because the City does not have Article III standing to pursue them. Specifically, the Attorney General argues that Chicago lacks an injury in fact sufficient to challenge the additional certification requirement because OJP has "publicly announced that it is not enforcing this requirement as to Chicago and several other jurisdictions." (Def.'s Mot. at 22, Dkt. No. 44.) Further, the Attorney General asserts that if OJP were to decide to enforce the requirement, it would provide formal, written notice.

The City counters that DOJ's announcement was issued three weeks after the filing of Chicago's suit and, as a result, standing is not defeated. (Pl.'s Mot. at 20). The City is correct. Standing is measured at the commencement of an action. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) ("The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)."). Chicago filed its

Complaint on October 12, 2018, and DOJ issued its announcement on November 2, 2018. Because the City's injury is measured at the time the complaint is filed, Defendant's argument fails.

Instead, the question is one of mootness, and whether DOJ's withdrawal of the additional compliance requirement moots the City's complaint on this issue. Normally, under Article III, cases without "actual, ongoing controversies are moot and must be dismissed for lack of jurisdiction." *Fed'n of Adver. Indus. Representatives, Inc. v. City of Chicago*, 326 F.3d 924, 929 (7th Cir. 2003) (quoting *Stotts v. Cmty. Unit Sch. Dist. No. 1*, 230 F.3d 989, 990-91 (7th Cir. 2000)). One exception to this rule is when a defendant voluntary stops performing the challenged conduct after the commencement of a suit. *Friends of the Earth, Inc.*, 528 U.S. at 173. Ordinarily, the "voluntary cessation of the allegedly unlawful conduct" is insufficient to render a claim moot. *Id.* But for this exception, courts would be left "compelled to leave the defendant… free to return to his old ways." *Id.* at 189 (citing *City of Mesquite v. Aladdin's Castle, Inc.*, 484 U.S. 283, 289 (1982) (internal quotations omitted)). Finally, "[t]he heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Id.* at 189.

The Attorney General does not specifically argue mootness, but cites *Whitmore v. Arkansas*, 495 U.S. 149, 157-58 (1990), for

- 18 -

**SA 18**

the proposition that for a court to have jurisdiction the injury alleged in the complaint must be "certainly impending." To support this, Defendant notes that DOJ would need to give Chicago "specific, formal, written notice of DOJ's intent" to re-start enforcement of the additional certification requirement and argues that such a development is "speculative" to begin with. (Def.'s Mot. at 22.) In *Los Angeles v. Lyons*, 461 U.S. 95 (1983), the Supreme Court held that a plaintiff lacked standing to seek an injunction against the enforcement of a police chokehold policy because he could not credibly allege that he faced a realistic threat from the policy. However, the Supreme Court explained that a citywide moratorium on police chokeholds would not moot "an otherwise valid claim for injunctive relief, because the moratorium by its terms was not permanent." *Friends of the Earth, Inc.*, 528 U.S. at 190 (citing *Lyons*, 461 U.S. at 101). Here, DOJ's notice is by its own terms impermanent. Indeed, DOJ has not offered any evidence about what "specific, formal, written notice" entails, and there is no reason to believe that if the litigation were terminated today the DOJ could not reimpose the conditions tomorrow. As a result, the Attorney General has not met his heavy burden of persuading the Court that his voluntary cessation moots this issue.

Accordingly, Defendant's Motion to Dismiss Plaintiff's challenge to the additional certification requirement on account of standing or mootness is denied.

### D.  APA Claims (Counts I, II, III, and VII)

Next, the Attorney General moves to dismiss Counts I, II, III, and VII on the basis that they rely on the APA, but there is no final agency action for Chicago to challenge. As the Court explained in its summary judgment opinion, two things must be true for an agency action to be considered final. "First, the action must mark the 'consummation' of the agency's decision making process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). Chicago asserts, as this Court has held previously, that the Attorney General's decision to impose the challenged conditions on the JAG funds constitutes final agency action that is ripe for judicial review. *See City of Chicago*, 321 F. Supp. 3d at 866.

According to the Attorney General, imposing the challenged conditions on the FY 2018 grants is not a final agency action because "OJP has issued the City's FY 2018 Byrne JAG award pursuant to court injunctions, [but] the Office has not yet determined to grant or deny the application administratively." (Def.'s Mot. at

19). This contention is particularly unsuitable because the Attorney General made this precise argument in its briefing before the Court's last summary judgment decision, and the Court rejected it. *See City of Chicago v. Sessions*, No. 17-cv-5720 (N.D. Ill.), Def.'s Memo., Dkt. 139 ("As there is no dispute that the Department has not yet determined whether to grant FY 2017 Byrne JAG funds to the City, or to deny its pending application, it follows that there is, as of yet, no final agency action for this Court to review."); *City of Chicago*, 321 F. Supp. 3d at 865-66. Although the Court has already ruled on these precise issues, nevertheless it will rule on them once again.

First, as before, the decision to impose conditions on the JAG program is the "end result of [the] decision-making process on this score." *City of Chicago*, 321 F. Supp. 3d at 865. Accepting the grants requires compliance with the conditions, and as a result the "imposition of these Conditions by the Attorney General is far from 'tentative.'" *Id.* As a result, the first requirement for finality under the APA is satisfied. *See Bennett*, 520 U.S. at 177-78.

Moreover, nothing has changed the Court's analysis with respect to the second condition. The conditions still "trigger important legal and practical consequences: They force Chicago to choose between accepting the award with the Conditions or forgoing the award in favor of maintaining the City's policy preferences."

- 21 -

**SA 21**

*City of Chicago*, 321 F. Supp. 3d at 866. *See also Abbs v. Sullivan*, 963 F.2d 918, 926 (7th Cir. 1992) (finding agency action final where plaintiff faced "a dilemma: comply with a rule that harms [it] and that [it] believe[s] to be invalid or violate the rule at the risk of incurring a heavy penalty") (citation omitted). Thus, the second requirement is met. Accordingly, the Court again finds that the decision to require compliance with the challenged conditions as a condition of accepting Byrne JAG funds constitutes final agency action that is ripe for judicial review.

The number of courts that have concluded the same has grown since this Court's last opinion on this subject. *See, e.g., City of Los Angeles v. Sessions*, 2018 WL 6071071 (C.D. Cal. 2018) (finding the Attorney General's imposition of the challenged conditions on Byrne JAG funds was final); *Oregon v. Trump*, 2019 WL 3716932 (D. Or. 2019) (same); *City and Cty. of San Francisco v. Sessions*, 349 F. Supp. 3d 924 (N.D. Cal. 2018) (same); *City of Philadelphia v. Sessions*, 309 F. Supp. 3d 271, 281-84 (E.D. Pa. 2018) (same); *California ex rel. Becerra v. Sessions*, 284 F. Supp. 3d 1015, 1030-31 (N.D. Cal. 2018) (same).

### III.  SUMMARY JUDGMENT

The Court turns to Chicago's Motion for Summary Judgment on Counts I, II, III, IV, and VII. Summary judgment is appropriate when the movant shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law." *See* FED. R. CIV. P. 56. A court must construe the facts
and draw all reasonable inferences in the light most favorable to
the nonmoving party. *Foley v. City of Lafayette, Ind.*, 359 F.3d
925, 928 (7th Cir. 2004). In ruling on summary judgment, courts do
not determine the truth of disputed matters. *Anderson v. Liberty
Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court will begin its
summary judgment analysis with the four repeat conditions the City
is challenging, before turning to the two new conditions in the FY
2018 grants.

### A.   Four Repeat Conditions

There four repeat conditions are virtually identical to
conditions that this Court found unlawful in its summary judgment
ruling on the FY 2017 grants. The similarities are evident:

> **The FY 2018 notice condition**, like the FY 2017 notice
> condition, requires local governments to provide
> "advance notice to [federal immigration authorities] of
> the scheduled release date and time of a particular
> alien" when federal authorities request it. (*See* Chicago
> FY 2018 Byrne JAG Award.)

> **The FY 2018 access condition**, like the FY 2017 access
> condition, requires local governments to permit federal
> immigration agents "access to any State or local
> government (or government-contracted) correctional
> facility… for the purpose [of] interrogat[ing] any alien
> or person believed to be an alien as to his right to be
> or remain in the United States." (*See id*.)

> **The FY 2018 Section 1373 compliance condition**, like the
> FY 2017 Section 1373 compliance condition, requires that
> the recipient comply with 8 U.S.C. § 1373(a) and (b),

and to execute a certification of "compliance" with
those provisions. (*See id.*)

**The FY 2018 Section 1644 compliance condition** requires
Chicago to certify compliance with 8 U.S.C. § 1644. This
condition was not attached to the FY 2017 grants, but
Section 1664 is materially identical to Section 1373(b).
*Compare* 8 U.S.C. § 1644 *with* 8 U.S.C. § 1373(b); *see
also City & Cty. of San Francisco v. Sessions,* 372 F.
Supp. 3d 928, 938 (N.D. Cal. 2019) (noting that "Section
1644 contains nearly identical language as Section
1373"). Defendant recognizes that analysis regarding the
constitutionality of § 1373 "appl[ies] equally to
Section 1644." (Def.'s Mot. at 2.) Accordingly,
Defendant refers to these conditions jointly as the
"Section 1373/1644 compliance conditions." (*Id.*)

Moreover, the Attorney General concedes that the four repeat
conditions are "very similar" to the FY 2017 notice, access, and
Section 1373 compliance conditions. (Def.'s Mot. at 2.) Thus, the
Court concludes that the repeat conditions are materially
identical to the conditions that this Court has already enjoined.
*See City & Cty. of San Francisco*, 372 F. Supp. 3d at 941 (finding
that the FY 2018 "notice, access, and Section 1373/1644
certification conditions remain essentially the same" as their FY
2017 counterparts and holding that those repeat conditions are
unlawful).

The Court has already ruled that each of the repeat conditions
is unlawful. In its summary judgment opinion on the FY 2017 grants,
this Court found that the Attorney General lacked statutory
authority to impose the notice and access conditions, and

consequently DOJ's efforts to impose them violated the separation of powers doctrine and were *ultra vires*. *See City of Chicago*, 321 F. Supp. 3d at 874. That decision was bolstered by the Seventh Circuit's holding, in the context of upholding the preliminary injunction, that this Court "did not err in determining that the City established a likelihood of success on the merits of its contention that the Attorney General lacked the authority to impose the notice and access conditions on receipt of the Byrne JAG grants." *City of Chicago*, 888 F.3d at 287. It has been further bolstered by the Third Circuit's recent holding that Congress did not empower the Attorney General to enact the notice and access provisions. *See City of Philadelphia v. Attorney Gen. of United States*, 916 F.3d 276, 291 (3d Cir. 2019). Finally, in its 2018 summary judgment ruling, this Court also found that 8 U.S.C. § 1373 is unconstitutional under the anticommandeering doctrine, and accordingly, the § 1373 compliance condition is *ultra vires* as the Authority General lacks authority to demand compliance with an unconstitutional statute. *See City of Chicago*, 321 F. Supp. 3d at 872, 875-76.

The Attorney General does not defend on the merits its decision to re-impose conditions in the FY 2018 grants that this Court found to be unlawful and enjoined. Instead, the Attorney General merely states that he "respectfully disagrees with those rulings," and "incorporate[s] . . . the arguments made previously"

in the FY 2017 case. (Def.'s Mot. at 10.) The Attorney General is presumably preserving his arguments on the repeat conditions as he awaits the Seventh Circuit's decision in the appeal of this Court's summary judgment opinion. *See Chicago v. Barr*, 18-2885 (7th Cir.).

Because the Attorney General agreed that the four repeat conditions are essentially identical as the condition this Court already declared unlawful and declined to present any new legal arguments to defend the four repeat conditions, the Court finds that Chicago is entitled to summary judgment on these conditions. As this Court already articulated, the notice and access conditions are *ultra vires,* and § 1373 is unconstitutional, rendering the § 1373 compliance condition *ultra vires*. *See City of Chicago*, 321 F. Supp. 3d at 876. The Court grants summary judgment in Plaintiff's favor on Counts I and II with respect to the repeat conditions.

Additionally, the Court grants summary judgment in Chicago's favor on Count IV, in which the City seeks a declaration that 8 U.S.C. § 1644 violates the Tenth Amendment's anticommandeering doctrine and thus the Attorney General cannot impose the Section 1644 compliance condition as a condition of accepting Byrne JAG funds. The Attorney General concedes that 8 U.S.C. §§ 1373 and 1644 contain essentially identical language, and that therefore analysis regarding the constitutionality of § 1373 "appl[ies] equally to Section 1644." (Def.'s Mot. at 2.) As such,

the Court's ruling that § 1373 violates the anticommandeering doctrine applies equally to § 1644. *See City of Chicago*, 321 F. Supp. 3d at 875-76. 8 U.S.C. § 1644 violates the Tenth Amendment's anticommandeering doctrine and therefore compliance with § 1644 cannot be imposed as a condition of accepting Byrne JAG funds.

### B.  Two New Conditions

#### 1.  Additional certification requirement

Chicago moves for summary judgment on its claim, contained in Count I, that the additional certification requirement is *ultra vires*. This condition requires the would-be grantee to certify that it is not subject to or bound by any "law, rule, policy, or practice" that would "impede the exercise by federal officers of authority" under 8 U.S.C. §§ 1357(a), 1226(a) or (c), 1231(a), or 1366(1) or (3). (State or Local Government: FY 2018 Certification.) The City argues that the Attorney General lacks authority to impose the additional certification requirement as a condition for receiving grant funding.

It is well established that the "power of the purse does not belong to the Executive Branch." *City of Chicago v. Sessions*, 888 F.3d 272, 283 (7th Cir. 2018). The Executive possesses "no inherent authority as to the grant at issue here to condition the payment of such federal funds on adherence to its political priorities." *Id.* Spending is instead the domain of Congress. *See* U.S. Const. Art. I § 8. If the Executive has spending power, it is because

- 27 -

**SA 27**

Congress delegated that authority. Therefore, whether the additional certification requirement is proper depends on whether Congress delegated authority to the Attorney General through statute to impose it. *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 472 (2001); *City of Arlington, Tex. v. F.C.C.*, 569 U.S. 290, 297 (2013) ("[F]or agencies charged with administering congressional statutes … the power to act and how they are to act is authoritatively prescribed by Congress, so that when they act improperly… what they do is ultra vires*."*). Accordingly, the Court must look to federal statute to determine the Attorney General's authority to impose the additional certification requirement.

Statutory interpretation begins with the plain language of the statute. *United States v. Berkos*, 543 F.3d 392, 396 (7th Cir. 2008). A court must "assume that the legislative purpose [of the statute] is expressed by the ordinary meaning of the words used." *Id*. (citations omitted). Absent clearly expressed Congressional intent to the contrary, the plain language should be conclusive. *Id*. The language and design of the statute as a whole may also provide guidance in determining the plain meaning of its provisions. *Id*.

In this round of briefing, DOJ presented no arguments regarding the source of its statutory authority to impose the additional certification requirement, and for that reason seems to have conceded the point. *See Bloch v. Frischholz*, 587 F.3d 771,

784 (7th Cir. 2009) (arguments not developed during summary judgment are waived). Regardless, because of the importance of the constitutional principles at issue in this case, the Court will perform the relevant analysis to determine whether there is indeed a statutory basis for the Attorney General's authority to impose the additional certification requirement.

The Byrne JAG statute itself, codified at 34 U.S.C. §§ 10151–10158, does not grant the Attorney General authority to impose the additional certification requirement. The Seventh Circuit has held that the Byrne JAG statute does not grant the Attorney General "the authority to impose conditions that require states or local governments to assist in immigration enforcement, nor to deny funds to states or local governments for the failure to comply with those conditions." *City of Chicago*, 888 F.3d at 284. Indeed, the Attorney General's ability to depart from the funding distribution formula mandated by 34 U.S.C. § 10156 is "strictly circumscribed." *City of Chicago*, 888 F.3d at 286. Thus, the Byrne JAG statute cannot be the source of authority. The City has identified two potential statutory sources of authority based on the Attorney General's briefing in earlier iterations of this case, and the Court will consider those sources in turn.

In the FY 2017 Byrne JAG case, the Attorney General argued that his authority to impose conditions on the Byrne JAG funds came from 34 U.S.C. § 10102(a)(6). 34 U.S.C. § 10102(a) sets forth

- 29 -

**SA 29**

the specific, delegated, and general powers of the Assistant Attorney General ("AAG") for the Office of Justice Programs, including the authority to place "special conditions on all grants." 34 U.S.C. § 10102(a). As the Court will detail in the next section, this is not a valid source of statutory authority to impose the additional certification requirement.

The other potential source of statutory authority is 34 U.S.C. § 10153(A)(5)(D), a section of the Byrne JAG statute that allows the Attorney General to require grant recipients certify compliance with "all other applicable Federal laws." This Court has interpreted this statute to mean what it "literally says." *City of Chicago*, 321 F. Supp. 3d at 875 (citing *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 228 (2008)). It declined to adopt Chicago's narrow reading of the statute, which would limit the reach of "all other applicable Federal laws" to mean federal laws "applicable to federal grantees generally." *Id.* Instead, the Court adopted Defendant's plain-meaning interpretation of the statute and meant that "applicable Federal laws" meant "any federal law that applies to Chicago." *Id.; see also City of Chicago v. Sessions*, 264 F. Supp. 3d 933, 945 (N.D. Ill. 2017) ("Congress could expect an entity receiving federal funds to certify its compliance with federal law… the entity is—independent of receiving federal funds—obligated to comply.").

Chicago argues that it is not obliged to comply with the statutes listed in the additional certification requirement (let alone be prohibited from having any laws or policies that "impede" enforcement of these statutes) because these statutes do not apply to cities and localities but instead are applicable only to the federal government. This argument is well taken. The statutes enumerated in the additional certification requirement—8 U.S.C. §§ 1226(a) and (c), 1231(a), 1357(a), and 1366(1) and (3)—deal with the federal government's authority and obligation to arrest and detain criminal aliens, remove criminal aliens, interrogate aliens and perform other investigatory actions without a warrant, and submit reports to Congressional committees, respectively. None of these statutes require cities or localities to do anything—they apply only to the federal government and as a result, the Attorney General cannot require Chicago to "comply" with them. It is Congress' job to attach such conditions to the receipt of federal grants, and the Executive cannot unilaterally attach conditions to the receipt of grant funding without express authorization from Congress. *City of Chicago*, 888 F.3d at 286. This power has not been delegated, and thus the additional certification requirement is *ultra vires*. The Court grants Chicago's Motion for Summary Judgment as to the additional certification requirement.

## 2. Harboring condition

The Attorney General asserts that Chicago's challenges to the harboring condition (contained in Counts I, II, III, and VII) should be dismissed for failure to state a claim, while the City moves for summary judgment on those same counts. The harboring condition prohibits grant recipients from making any "public disclosure… of any federal law enforcement information in a direct or indirect attempt to conceal, harbor, or shield from detection any fugitive from justice under 18 U.S.C. ch. 49, or any alien who has come to, entered, or remains in the United States in violation of 8 U.S.C. ch. 12—without regard to whether such disclosure would constitute (or could form a predicate for) a violation of 18 U.S.C. 1071 or 1072 or of 8 U.S.C. 1324(a)." (Chicago FY 2018 Byrne JAG Award.) Chicago contends that Congress did not authorize the Attorney General to impose the harboring condition, rendering it *ultra vires* and a violation of the separation of powers. The Attorney General contends that his authority to impose the harboring condition is found in 34 U.S.C. § 10102(a).

First, the Attorney General asserts that 34 U.S.C. §§ 10102(a)(2) and (a)(4) provide authority to impose the harboring condition. These sections require the AAG to "maintain liaison with the executive and judicial branches of the Federal and State governments in matters relating to criminal justice," and "maintain liaison with public and private educational and

- 32 -

**SA 32**

research institutions, State and local governments, and governments of other nations relating to criminal justice." 34 U.S.C. §§ 10102(a)(2), (a)(4). Citing to Merriam-Webster's Dictionary, Defendant notes that "liaison" is defined as "a close bond or connection" or "a person who establishes and maintains communication for mutual understanding and cooperation." From this definition, the Attorney General concludes that Congress charged the AAG with facilitating cooperation between federal and state criminal justice authorities—thus conferring a grant of authority that "encompasses… protecting the confidentiality of federal law enforcement information provided to state and local agencies." (Def.'s Mot. at 12.)

The plain language of §§ 10102(a)(2) and (a)(4) simply does not support the Attorney General's interpretation. The relevant language requires the AAG to "maintain liaison with… State governments in matters relating to criminal justice." 34 U.S.C. § 10102(a)(2). Nothing in this language indicates a delegation of authority to place the harboring condition on Byrne JAG grantees. Sections 10102(a)(2) and (a)(4) are more plausibly read as an instruction for the AAG to maintain bilateral communications or act as a point of contact with state and local governments. *See City & Cty. of San Francisco v. Sessions*, 372 F. Supp. 3d 928, 944 (N.D. Cal. 2019). Here, the Court agrees with the Northern District of California's analysis of this same argument—that court

**SA 33**

concluded that DOJ put "far more weight on 'maintain liaison' than it can hold." *See id.* at 943-45 (holding that the AAG's duty to "maintain liaison" in criminal justice matters does not confer authority for DOJ to impose the harboring condition). The duty to "maintain liaison… in matters relating to criminal justice" does not venture into the authority to impose funding conditions related to immigration enforcement. And the harboring condition goes far beyond the authority that the Attorney General claims to have derived from §§ 10102(a)(2) and (a)(4)—to protect the confidentiality of federal law enforcement information provided to state and local agencies. It prohibits disclosure of federal law enforcement information related to "a direct or indirect attempt" to harbor not just "fugitives of justice" but also "any alien." The language seeks "the broadest coverage possible" by its use of the term "indirect attempt," which "has no boundary" and would presumably up for interpretation by the AAG. *City & Cty. of San Francisco*, 372 F. Supp. 3d at 945. Such sweeping authority is hardly implicit in the AAG's responsibility to communicate with and disseminate criminal justice information to various state and local entities.

Moreover, as the Seventh Circuit has noted, Sections 10102(a)(1)-(5) "address the communication and coordination duties of the Assistant Attorney General." *City of Chicago*, 888 F.3d at 285. The Third Circuit joined in that assessment. *See City of*

- 34 -

**SA 34**

*Philadelphia v. Attorney Gen. of United States,* 916 F.3d 276, 288 (3d Cir. 2019) (Finding that 34 U.S.C. §§ 10102(a)(1)-(5) "all deal with the AAG's power to disseminate criminal justice information and coordinate with various agencies and officials" and noting "the ministerial nature of the powers in" §§ 10102(a)(1)-(5).). Especially given the "strictly circumscribed" nature of the Byrne JAG program—the Byrne JAG statute "precisely describes the formula through which funds should be distributed to states and local governments, and imposes precise limits on the extent to which the Attorney General can deviate from that distribution"—it would be "inconceivable" that Congress would have anticipated that the AAG could abrogate that distribution scheme and deny funds to localities based on a new condition related to harboring aliens. *See City of Chicago*, 888 F.3d at 286. After all, Congress "does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes." *City of Chicago*, 888 F.3d at 287 (citing *Gonzales v. Oregon*, 546 U.S. 243, 267 (2006)). Thus, the structure and design of the statute as a whole does not support the contention that "maintain liaison" provides authority for the Attorney General to impose the harboring condition. Accordingly, this argument fails.

Second, the Attorney General contends that § 10102(a)(6) supplies him with the requisite authority to impose the harboring

condition. Section 10102(a)(6) states that the AAG shall "exercise such other powers and functions as may be vested in the Assistant Attorney General pursuant to this chapter or by delegation of the Attorney General, *including placing special conditions on all grants, and determining priority purposes for formula grants*." 34 U.S.C. § 10102(a)(6) (emphasis added). The italicized language, Defendant contends, confers the requisite authority.

The Seventh Circuit and this Court have already considered and rejected this argument. As Defendant well knows, in holding that Chicago had established a likelihood of success on the merits of its contention that the Attorney General lacked the authority to impose the FY 2017 notice and access conditions, the Seventh Circuit characterized Section 10102(a)(6) as follows:

> [Section] 10102(a)(6) is a catch-all provision, simply recognizing that the Assistant Attorney General can also exercise such other powers and functions as may be vested through other sources—either in that Chapter or by delegation from the Attorney General. … A clause in a catch-all provision at the end of a list of explicit powers would be an odd place indeed to put a sweeping power to impose any conditions on any grants—a power much more significant than all of the duties and powers that precede it in the listing, and a power granted to the Assistant Attorney General that was not granted to the Attorney General. … [T]he Attorney General's argument is that the "including" clause itself is a stand-alone grant of authority to the Assistant Attorney General to attach any conditions to any grants in that subchapter or other subchapters even though that authority is not otherwise provided in the chapter and is not possessed by the Attorney General. Because that

interpretation is so obviously belied by the plain
meaning of the word "including," the Attorney General's
position is untenable.

*City of Chicago*, 888 F.3d at 285. The Attorney General does not
explain why the Seventh Circuit's analysis of § 10102(a)(6) in the
context of the notice and access conditions should not equally
apply to the harboring condition. Defendant is not free to
disregard the Seventh Circuit's rulings in its briefings before
this Court. The Seventh Circuit has already held that the statutory
text of § 10102, and the structure of relevant statutes, supports
the conclusion that § 10102(a)(6) does not give the AG broad
authority to impose even reasonable conditions on Byrne JAG grants.
*See City of Chicago*, 888 F.3d at 287. Accordingly, the harboring
condition exceeds DOJ's statutory authority, and the Court grants
summary judgment in Chicago's favor on Counts I and II.

The City proposes additional arguments as to why the harboring
condition violates the Spending Clause and is arbitrary and
capricious under the APA. However, as the Court found before,
granting summary judgment on Counts I, II, and IV affects the
balance of Chicago's claims. *City of Chicago*, 321 F. Supp. 3d at
876. The Court need not delve into the arguments regarding the
Spending Clause or whether this condition is arbitrary and
capricious, as it has already held that Plaintiff is entitled to
summary judgment on the basis of the harboring clause being *ultra*

*vires*. Thus, Counts III and VII are dismissed as moot. Count V, in which Chicago requests a declaration that the City complies with 8 U.S.C. § 1644, is also moot because the Court has declared § 1644 unconstitutional. *Id.* at 876.

## IV.   **INJUNCTION**

With the merits decided, the Court turns to Chicago's request for a permanent injunction. As a reminder, in 2018 this Court issued a permanent national injunction prohibiting Defendant from imposing the notice, access, and Section 1373 compliance conditions on the FY 2017 Byrne JAG funds. (Final Judgment and Order, *Chicago v. Sessions*, No. 17-cv-5720 (N.D. Ill.), Dkt. No. 212.) However, at the time the Court issued the permanent injunction, the Seventh Circuit had stayed the nationwide scope of the preliminary injunction entered in this case pending an *en banc* rehearing. Accordingly, the Court stayed the nationwide scope of that injunction. Thus, the permanent injunction regarding the notice, access, and Section 1373 compliance conditions currently applies only to the FY 2017 funds and Chicago.

The City now seeks a permanent injunction that prohibits the Attorney General from imposing the challenged conditions—the four repeat conditions as well as the harboring condition and additional certification requirement—in all future years of the Byrne JAG program. Chicago seeks a "program-wide" injunction—that is, one that is nationwide in scope. The Court will first consider whether

- 38 -

**SA 38**

the City is entitled to a permanent injunction and then turn to
the scope of said injunction.

### A.   Permanent Injunction

The Court may issue permanent injunctive relief if the moving
party demonstrates:

> (1) that it has suffered an irreparable injury; (2) that
> remedies available at law, such as monetary damages, are
> inadequate to compensate for that injury; (3) that,
> considering the balance of hardships between the
> plaintiff and defendant, a remedy in equity is
> warranted; and (4) that the public interest would not be
> disserved by a permanent injunction.

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

The Attorney General does not engage with these four
requirements in its briefing. Instead, he only argues that any
injunction the Court issues should be limited to Chicago—or, if
the Court issues a national injunction, its application beyond
Chicago should be stayed pending the Seventh Circuit's decision in
*Chicago v. Barr*. Thus, it appears to the Court that the Attorney
General does not object to a permanent injunction of the challenged
conditions. Regardless, Chicago carries the burden to demonstrate
that it is entitled to a permanent injunction, so the Court will
proceed with its analysis without any specific objections from the
Attorney General.

As for the first and second requirements, Chicago has
demonstrated that it has suffered an irreparable injury for which
no available remedies at law can compensate. The City has again

- 39 -

**SA 39**

submitted an affidavit from Chicago Police Department ("CPD")
Lieutenant Kevin Hannigan, who explains that if the City complies
with the challenged conditions, undocumented immigrants will be
less likely to interact and cooperate voluntarily with local
police, believing that such contacts could put them or their
families at risk of deportation. (*See* Hannigan Decl., Dkt. No. 54.)
Lieutenant Hannigan, who has served in the CPD for thirty years,
explains that trust between CPD and immigrant communities would be
"badly damaged" if CPD was seen as "proactive enforcers of federal
civil immigration rules, or volunteering to help ICE prosecute
civil immigration enforcement actions against non-violent, law-
abiding citizens." (*Id.* ¶ 6.) As this Court has found before, this
loss of trust is an irreparable harm for which no adequate remedy
at law. *See City of Chicago*, 321 F. Supp. 3d at 877-78 (citing
*Gateway E. Ry. Co. v. Terminal R.R. Ass'n of St. Louis*, 35 F.3d
1134, 1140 (7th Cir. 1994) (finding that loss of goodwill can
qualify as an irreparable harm for which there is no adequate
remedy at law)). Money damages cannot remedy a loss of trust. *See
City of Chicago*, 888 F.3d at 291 ("Such trust, once destroyed by
the mandated cooperation and communication with the federal
immigration authorities, would not easily be restored."),
Moreover, a constitutional injury alone can constitute irreparable
harm. *See City of Chicago*, 321 F. Supp. 3d at 878 (citing 11A
Wright & Miller, Federal Practice & Procedure § 2948.1 (2d ed.

1995) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.")). Chicago faces such an injury here, as the Attorney General subjects the City's receipt of Byrne JAG funding on unconstitutionally imposed conditions. Accordingly, Chicago has demonstrated the first two required elements for a permanent injunction.

Third, the balance of hardships weighs in the City's favor. As the Seventh Circuit explained, the harm the Attorney General suffers from an injunction is minimized because "the Attorney General can distribute the funds without mandating the conditions—as has been done for over a decade—and nothing in the injunction prevents any state or local government from coordinating its local law enforcement with the federal authorities." *City of Chicago*, 888 F.3d at 291. Importantly, the Court has found the challenged conditions to be unlawful, and the Attorney General cannot plausibly argue that being prevented from imposing unlawful conditions would present a hardship. As this Court has already explained, the injunction "does not strip away any option [the Attorney General] could [lawfully] exercise." *City of Chicago*, 321 F. Supp. 3d at 878-79. On the other hand, the impact on Chicago if forced to comply with the conditions would be "devastating." *City of Chicago*, 888 F.3d at 291. Either Chicago would have to accept the funds with the unlawful conditions attached, damaging its

- 41 -

**SA 41**

relationship with its immigrant communities and its crime fighting capabilities, or Chicago would have to decline the funds entirely. The City intends to use the FY 2018 funds to increase its Bureau of Detectives' capacity to clear violent cases and bring shooters to justice. (*See* Am. Compl. ¶ 40.) Without the FY 2018 Byrne JAG funds, Chicago will not be able to carry out that initiative as planned. Thus, the continued application of the challenged conditions would cause Chicago hardship by unlawfully blocking it from funds it could otherwise accept—as it has since 2005—without grievance.

Fourth and finally, the public interest is served by a permanent injunction in this case. As before, the Court has found that the Attorney General failed to administer the Byrne JAG program in conformance with the limited statutory authority Congress affords him. As the Seventh Circuit recently reminded in this case, the judiciary must act as a check on usurpation of power by the Executive Branch, and "jealously guard" the separation of powers. *City of Chicago*, 888 F.3d at 277. Enjoining the unlawful conditions and checking the Executive's encroachment of congressional power undoubtedly serves the public interest. *See Gordon v. Holder,* 721 F.3d 638, 653 (D.C. Cir. 2013) ("[E]nforcement of an unconstitutional law is always contrary to the public interest.").

Thus, Chicago has demonstrated all four requirements for permanent injunctive relief. Accordingly, the Court finds that permanent injunctive relief is warranted as to DOJ's imposition of the challenged conditions.

## B. Scope of Injunction

The Court turns to its assessment of the appropriate scope of the injunction. As the Third Circuit recently observed in a parallel case, "[w]hile there are tried and true standards for determining *when* equitable relief is warranted, there is less authority regarding the *scope* of equitable relief." *City of Philadelphia v. Attorney Gen. of United States*, 916 F.3d 276, 291–92 (3d Cir. 2019). This is because "when district courts are properly acting as courts of equity, they have discretion unless a statute clearly provides otherwise." *United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 496 (2001). The scope of injunctive relief is dictated by the extent of the violation established. *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). Injunctive relief should be "no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Id*. When a court believes the underlying right to be highly significant, "it may write injunctive relief as broad as the right itself." *Zamecnik v. Indian Prairie Sch. Dist. No. 204*, 636 F.3d 874, 879 (7th Cir. 2011) (citing 1 Dan B. Dobbs, *Law of Remedies* § 2.4(6), p. 113 (2d ed. 1993)).

- 43 -

**SA 43**

The Court's last injunction was limited to the FY 2017 Byrne JAG program in the hope that DOJ would not re-impose its unlawful conditions. It did. To this end, Chicago petitions the Court to enjoin the imposition of the challenged conditions not just in the FY 2018 Byrne JAG funds, but in *all* future years of the Byrne JAG program. The Attorney General offers no opinion on the subject.

Given the extent of the violation established, and DOJ's track record in this litigation, an injunction that covers all future years of the Byrne JAG program is appropriate. The nature of injury here—a violation of the separation of powers doctrine—is highly significant. *See City of Chicago v. Sessions*, 888 F.3d 272, 277 (7th Cir. 2018) ("The founders of our country well understood that the concentration of power threatens individual liberty and established a bulwark against such tyranny by creating a separation of powers among the branches of government. If the Executive Branch can determine policy, and then use the power of the purse to mandate compliance with that policy by the state and local governments, all without the authorization or even acquiescence of elected legislators, that check against tyranny is forsaken."). Unless the Seventh Circuit overturns this Court's summary judgment opinion, it will never be permissible for the Attorney General to impose the challenged conditions on Chicago. And importantly in this equitable consideration, the Attorney General has shown a

willingness to impose unlawful conditions in the next round of Byrne JAG program administration, despite an injunction prohibiting those same conditions in the previous year. This action has imposed a serious cost on the City, as it had to initiate new litigation after the Attorney General again imposed the four repeat conditions on the FY 2018 grants. Indeed, DOJ recently released the Byrne JAG Solicitation for FY 2019, which again contains several of the challenged conditions. (*See* Byrne JAG Grant FY 2019 Local Solicitation, Ex. 1 to Pl.'s Mot. to Cite Supp. Authority, Dkt. No. 75-1.) Thus, it is apparent to the Court that entering an injunction regarding all future JAG funds is the only way to prevent Chicago from being forced to litigate the Byrne JAG funding conditions every year. Enjoining the unlawful conditions for all future program years is an appropriate remedy based on the violation established.

Next, the Court must determine the only aspect of the injunction that the Attorney General actually contests: whether the injunction should be limited to Chicago and its sub-grantees, or nationwide in scope. The scope of the FY 2017 permanent injunction—national but stayed as to its application outside of Chicago—is currently on appeal before the Seventh Circuit. Yet district court proceedings do not freeze while an appeal is pending. *See City of Chicago*, 321 F. Supp. 3d at 879; *City & Cty. of San Francisco v. Sessions*, 372 F. Supp. 3d at 954 (issuing a

- 45 -

**SA 45**

permanent injunction as to FY 2018 Byrne JAG conditions while the court's decision on 2017 Byrne JAG conditions was still on appeal). And there have been no changes in facts or law since the FY 2017 preliminary and permanent injunction rulings that would shift this Court's understanding of the propriety of a nationwide injunction in this case. Unless the Seventh Circuit reverses, this Court will not depart from its earlier analysis, which will preserve the status quo and the integrity of the pending appeal.

Accordingly, the Court will again issue a permanent nationwide injunction as to all six challenged conditions. However, in deference to the Seventh Circuit's pending decision on the issue of nationwide injunctions in this case, the Court will again stay the nationwide scope of the permanent injunction. Stays are "necessary to mitigate the damage that can be done during the interim period before a legal issue is finally resolved on its merits. The goal is to minimize the costs of error." *In re A & F Enters., Inc. II*, 742 F.3d 763, 766 (7th Cir. 2014); *see also City & Cty. of San Francisco*, 372 F. Supp. 3d at 954 (granting injunction in favor of plaintiffs but staying its nationwide scope while the FY 2017 permanent injunction is pending before the Ninth Circuit).

## V.    <u>CONCLUSION</u>

For the reasons stated herein, the Attorney General's Motion to Dismiss (Dkt. No. 42) is granted in part and denied in part and

Chicago's Motion for Summary Judgment (Dkt. No. 48) is granted in part and denied in part. The Court grants Chicago's Motion for Summary Judgment on Counts I, II, and IV. The Court grants the Attorney General's Motion to Dismiss Count VIII with prejudice. Counts III, V, and VII are dismissed as moot. Count VI remains pending in this case. Chicago shall advise the Court of how it intends to proceed with Count VI at the next status hearing in this case.

**IT IS SO ORDERED.**


_____
    Harry D. Leinenweber, Judge
    United States District Court

Dated: 9/19/2019

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**THE CITY OF CHICAGO,**

        **Plaintiff,**

    **v.**

**WILLIAM P. BARR, Attorney General of the United States,**

        **Defendant.**

**Case No. 18 CV 06859**

**Judge Harry D. Leinenweber**

## FINAL JUDGMENT AND ORDER

Now, this 10th day of October 2019, for the reasons set forth in the Court's Memorandum Opinion of September 19, 2019 (Dkt. 80), it is hereby **ORDERED** that judgment be entered in favor of Plaintiff, the City of Chicago (the "City" or "Chicago"), and against Defendant, William P. Barr, in his official capacity as Attorney General of the United States. Consistent with Federal Rule of Civil Procedure 65 and 5 U.S.C. § 706, the Court grants the City declaratory and injunctive relief as set forth below.

Through this lawsuit, the City challenges the Attorney General's decision to attach six conditions to the FY 2018 Edward Byrne Memorial Justice Assistance Grant ("Byrne JAG"), specifically:

> 1. The "Notice Condition" requires that Byrne JAG recipients "provide— as early as practicable… —advance notice to [the Department of Homeland Security (DHS)] of the scheduled release date and time for a particular alien, if a State or local government (or government-contracted) correctional facility receives from DHS a formal written request pursuant to the INA that seeks such advance notice."

1

2. The "Access Condition" requires that Byrne JAG recipients permit federal government agents "access to any State or local government (or government-contracted) correctional facility by such agents for the purpose" of "interrogat[ing] any alien or person believed to be an alien as to his [or her] right to be or to remain in the United States."

3. The "Section 1373 Compliance Condition" requires that Byrne JAG recipients certify compliance with 8 U.S.C. § 1373.

4. The "Section 1644 Compliance Condition" requires that Byrne JAG recipients certify compliance with 8 U.S.C. § 1644.

5. The "Harboring Condition" prohibits Byrne JAG recipients from making any "public disclosure... of any federal law enforcement information in a direct or indirect attempt to conceal, harbor, or shield from detection any fugitive from justice under 18 U.S.C. ch. 49, or any alien who has come to, entered, or remains in the United States in violation of 8 U.S.C. ch. 12—without regard to whether such disclosure would constitute (or could form a predicate for) a violation of 18 U.S.C. 1071 or 1072 or of 8 U.S.C. 1324(a)."

6. The "Additional Certification Requirement" requires the recipient jurisdiction to submit "Certifications and Assurances by the Chief Executive of the Applicant Government." The condition incorporates a requirement that the City's Chief Legal officer certify that "neither the jurisdiction nor any entity, agency, or official of the jurisdiction has in effect ... any law, rule, policy, or practice that would apply to the 'program or activity' to be funded ... that would or does—(a) impede the exercise by federal officers of authority under 8 U.S.C. § 1357(a); or (b) impede the exercise by federal officers of authority relating to 8 U.S.C. § 1226(a) or (c), 8 U.S.C. § 1231(a), or 8 U.S.C. § 1366(1) or (3)."

These conditions are referred to herein as the "Challenged Conditions."

## I. DECLARATORY RELIEF

For the reasons stated in the Court's aforementioned Memorandum Opinion, the Court declares that 8 U.S.C. §§ 1373 and 1644 violate the Tenth Amendment's anticommandeering principles and are therefore facially unconstitutional.

The Court further declares that the Attorney General exceeded the authority delegated by Congress in the Byrne JAG statute (34 U.S.C. § 10151 et seq.) and in 34 U.S.C. § 10102(a), in attaching the Challenged Conditions to the FY 2018 Byrne JAG grant.

Finally, the Court declares that the Attorney General's decision to attach the Challenged Conditions to the FY 2018 Byrne JAG grant violated the constitutional principle of separation of powers.

## II. PERMANENT INJUNCTION

For the reasons stated above and in the Court's Memorandum Opinion, it is hereby **ORDERED** that the Attorney General's decision to attach the Challenged Conditions to the FY 2018 Byrne JAG grant is set aside and shall have no legal effect. The Attorney General is enjoined from denying or delaying issuance of any FY 2018 Byrne JAG award insofar as that denial or delay is based on the Challenged Conditions. The Attorney General is further enjoined from denying or delaying issuance of the Byrne JAG award in FY 2019 or any other future program year insofar as that denial or delay is based on the Challenged Conditions or materially identical conditions. Prohibited conduct includes: using the Challenged Conditions, or materially identical conditions, in any Byrne JAG award document; delaying the processing or approval of a recipient's requests to draw upon Byrne JAG funds based on the Challenged Conditions or materially identical conditions; and enforcing the Conditions or materially identical conditions against Byrne JAG recipients, regardless of whether those conditions appeared in Byrne JAG award documents. No

**SA 50**

recipient's acceptance of its Byrne JAG award may be construed as acceptance of the Challenged Conditions or materially identical conditions. For purposes of this injunction, "delay" means the failure or refusal to take an action that the Attorney General has taken for any other Byrne JAG recipient, if that failure or refusal is based in any way on (1) an applicant's compliance or lack of compliance with the Challenged Conditions or materially identical conditions or (2) litigation involving the Challenged Conditions or materially identical conditions, including if such failure or refusal is based on the Attorney General's seeking to preserve the ability to impose or enforce the Challenged Conditions or materially identical conditions in the future.

This Order applies to the Attorney General's imposition of the Challenged Conditions and any materially identical conditions on the Byrne JAG grant program in FY 2018 and all future grant years. Its effects run to the benefit of all Byrne JAG applicants and recipients are not limited to the City of Chicago and its sub-grantees. However, for the reasons set forth in Court's Memorandum Opinion, the Court enters a stay of the injunction as to all Byrne JAG grantees other than the City of Chicago and its sub-grantees. The stay shall terminate automatically if the Seventh Circuit issues a final ruling in *City of Chicago v. William Barr*, No. 18-2885 (7th Cir.) that affirms the nationwide application of the FY 2017 injunction.

### III. FINAL JUDGMENT

The only remaining Count in this case is Count VI. The parties have agreed to dismiss that Count without prejudice, and the Court accordingly dismisses Count VI

**SA 51**

without prejudice. There being no Counts remaining to be decided on the merits, the Court now enters final judgment in this case. Fed. R. Civ. P. 58.

## IV. ATTORNEYS' FEES AND COSTS

Plaintiff may still seek reasonable attorneys' fees and costs in this matter. 28 U.S.C. § 2412. Defendants are entitled to object to or oppose any attempt by Plaintiff to recover the same. Any motion regarding attorneys' fees and costs shall be made in accordance with the procedures and schedule set forth in Local Rule 54.3.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: 10/10/2019

5