# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

CITY OF CHICAGO,

*Plaintiff-Appellee*,

*v.*

WILLIAM P. BARR, ATTORNEY GENERAL OF THE UNITED STATES,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Northern District of Illinois, No. 18-cv-6859
Before the Honorable Harry D. Leinenweber

## BRIEF FOR PLAINTIFF-APPELLEE

JAMIE S. GORELICK
DAVID W. OGDEN
ARI HOLTZBLATT
MOLLY JENNINGS
JUSTIN BAXENBERG
ALLISON SCHULTZ
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6000

DEBO P. ADEGBILE
WILMER CUTLER PICKERING
    HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

MARK A. FLESSNER
*Corporation Counsel of the City of Chicago*
BENNA RUTH SOLOMON
*Deputy Corporation Counsel*
MYRIAM ZRECNZY KASPER
ANDREW W. WORSECK
*Chief Assistant Corporation Counsel*
JUSTIN A. HOUPPERT
SCOTT D. SPEARS
*Senior Assistant Corporation Counsel*
30 N. LaSalle Street, Suite 800
Chicago, IL 60602
(312) 744-7764

RONALD S. SAFER
MATTHEW C. CROWL
NICK KAHLON
RILEY SAFER HOLMES & CANCILA LLP
Three First National Plaza
70 West Madison Street, Suite 2900
Chicago, IL 60602
(312) 471-8700

**CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: __18-2885 and 19-3290__

Short Caption: __City of Chicago v. Barr__

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.

    [ ]    PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

    The City of Chicago

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Wilmer Cutler Pickering Hale and Dorr LLP; Riley Safer Holmes & Cancila LLP

(3)  If the party or amicus is a corporation:

    i)  Identify all its parent corporations, if any; and

        N/A

    ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

        N/A

Attorney's Signature: __/s Jamie S. Gorelick__　　　　　　Date: __1/21/2020__

Attorney's Printed Name: __Jamie S. Gorelick__

Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d).   Yes _____   No ___X___

Address: __1875 Pennsylvania Ave NW, Washington, DC 20006__

Phone Number: __202-663-6500__　　　　　Fax Number: __202-663-6363__

E-Mail Address: __jamie.gorelick@wilmerhale.com__

**CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: __18-2885 and 19-3290__

Short Caption: __City of Chicago v. Barr__

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R.  App. P. 26.1.

   The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. Counsel  is required to complete  the entire  statement and  to use N/A for any  information that  is not applicable if this form  is used.

   [ ]      PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM  IS NEW OR REVISED
            AND INDICATE  WHICH INFORMATION IS NEW OR REVISED.

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

   The City of Chicago

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

   Wilmer Cutler Pickering Hale and Dorr LLP; Riley Safer Holmes & Cancila LLP

(3)  If the party or amicus is a corporation:

   i)  Identify all its parent corporations, if any; and

        N/A

   ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

        N/A

Attorney's Signature:  __/s David W. Ogden__                          Date:  __1/21/2020__

Attorney's Printed Name:  __David W. Ogden__

Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d).    Yes _____    No _____X

Address:   __1875 Pennsylvania Ave NW, Washington, DC 20006__

Phone Number:  __202-663-6440__                    Fax Number:  __202-663-6363__

E-Mail Address:  __david.ogden@wilmerhale.com__

Appellate Court No: 18-2885 and 19-3290

Short Caption: City of Chicago v. Barr

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R.  App. P. 26.1.

   The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. Counsel  is required to complete the entire  statement and to use N/A for any information that  is not applicable  if this form is used.

    [ ]    PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED
               AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

    The City of Chicago

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Wilmer Cutler Pickering Hale and Dorr LLP; Riley Safer Holmes & Cancila LLP

(3)  If the party or amicus is a corporation:

    i)  Identify all its parent corporations, if any; and

          N/A

    ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

          N/A

Attorney's Signature:  /s  Debo P. Adegbile                         Date:  1/21/2020

Attorney's Printed Name:  Debo P. Adegbile

Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d).    Yes _____    No _____ X

Address:   7 World Trade Center, 250 Greenwich Street, New York, NY 10007

Phone Number:  212-295-6717                         Fax Number:  212-230-8888

E-Mail Address:  debo.adegbile@wilmerhale.com

CIRCUIT RULE 26.1  DISCLOSURE STATEMENT

Appellate Court No:  18-2885 and 19-3290

Short Caption:  City of Chicago v. Barr

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R.  App. P. 26.1.

   The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. Counsel  is required to complete the entire  statement  and to use N/A for any information that  is not applicable  if this form is used.

   [   ]      PLEASE CHECK  HERE IF ANY INFORMATION ON THIS FORM  IS NEW OR REVISED
             AND INDICATE  WHICH   INFORMATION IS NEW OR REVISED.

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

   The City of Chicago

_____

_____

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

   Wilmer Cutler Pickering Hale and Dorr LLP; Riley Safer Holmes & Cancila LLP

_____

_____

(3)  If the party or amicus is a corporation:

   i)  Identify all its parent corporations, if any; and

         N/A

   ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

         N/A

Attorney's Signature:  /s Ari Holtzblatt_____          Date:  1/21/2020_____

Attorney's Printed Name:  Ari Holtzblatt_____

Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d).     Yes _____          No _____X____

Address:  1875 Pennsylvania Ave NW, Washington, DC 20006_____

_____

Phone Number:  202-663-6964_____          Fax Number:  202-663-6363_____

E-Mail Address:  ari.holtzblatt@wilmerhale.com_____

**CIRCUIT RULE 26.1  DISCLOSURE STATEMENT**

Appellate Court No: __18-2885 and 19-3290_____

Short Caption: __City of Chicago v. Barr_____

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.

[ ]    PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

__The City of Chicago_____

_____

_____

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

__Wilmer Cutler Pickering Hale and Dorr LLP; Riley Safer Holmes & Cancila LLP_____

_____

_____

(3)  If the party or amicus is a corporation:

i)  Identify all its parent corporations, if any; and

_____N/A_____

ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

_____N/A_____

Attorney's Signature:  __/s Molly Jennings_____    Date:  __1/21/2020_____

Attorney's Printed Name:  __Molly Jennings_____

Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d).    Yes _____    No _____X____

Address:  __1875 Pennsylvania Ave NW, Washington, DC 20006_____

_____

Phone Number:  __202-663-6947_____    Fax Number:  __202-663-6363_____

E-Mail Address:  __molly.jennings@wilmerhale.com_____

CIRCUIT RULE 26.1  DISCLOSURE STATEMENT

Appellate Court No:  18-2885 and 19-3290

Short Caption:  City of Chicago v. Barr

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R.  App. P. 26.1.

   The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. Counsel  is required to complete  the entire  statement and  to use N/A for any information that  is not applicable if this form  is used.

   [  ]    PLEASE CHECK  HERE IF ANY INFORMATION ON THIS FORM  IS NEW OR REVISED
          AND INDICATE  WHICH   INFORMATION IS NEW OR REVISED.

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

   The City of Chicago

   _____

   _____

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

   Wilmer Cutler Pickering Hale and Dorr LLP; Riley Safer Holmes & Cancila LLP

   _____

   _____

(3)  If the party or amicus is a corporation:

   i)  Identify all its parent corporations, if any; and

        N/A

   ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

        N/A

Attorney's Signature:  /s Justin Baxenberg                    Date:  1/21/2020

Attorney's Printed Name:  Justin Baxenberg

Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d).   Yes _____   No _____X

Address:   1875 Pennsylvania Ave NW, Washington, DC 20006

   _____

Phone Number:  202-663-6151                    Fax Number:  202-663-6363

E-Mail Address:  justin.baxenberg@wilmerhale.com

**CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: __18-2885 and 19-3290__

Short Caption: __City of Chicago v. Barr__

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.

    [   ]      PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

    The City of Chicago

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Wilmer Cutler Pickering Hale and Dorr LLP; Riley Safer Holmes & Cancila LLP

(3) If the party or amicus is a corporation:

    i) Identify all its parent corporations, if any; and

        N/A

    ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

        N/A

Attorney's Signature: __/s Allison Schultz__      Date: __1/21/2020__

Attorney's Printed Name: __Allison Schultz__

Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d).   Yes _____   No ___X___

Address: __1875 Pennsylvania Ave NW, Washington, DC 20006__

Phone Number: __202-663-6088__      Fax Number: __202-663-6363__

E-Mail Address: __allison.schultz@wilmerhale.com__

**CIRCUIT RULE 26.1  DISCLOSURE STATEMENT**

Appellate Court No: __18-2885 and 19-3290__

Short Caption: __City of Chicago v. Barr__

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R.  App. P. 26.1.

    The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. Counsel  is required to complete  the entire  statement and to use N/A for any information that  is not applicable if this form  is used.

    [   ]      PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED
              AND INDICATE  WHICH INFORMATION IS NEW OR REVISED.

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

        The City of Chicago

        _____

        _____

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

        Riley Safer Holmes & Cancila LLP; Wilmer Cutler Pickering Hale and Dorr LLP

        _____

        _____

(3)   If the party or amicus is a corporation:

    i)  Identify all its parent corporations, if any; and

            N/A

    ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

            N/A

Attorney's Signature:  __/s Ronald S. Safer__                      Date: __1/21/2020__

Attorney's Printed Name: __Ronald S. Safer__

Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d).     Yes  _____      No _____X__

Address:   __Three First National Plaza, 70 West Madison Street, Suite 2900, Chicago, Illinois 60602__

Phone Number:  __312-471-8736__                      Fax Number:  __312-471-8701__

E-Mail Address:  __rsafer@rshc-law.com__

**CIRCUIT RULE 26.1    DISCLOSURE STATEMENT**

Appellate Court No: 18-2885 and 19-3290

Short Caption: City of Chicago v. Barr

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.

    [   ]    PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

    The City of Chicago

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Riley Safer Holmes & Cancila LLP; Wilmer Cutler Pickering Hale and Dorr LLP

(3)   If the party or amicus is a corporation:

    i)  Identify all its parent corporations, if any; and

          N/A

    ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

          N/A

Attorney's Signature: /s Matthew C. Crowl        Date: 1/21/2020

Attorney's Printed Name: Matthew C. Crowl

Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d). Yes _____ No _____ X

Address: Three First National Plaza, 70 West Madison Street, Suite 2900, Chicago, Illinois 60602

Phone Number: 312-471-8720        Fax Number: 312-471-8701

E-Mail Address: mcrowl@rshc-law.com

Appellate Court No: __18-2885 and 19-3290__

Short Caption: __City of Chicago v. Barr__

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R.  App. P. 26.1.

    The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. Counsel  is required to complete  the entire  statement and  to use N/A for any information  that  is  not applicable  if this form  is used.

    [  ]　　PLEASE CHECK HERE  IF ANY INFORMATION ON THIS FORM  IS NEW OR REVISED
　　　　　　　AND INDICATE  WHICH INFORMATION IS NEW OR REVISED.

(1)　The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

    The City of Chicago

(2)　The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Riley Safer Holmes & Cancila LLP; Wilmer Cutler Pickering Hale and Dorr LLP

(3)　If the party or amicus is a corporation:

    i)　Identify all its parent corporations, if any; and

        N/A

    ii)　list any publicly held company that owns 10% or more of the party's or amicus' stock:

        N/A

Attorney's Signature:  __/s Nick Kahlon__　　　　　　Date:  __1/21/2020__

Attorney's Printed Name:  __Nick Kahlon__

Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d).　Yes _____　No _____X__

Address:  __Three First National Plaza, 70 West Madison Street, Suite 2900, Chicago, Illinois 60602__

Phone Number:  __312-471-8755__　　　　Fax Number:  __312-471-8701__

E-Mail Address:  __nkahlonl@rshc-law.com__

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................. iii

INTRODUCTION .............................................................................. 1

STATEMENT CONCERNING ORAL ARGUMENT .......................... 3

JURISDICTIONAL STATEMENT ................................................... 4

ISSUES PRESENTED ...................................................................... 4

STATEMENT OF THE CASE ........................................................... 4

    A.    The Attorney General Imposes Unlawful Conditions
        On FY2017 Byrne JAG Funds ......................................... 4

    B.    The Attorney General Again Imposes Unlawful
        Conditions On FY2018 Byrne JAG Funds .................. 10

    C.    The Federal Government Continues Its Campaign
        Against "Sanctuary Cities" Outside The Byrne JAG
        Program .......................................................................... 12

    D.    Chicago Is Forced To Sue To Enjoin The FY2018
        Conditions ...................................................................... 14

    E.    The District Court Permanently Enjoins All Six
        Challenged Conditions.................................................. 16

SUMMARY OF ARGUMENT .......................................................... 20

ARGUMENT .................................................................................... 22

I.    THE NOTICE, ACCESS, ADDITIONAL CERTIFICATION, AND
    HARBORING CONDITIONS ARE UNLAWFUL .............................. 22

    A.    Section 10102(a)(6) Does Not Authorize The
        Conditions ...................................................................... 23

B.    Sections 10102(a)(2) And (a)(4) Do Not Authorize The
      Harboring Condition ...................................................................... 29

C.    To The Extent The Attorney General Relies On
      Section 10153(a)(4), It Does Not Authorize The
      Additional Certification Condition, Either ................................... 33

II.   SECTIONS 1373 AND 1644 ARE UNCONSTITUTIONAL AND THE
      CORRESPONDING COMPLIANCE CONDITIONS ARE UNLAWFUL ................ 35

III.  PROGRAM-WIDE INJUNCTIVE RELIEF IS NECESSARY AND
      APPROPRIATE TO REMEDY THE SCOPE OF THE ATTORNEY
      GENERAL'S VIOLATION ............................................................. 37

CONCLUSION ............................................................. 41

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Action on Smoking & Health v. Civil Aeronautics Board,*
    713 F.2d 795 (D.C. Cir. 1983) ................................................................ 39

*Bragdon v. Abbott,*
    524 U.S. 624 (1998) ............................................................................... 28

*Branch v. Smith,*
    538 U.S. 254 (2003) ............................................................................... 36

*Califano v. Yamasaki,*
    442 U.S. 682 (1979) ............................................................................... 37

*Center for Individual Freedom v. Madigan,*
    697 F.3d 464 (7th Cir. 2012) ................................................................ 38

*Citizens United v. Federal Election Commission,*
    558 U.S. 310 (2010) ............................................................................... 38

*City & County of San Francisco v. Sessions,*
    372 F. Supp. 3d 928 (N.D. Cal. 2019) ............................................. 31, 32

*City of Chicago v. Sessions,*
    264 F. Supp. 3d 933 (N.D. Ill. 2017) ......................................................7

*City of Chicago v. Sessions,*
    321 F. Supp. 3d 855 (N.D. Ill. 2018) .......................................................9

*City of Chicago v. Sessions,*
    888 F.3d 272 (7th Cir. 2018) ........................................................*passim*

*City of Los Angeles v. Barr,*
    941 F.3d 931 (9th Cir. 2019) ........................................................*passim*

*City of Philadelphia v. Attorney General of the United States,*
    916 F.3d 276 (3d Cir. 2019) .........................................................*passim*

*CMR D.N. Corp. v. City of Philadelphia,*
    703 F.3d 612 (3d Cir. 2013) ................................................................ 39

*Dayton Board of Education v. Brinkman,*
    433 U.S. 406 (1977)................................................................. 37

*Doe No. 1 v. Reed,*
    561 U.S. 186 (2010)................................................................. 38

*Eide v. Sarasota County,*
    908 F.2d 716 (11th Cir. 1990)................................................ 39

*Epsilon Electronics, Inc. v. United States Department of Treasury,*
    857 F.3d 913 (D.C. Cir. 2017)................................................ 25

*Ezell v. City of Chicago,*
    651 F.3d 684 (7th Cir. 2011)................................................. 39

*FAA v. Cooper,*
    566 U.S. 284 (2012)................................................................. 28

*Gaffney v. Riverboat Services of Indiana, Inc.,*
    451 F.3d 424 (7th Cir. 2006).................................................. 25

*Gonzales v. Oregon,*
    546 U.S. 243 (2006)................................................................. 32

*Harmon v. Thornburgh,*
    878 F.2d 484 (D.C. Cir. 1989)................................................ 39

*Lujan v. National Wildlife Federation,*
    497 U.S. 871 (1990)................................................................. 40

*Missouri v. Jenkins,*
    515 U.S. 70 (1995).................................................................. 37

*Pierce v. Society of Sisters of the Holy Names of Jesus and Mary,*
    268 U.S. 510 (1925)........................................................... 37, 38

*Printz v. United States,*
    521 U.S. 898 (1997)................................................................. 35

*Society of Sisters of the Holy Names of Jesus and Mary v. Pierce,*
    296 F. 928 (D. Or. 1924) ....................................................... 38

*Utility Air Regulatory Group v. EPA,*
    573 U.S. 302 (2014)................................................................. 29

# DOCKETED CASES

*City of Chicago v. Sessions*, No. 1:17-cv-05720 (N.D. Ill.)..............................7, 9

*City of Chicago v. Sessions*, No. 17-2991 (7th Cir.)........................................8, 9

# STATUTES AND RULES

5 U.S.C. § 706...................................................................................................39

8 U.S.C.
    § 1226..........................................................................................................12
    § 1324.............................................................................11, 13, 15, 16, 19
    § 1357..........................................................................................................12
    § 1373...................................................................................................*passim*
    § 1644...................................................................................................*passim*

34 U.S.C.
    § 10102.................................................................................................*passim*
    § 10142........................................................................................................26
    §§ 10152-10157.........................................................................................7
    § 10152..................................................................................................6, 34
    § 10153..........................................................................17, 21, 33, 34, 35
    § 20111........................................................................................................26

Pub. L. No. 100-690, 102 Stat. 4181 (1988)....................................................26

# REGULATIONS AND ADMINISTRATIVE MATERIALS

2 C.F.R part 200................................................................................................27

28 C.F.R.
    § 66.12........................................................................................................27

*Federal Awarding Agency Regulatory Implementation of Office of
    Management and Budget Uniform Administrative
    Requirements, Cost Principles, and Audit Requirements of
    Federal Awards*, 79 Fed. Reg. 75,871 (Dec. 19, 2014)............................28

# RULES

Fed. R. App. P. 34 ................................................................................................3

## OTHER AUTHORITIES

Allen, Kenneth J., *Federal Grant Practice* § 25:1 (2019 ed.) .......................... 27

Hazard, Jr., Geoffrey C.,  et al., *An Historical Analysis of the Binding Effect of Class Suits*, 146 U. Pa. L. Rev. 1849 (1998) ................................................................................... 40

McLaughlin, Chester B., *Mystery of the Representative Suit*, 26 Geo. L.J. 878 (1938) ................................................ 40

Sohoni, Mila, *The Lost History of the 'Universal' Injunction*, 133 Harv. L. Rev. 920 (2020) ......................................................... 38

## INTRODUCTION

This Court has already decisively rejected the main refrain of the Attorney General's brief—that Congress could not have intended for Chicago to both accept federal funding for local law-enforcement activities and decline to assist in the enforcement of federal civil immigration laws—as "evinc[ing] a disturbing disregard for the separation of powers." *City of Chicago v. Sessions*, 888 F.3d 272, 283 (7th Cir. 2018). And for good reason. What the Attorney General seeks is not "cooperation," but instead to reach far beyond the limited statutory authority granted by Congress to coerce Chicago into spending the City's resources on the civil immigration priorities of the Executive Branch—but not of Congress or Chicago.

The Attorney General's commitment to this course of action is remarkable. In fiscal year ("FY") 2018, he sought to impose on Chicago the same notice condition, the same access condition, and the same section 1373 compliance condition as he did in FY2017 (along with a "section 1644 compliance condition" that he concedes is "materially identical" to the section 1373 compliance condition). He did so even after this Court held that he lacked the authority to impose the "notice" and "access" conditions, and even after assuring the district court that in formulating conditions for FY2018, he would "take to heart" its order enjoining all three FY2017 conditions as unconstitutional and ultra vires.

Beyond the four repeat conditions, the Attorney General announced two additional immigration-related conditions on FY2018 awards: the "additional certification" condition and the "harboring" condition. Those new conditions depend on much the same failed justification as the "notice" and "access" conditions—which this Court and every other court of appeals to consider the issue have found inconsistent with the non-discretionary formula Congress enshrined in the Byrne JAG statute. The Attorney General also refused to release Chicago's FY2018 funds, even after releasing funds to the vast majority of other eligible jurisdictions. And, around the same time, the federal Executive's broader campaign against so-called "sanctuary" jurisdictions intensified, with high-ranking federal officials declaring their intent to criminally prosecute elected officials in jurisdictions that did not "cooperate" with civil immigration enforcement efforts.

Faced with potential criminal prosecution of its elected officials and uncertainty whether it would ever receive the criminal-justice funding to which it was entitled by statute, Chicago was forced to file suit yet again to protect its inherent right to self-government. The district court recognized Chicago's untenable position, issuing an order setting aside all six of the FY2018 conditions, declaring unconstitutional 8 U.S.C. §§ 1373 and 1644, and prohibiting the Attorney General from imposing similar conditions in any future grant year. As in FY2017, the FY2018 injunction applied to the

entire Byrne JAG program, though the district court stayed its application to jurisdictions outside Chicago in anticipation of further guidance from this Court concerning the scope of the FY2017 injunction.

The Attorney General still has not identified a shred of statutory authority that authorizes his use of the Byrne JAG program as a policy cudgel.  And his position that Article III categorically requires a court to gerrymander injunctive relief to benefit only the parties before the court, even when the plaintiff challenges a uniform agency-wide rule, still contravenes decades of Supreme Court precedent and practice and would invalidate the remedies provision of the Administrative Procedure Act.  This court should affirm.

## STATEMENT CONCERNING ORAL ARGUMENT

The City of Chicago respectfully submits that oral argument is not necessary to resolve this appeal under Federal Rule of Appellate Procedure 34(a)(2)(C).  The facts and legal arguments unique to this FY2018 appeal (no. 19-3290) are adequately presented in the briefs, and the issues that overlap with the consolidated FY2017 appeal (no. 18-2885) have already been argued. It therefore seems unlikely that the decisional process would be significantly aided by oral argument.  If the Court sees a need for oral argument, Chicago respectfully requests that the Court set argument as soon as possible, because the consolidated FY2017 appeal was argued in April 2019.

# JURISDICTIONAL STATEMENT

The Attorney General's jurisdictional statement is complete and correct.

# ISSUES PRESENTED

1.     Whether the Attorney General can re-impose conditions on FY2018 awards under the Byrne JAG formula grant program that have already been held unlawful by this Court.

2.     Whether the Attorney General can impose additional conditions on FY2018 awards under the Byrne JAG formula grant program that are not authorized by law and contradict the stated purposes of the grant program.

3.     Whether the district court, having held that the program-wide imposition of the challenged FY2018 conditions was unlawful agency action, was within its authority to set aside that action and enjoin the Attorney General on a program-wide basis from imposing those conditions.

# STATEMENT OF THE CASE

In FY2018, the Attorney General re-imposed four conditions materially identical to the FY2017 conditions, along with two more:  the similarly infirm harboring and additional certification conditions.

## A.     The Attorney General Imposes Unlawful Conditions On FY2017 Byrne JAG Funds

As explained in Chicago's brief in the consolidated FY2017 appeal

(hereinafter "Chicago FY2017 Br."), Chicago has long exercised its "traditional[]" authority to decide "how to devote law enforcement resources," *City of Chicago*, 888 F.3d at 282, by prioritizing local crimefighting over enforcing federal civil immigration policies. Chicago FY2017 Br. 4-6. Chicago's Welcoming City Ordinance ("WCO"), the latest embodiment of that policy, thus prohibits any "agency or agent" of Chicago from permitting Immigration and Customs Enforcement ("ICE") agents to access detained persons or detention facilities or from spending on-duty time "responding to ICE inquiries or communicating with ICE regarding a person's custody status or release date," unless for "a legitimate law enforcement purpose that is unrelated to the enforcement of a civil immigration law," or under certain other limited circumstances (i.e., if the person about whom information is sought has been convicted of a felony, has an outstanding criminal warrant, or is a known gang member). R.52-4 § 2-173-042(b).[1]

Chicago relies on federal funds made available through the Edward Byrne Memorial Justice Assistance Grant ("Byrne JAG") program to fund many of its criminal-justice programs. R.53 at 1-6. *See also* Chicago FY2017 Br. 6-8. Per Congress's directive, the Attorney General is to make Byrne JAG

---

[1]     Citations to "R.__" refer to district court docket entries, while citations to "Dkt. __" refer to court of appeals docket entries. Citations to "SA__" refer to the Attorney General's short appendix. Citations to "A__" refer to the Attorney General's appendix.

awards "in accordance with" an established formula for use by local

governments "to provide additional personnel, equipment, supplies,

contractual support, training, technical assistance, and information systems

for criminal justice."  34 U.S.C. § 10152(a)(1).  The formula set by Congress is

"carefully defined" and the Attorney General's authority to depart from it

"strictly circumscribed."  *City of Chicago*, 888 F.3d at 285-286.

Nonetheless, on July 25, 2017, the Department of Justice announced

that three immigration-related conditions would encumber FY2017 Byrne

JAG funding.  R.41-5 at 992.  The "notice" condition required local

correctional facilities to provide the Department of Homeland Security

"advance notice of the scheduled release date and time for a particular alien

in such facility" upon request and "as early as practicable."  A137.  The

"access" condition required local correctional facilities to grant access to

federal agents "for the purpose of permitting such agents to meet with

individuals who are (or are believed by such agents to be) aliens and to

inquire as to such individuals' rights to be or remain in the United States."

*Id.*  The "section 1373 compliance" condition required grant recipients to

certify their compliance with 8 U.S.C. § 1373, which forbids local

governments from prohibiting their employees from sharing immigration-

status information with federal immigration enforcement agents.  A134-

A135; 8 U.S.C. § 1373.

Chicago filed suit, challenging the conditions and seeking a program-wide preliminary injunction to prevent their enforcement.  *City of Chicago v. Sessions*, No. 1:17-cv-05720 (N.D. Ill. Aug. 10, 2017), Dkt. No. 21.  The district court preliminarily enjoined the notice and access conditions.  *City of Chicago v. Sessions*, 264 F. Supp. 3d 933, 941 (N.D. Ill. 2017).

A panel of this Court unanimously affirmed, holding that nothing in the Byrne JAG statute, 34 U.S.C. §§ 10152-10157, "grant[s] the Attorney General the authority to impose conditions that require states or local governments to assist in immigration enforcement, nor to deny funds to states or local governments for the failure to comply with those conditions." *City of Chicago*, 888 F.3d at 284.  This Court also rejected the Attorney General's argument that 34 U.S.C. § 10102(a)(6) authorized the conditions, holding that that section—which authorizes the Assistant Attorney General to "exercise such other powers and functions as may be vested" in or "delegat[ed]" to him, "including placing special conditions on all grants"—is not an independent grant of authority but simply "set[s] forth a subcategory of the types of powers and functions that the Assistant Attorney General may exercise when vested in the Assistant Attorney General either by the terms of [the statute] or by delegation of the Attorney General."  888 F.3d at 285.  Because the authority to impose immigration-related conditions was nowhere vested in or delegated to the Assistant Attorney General, the Attorney

General's reliance on section 10102(a)(6) was "untenable." *Id.* Moreover, the statutory context of section 10102(a)(6) belied the Attorney General's interpretation: Because the duties and functions enumerated in section 10102(a)(1)-(5) are merely "ministerial," it would "def[y] reason" to conclude that section 10102(a)(6), a "catch-all provision" tacked on to the end of the Assistant Attorney General's clerical duties, granted "such sweeping authority over the major source of funding for law enforcement agencies nationwide" as the Attorney General claimed. *Id.* at 285, 287. The Third and Ninth Circuits have since joined this Court in holding the notice and access conditions *ultra vires* and unconstitutional. *City of Philadelphia v. Attorney Gen. of U.S.*, 916 F.3d 276, 291 (3d Cir. 2019); *City of Los Angeles v. Barr*, 941 F.3d 931, 945 (9th Cir. 2019).

The panel majority also affirmed the scope of the preliminary injunction, reasoning that Chicago's suit "presents essentially a facial challenge to a policy applied nationwide" and that "the balance of equities favors nationwide relief." *City of Chicago*, 888 F.3d at 290. The Attorney General sought rehearing *en banc*, but only as to the program-wide scope of the district court's injunction. *City of Chicago v. Sessions*, No. 17-2991 (7th Cir.), Dkt. No. 147. He did not seek further review of this Court's holding that section 10102(a)(6) does not confer unfettered authority to place conditions on formula grants.

The district court then issued a final judgment with respect to the FY2017 conditions, declaring all three conditions unlawful and permanently enjoining their enforcement. *City of Chicago v. Sessions*, 321 F. Supp. 3d 855, 873-876 (N.D. Ill. 2018).  Final judgment in the FY2017 case mooted rehearing review of the scope of the preliminary injunction.  *City of Chicago v. Sessions*, No. 17-2991 (7th Cir.), Dkt. Nos. 154, 159.  Chicago asked the district court to enter a forward-looking injunction that would bar the Attorney General from again imposing the unlawful conditions in future grant years, because the FY2018 Byrne JAG solicitation contained the same grant conditions.  Transcript 5:3-6:12, *City of Chicago*, No. 1:17-cv-05720 (N.D. Ill.), Dkt. No. 213.  In reliance on the Attorney General's representation that the federal government had "taken to heart" the district court's decision and was "looking at the conditions for next year against the backdrop of your prior decision," *id.* at 5:6-9, the district court declined to extend the injunction to future grant years, instead agreeing that, if the Attorney General "impose[d] the exact same conditions and force[d] [Chicago] to affirmatively file a case," Chicago would be entitled to attorney's fees, *id.* at 6:6-11 (noting that Chicago's "lawyers would get paid" if the Attorney General forced Chicago to litigate the conditions again).  The Attorney General's appeal from that judgment is now pending before this Court in the consolidated FY2017 appeal.

- 9 -

### B.     The Attorney General Again Imposes Unlawful Conditions On FY2018 Byrne JAG Funds

Despite the district court's injunction and the Attorney General's representation that he would take to heart the district court's FY2017 ruling, the Attorney General imposed six immigration-related conditions on FY2018 Byrne JAG funding, four of which were materially identical to those already enjoined.  A93; A99-A102; A158-A164; *see also* Barr Br. 13 (conceding that four of the FY2018 conditions are "very similar" to the FY2017 conditions).  As in FY2017, the FY2018 "notice" and "access" conditions require grantees to provide federal immigration officials with "advance notice … of the scheduled release date and time for a particular alien" and access to local correctional facilities "for the purpose [of] 'interrogat[ing] any alien or person believed to be an alien as to his [or her] right to be or to remain in the United States.'"  A162-A163.  And as in FY2017, the FY2018 "compliance" conditions require grantees to certify that any "program or activity" funded under the Byrne JAG award complies with 8 U.S.C. § 1373 and—new in FY2018—8 U.S.C. § 1644, the text of which is virtually identical to section 1373.  A158-A160.  Both sections 1373 and 1644 forbid local governments from prohibiting their employees from sharing immigration-status information with federal immigration enforcement agents.  *See* 8 U.S.C. §§ 1373, 1644.

The Attorney General also attached two new conditions to FY2018 Byrne JAG funds. The "harboring" condition prohibits grantees from "public[ly] disclos[ing] … any federal law enforcement information in a direct or indirect attempt to conceal, harbor, or shield from detection any … alien," regardless of whether such disclosure violates federal law, including 8 U.S.C. § 1324(a). A161. The condition broadly defines "federal law enforcement information" as any "records or information compiled for any law enforcement purpose" and "communicated or made available, by the federal government, to a State or local government entity, -agency, or -official, through any means" including "through any database," "any law enforcement partnership or -task-force," "any request for law enforcement assistance or -cooperation," or "any deconfliction (or courtesy) notice of planned, imminent, commencing, continuing, or impending federal law enforcement activity." *Id.*

Finally, the "additional certification" condition requires grant applicants to submit an executed "Certifications and Assurances by the Chief Executive of the Applicant Government," including a certification that

> neither the jurisdiction nor any entity, agency, or official of the jurisdiction has in effect, purports to have in effect, or is subject to or bound by, any law, rule, policy, or practice that would apply to the 'program or activity' to be funded … that would or does—(a) impede the exercise by federal officers of authority under 8 U.S.C. § 1357(a); or (b) impede the exercise of federal officers of authority relating to 8

> U.S.C. § 1226(a) or (c), 8 U.S.C. § 1231(a), or 8 U.S.C.
> § 1366(1) or (3).

A98; R.52-13. *See also* A168 (grantee "may not obligate, expend, or draw down any award funds" before submitting "properly-executed" certifications). Each of the four statutes enumerated in the additional certification condition describes immigration-related powers and responsibilities of the Attorney General and other federal officials tasked with enforcing the immigration laws (e.g., the authority of immigration officers to conduct interrogations under 8 U.S.C. § 1357(a)(1) and the power of the Attorney General to detain certain inadmissible or deportable aliens under 8 U.S.C. § 1226(c)). None of those four statutes sets forth obligations of any State or local government.

## C. The Federal Government Continues Its Campaign Against "Sanctuary Cities" Outside The Byrne JAG Program

The FY2018 conditions are part of a broader pattern of federal government hostility toward so-called "sanctuary cities." Apparently in response to the fact that "some law enforcement agencies no longer honor ICE detainers or limit ICE's access to their detention facilities," ICE has increased its practice of targeting noncitizens for immigration enforcement actions in courthouses. R.52-10 at 4-5. As a result, noncitizens who enter courthouses on official business—to seek protective orders or custody of their children, to appear for minor traffic violations or criminal infractions, or even

to appear as witnesses—are being apprehended with increasing frequency. R.55-3; R.55-4; R.55-5; R.55-9.  Local jurisdictions, including Chicago, understand that the increasing threat of enforcement action is deterring noncitizens from serving as witnesses, appearing for hearings or trials, or otherwise engaging with the criminal justice system.  R.55-9; *see also* R.55-5. As a result, they worry that ICE's policy of courthouse arrests will in fact serve to undermine public safety.  R.55-9.

If Chicago were to accept FY2018 Byrne JAG funds, however, the harboring condition threatens to prevent it from taking any action to notify City residents, even in generalized ways that pose no risk to law enforcement, about the prospect of ICE enforcement at courthouses—or even merely from protesting the targeting of those locations.  Again, that condition broadly prohibits sharing any "federal law enforcement information" that might be construed as even "indirect[ly]" "shield[ing] from detection" non-citizens who lack lawful immigration status.  A161.

Moreover, even aside from any conditions imposed on Byrne JAG funding, Chicago's policy of working with instead of against noncitizens in matters of local law enforcement has placed it squarely within the federal government's crosshairs.  Senior federal officials are advocating radical new interpretations of 8 U.S.C. § 1324, the criminal anti-harboring provision, that threaten criminal liability for City officials who comply with the WCO.  For

- 13 -

example, then-Acting Director of ICE Thomas Homan opined in a
congressional hearing that "sanctuary cities that knowingly shield and
harbor an illegal alien in their jail and don't allow us access [commit] a
violation of 8-USC-1324."  R.55-10 at 2.  He announced that he had "asked
the Department of Justice to look at this," including whether it could "charge
some of these sanctuary cities with violating federal law."  *Id.*  Around the
same time, then-Secretary of Homeland Security Kirstjen Nielsen asked the
Department of Justice to examine the possibility of bringing criminal charges
against elected officials in so-called "sanctuary cities."  R.55-11.

### D.    Chicago Is Forced To Sue To Enjoin The FY2018 Conditions

Chicago's FY2018 Byrne JAG application included an addendum
informing the Department of Justice that it would not comply with the six
immigration-related conditions identified in the FY2018 solicitation because
they could not be lawfully applied to Chicago following the district court's
summary-judgment decision in the FY2017 litigation.  R.55-12; R.55-13.
When the Department of Justice began announcing grant recipients in the
fall of 2018, Chicago was not among the listed grantees.  R.55 at 1.  By
October 12, 2018, the Department of Justice had issued 752 Byrne JAG local
awards, totaling almost $59 million, but still had not acted on Chicago's
application.  *Id.*  The unexplained delay in issuing Chicago's FY2018 award

hindered the City's planning and budgeting for much needed law-enforcement initiatives, including the mobile-device forensic analysis technology, record digitization, and advanced interview and investigation training it hoped to use the FY2018 funds to support. *See* R.53 at 5-6.

Chicago was therefore forced to bring this case to obtain its FY2018 Byrne JAG award. Chicago filed a complaint on October 12, 2018, challenging the FY2018 conditions under the Administrative Procedure Act ("APA"). R.1; *see also* A38-A49; A53-A54 (Counts I, II, III, and VII as alleged in amended complaint). Chicago separately challenged the constitutionality of 8 U.S.C. §§ 1373 and 1644 under the Tenth Amendment's anti-commandeering principle, A49-A51 (Count IV), and sought declaratory judgments that Chicago's WCO complied with sections 1373 and 1644, A51-A53 (Count V), as well as with 8 U.S.C. § 1324, A53-A54 (Count VI).[2]

Not until three weeks *after* Chicago filed suit, on November 2, did the Department of Justice announce that, in light of the ongoing litigation, it would not "use or enforce" the notice, access, section 1373 compliance, section 1644 compliance, or additional certification conditions against Chicago. R.55-14; R.44-1 at 90. The Department made no such representation with respect

---

[2] Chicago later amended its complaint to add an eighth count challenging the appointment of Matthew Whitaker as Acting Attorney General following the resignation of Attorney General Sessions. A55-A56.

to the harboring condition, and explicitly reserved the right to enforce "any or all" of the conditions "[i]f the posture of the pending litigation changes." R.44-1 at 90.

### E.    The District Court Permanently Enjoins All Six Challenged Conditions

The Attorney General moved to dismiss Chicago's challenges to the harboring condition and the additional certification condition (Counts I, II, III, and VII), its challenge to the appointment of former Acting Attorney General Whitaker (Count VIII), and its request for a declaration regarding its compliance with 8 U.S.C. § 1324 (Count VI).  R.42; R.44.  The City responded with a motion for partial summary judgment on its claims that all six FY2018 conditions are *ultra vires* and unlawful under the APA (Counts I, II, III, and VII) and its claim that sections 1373 and 1644 are unconstitutional.  R.48; R.50.

The district court granted in part and denied in part both the City's motion for summary judgment and the Attorney General's motion to dismiss. SA1-SA52.  The district court granted summary judgment in Chicago's favor on Counts I and II.  SA26.  Noting that the "four repeat conditions"—the notice, access, section 1373, and section 1644 conditions—"are materially identical" to those already enjoined, SA23-SA24, the district court relied upon its prior decision and this Court's FY2017 preliminary-injunction decision to

hold that those conditions were *ultra vires* and violated constitutional separation-of-powers principles, SA24-SA27.

Turning to the new conditions, the district court held that neither the Byrne JAG statute (including 34 U.S.C. § 10153(a)(5)(D)) nor 34 U.S.C. § 10102(a)(6) authorized the Attorney General to impose the additional certification condition. SA29-SA31. The Attorney General's reliance on section 10102(a)(6) was foreclosed by this Court's prior holding that the provision did not independently authorize the Attorney General to impose conditions on Byrne JAG funds. SA29-SA30; SA36-SA37. The district court also rejected the Attorney General's argument that section 10153(a)(5)(D) authorized the condition. SA30-SA31. The district court reasoned that section 10153(a)(5)(D) requires grant applicants to certify compliance with "applicable Federal laws," but that none of the statutes listed in the additional certification condition apply to Chicago. *Id.* Rather, those statutes "apply only to the federal government and as a result, the Attorney General cannot require Chicago to 'comply' with them." SA31.

As to the harboring condition, the district court first rejected the Attorney General's argument that 34 U.S.C. § 10102(a)(2) and (a)(4)—which require the Assistant Attorney General to "maintain liaison" with state governments in matters "relating to criminal justice"—provide authority for the condition, reasoning that the plain language of those sections pertains to

"bilateral communications" and cannot be read to delegate "authority to impose funding conditions related to immigration enforcement."  SA32-SA34. The district court relied in part on this Court's prior holding that 34 U.S.C. § 10102(a)(1)-(a)(5) address only "the communication and coordination duties of the Assistant Attorney General," and that it would be "inconceivable" given the structure and nature of the Byrne JAG statute that Congress intended section 10102(a) to confer broad authority to condition Byrne JAG funds on compliance with federal immigration policy.  SA34-SA35 (quoting *City of Chicago*, 888 F.3d at 285-286).  The district court also rejected the Attorney General's argument that 34 U.S.C. § 10102(a)(6) authorized the harboring condition, again relying on this Court's prior holding that section 10102(a)(6) does not itself grant any power to "impose any conditions on any grants."  SA35-SA37 (quoting *City of Chicago*, 888 F.3d at 285).

The district court also granted summary judgment on Count IV, declaring that 8 U.S.C. §§ 1373 and 1644 violate anti-commandeering principles and are therefore unconstitutional under the Tenth Amendment. SA26-SA27; SA49.

Having set aside all of the FY2018 conditions as unlawful, the district court dismissed as moot Counts III and VII, in which Chicago asserted other grounds on which those conditions were unlawful, namely because they

violate the Spending Clause and are arbitrary and capricious.  SA37-SA38.
The district court also dismissed as moot Count V, in which Chicago sought a
declaration that it complies with sections 1373 and 1644, reasoning that
judgment on that count was rendered moot by the court's declaration that
sections 1373 and 1644 are unconstitutional.  SA38.

The district court denied the Attorney General's motion to dismiss
Count VI, which sought a declaratory judgment that the WCO complies with
8 U.S.C. § 1324.  SA11-SA17.  But because Chicago did not move for
summary judgment on Count VI, the district court noted that that count
remained in the case.  SA17.  Chicago and the Attorney General subsequently
agreed to dismiss Count VI without prejudice, and the district court's final
order did so.  SA51-SA52.[3]

To effectuate its ruling on Chicago's motion for summary judgment, the
district court permanently enjoined enforcement of all six challenged
conditions.  SA39-SA46; SA50-SA51.  That injunction extends to all future
grant years because, although the district court had "hope[d] that DOJ would
not re-impose its unlawful conditions," SA44, the Department's commitment
to those conditions meant that "an injunction regarding all future JAG funds

---

[3]     In light of the appointment of William Barr as Attorney General, the
district court also dismissed Count VIII, which challenged Whitaker's
appointment, with prejudice.  SA11.

is the only way to prevent Chicago from being forced to litigate the Byrne

JAG funding conditions every year," SA44-SA45.  The Department does not

challenge that holding.  As in FY2017, the district court also held a

"nationwide" injunction necessary to remedy the scope of the Attorney

General's violation.  SA45-SA46.  Nevertheless, in light of this Court's

expected decision regarding the propriety of the scope of the FY2017

injunction, the district court stayed its injunction except with respect to

Chicago.  SA46.

## SUMMARY OF ARGUMENT

**I.**     This Court has already held that the primary statutory provision

that the Attorney General relies upon for the notice, access, additional

certification, and harboring conditions, 34 U.S.C. § 10102(a), does little more

than assign "ministerial" duties and functions to the Assistant Attorney

General for the Office of Justice Programs.  None of the duties enumerated in

that section confers wide-ranging authority to impose whatever grant

conditions the Attorney General believes would further his policy aims.

Section 10102(a)(6) is nothing more than a "catch-all provision" that

reiterates the Assistant Attorney General's authority to exercise the powers

elsewhere vested in or delegated to him.  The Attorney General claims that a

clause at the end of section 10102(a)(6) specifying that the referenced powers

"includ[e] placing special conditions on all grants" gives him freestanding

authority to place whatever conditions he likes on any grant. This Court has already rejected that interpretation of section 10102(a)(6), and the Attorney General has not identified any reason to revisit that conclusion. And, in any event, the challenged conditions also exceed the scope of section 10102(a)(6) because they are not "special conditions."

The Attorney General's reliance on 34 U.S.C. § 10102(a)(2) and (a)(4) fares no better. Those provisions, unlike section 10102(a)(6), do not even mention "conditions" or "grants"; the Attorney General's argument is that Congress somehow implied the power to withhold funds from formula grant recipients by instructing him to communicate and cooperate with State and local governments. The statutory text contains no support for this reading, and the statutory structure affirmatively contradicts it.

**II.**     Nor has Congress authorized either the section 1373 or section 1644 compliance conditions (which the Attorney General concedes are either identical or materially identical to the section 1373 compliance condition at issue in the FY2017 appeal). Those provisions are unlawful for two distinct reasons. First, neither provision is an "applicable Federal law[]" under 34 U.S.C. § 10153(a)(5)(D), because neither applies specifically to federal grants or grantees. And second, because both provisions violate the Tenth Amendment's anti-commandeering principles, they are not "applicable" to Chicago or any other jurisdiction.

**III.**  Finally, the Attorney General restates his arguments from the FY2017 appeal that the program-wide injunction is unconstitutional.  That position, if accepted, would upset decades of case law from the Supreme Court and the courts of appeals recognizing Article III courts' inherent authority to award remedies tailored to the violation at issue.  For example, as early as the 1920s, the Supreme Court affirmed an injunction prohibiting enforcement of an unlawful state law throughout the entire state—not just as to the plaintiffs in that case.  Moreover, the Attorney General's position would eradicate the distinction between facial and as-applied challenges.  It would also effectively invalidate the APA's direction to the federal courts to "set aside" unlawful agency action.  No principle rooted in Article III or equitable practice requires such a result.

## ARGUMENT

## I.  THE NOTICE, ACCESS, ADDITIONAL CERTIFICATION, AND HARBORING CONDITIONS ARE UNLAWFUL

As this Court previously held, "the Executive Branch" has no "inherent authority … to condition the payment" of Byrne JAG "funds on adherence to its political priorities." *City of Chicago v. Sessions*, 888 F.3d 272, 283 (7th Cir. 2018).  Instead, any such "authority must originate from Congress," the branch of our federal government to which the Constitution assigns "[t]he

power of the purse." *Id.*; *accord id.* at 295 (Manion, J., concurring); *City of Philadelphia v. Attorney Gen. of U.S.*, 916 F.3d 276, 279 (3d Cir. 2019).

In search of authority to impose four of his conditions (the notice, access, additional certification, and harboring conditions), the Attorney General relies almost exclusively on a statute, 34 U.S.C. § 10102(a), that this Court construed in the prior appeal in this litigation. Now, as before, the broad authority that the Attorney General seeks to read into section 10102(a) conflicts with that statute's plain text and is "inconsistent with the goal of the [Byrne JAG] statute to … provid[e] flexibility to state and local governments." *City of Chicago*, 888 F.3d at 285, 287. As this Court has already recognized, section 10102(a) enumerates largely "ministerial" "duties and functions of the Assistant Attorney General for the Office of Justice Programs." *Id.* at 284. It grants no independent authority to "abrogate the entire distribution scheme" that Congress "precisely describe[d]" and "strictly circumscribed" in the Byrne JAG statute. *Id.* at 286.

A.    **Section 10102(a)(6) Does Not Authorize The Conditions**

This Court has already rejected the Attorney General's lead argument in favor of the notice, access, additional certification, and harboring conditions (*see* Barr Br. 21-22) that 34 U.S.C. § 10102(a)(6) confers upon the Assistant Attorney General independent authority to impose on federal grant recipients any condition he sees fit. *See City of Chicago*, 888 F.3d at 284-287.

- 23 -

The Attorney General has identified no sound basis to revisit that
conclusion here.  The many flaws in the Attorney General's unbounded
reading of section 10102(a)(6) are set forth in Chicago's briefing in the
consolidated appeal regarding the FY2017 conditions (*see* Chicago FY2017
Br. 36-41), and the decisions of this Court and the Third Circuit, which
unanimously rejected the Attorney General's reading, *see City of Chicago*, 888
F.3d at 284-287; *City of Philadelphia*, 916 F.3d at 287; *accord City of Los
Angeles v. Barr*, 941 F.3d 931, 946-953 (9th Cir. 2019) (Wardlaw, J.,
concurring in the judgment).  In brief, section 10102(a)(6) is merely "a catch-
all provision at the end" of a "list of otherwise-ministerial powers," *City of
Chicago*, 888 F.3d at 285, 287, that clarifies and reiterates the Assistant
Attorney General's authority to "exercise such other powers and functions as
may be vested in the Assistant Attorney General pursuant to this chapter or
by delegation of the Attorney General, including placing special conditions on
all grants, and determining priority purposes for formula grants," 34 U.S.C.
§ 10102(a)(6).  The "including" clause at the end of section 10102(a)(6) simply
"set[s] forth a subcategory of the types of powers and functions that the
Assistant Attorney General may exercise when vested in the Assistant
Attorney General either by the terms of this chapter or by delegation of the
Attorney General." *City of Chicago*, 888 F.3d at 285; *accord id.* at 295
(Manion, J., concurring in part).  To read that clause, as the Attorney

General does, as an independent grant of the sweeping authority to "impose any conditions on the grants at will" is "untenable" in light of the statute's plain text, "inconsistent with the goal of the statute," and "defies reason" in light of the statute's context. *Id.* at 285-287.

The Attorney General's sole response is to argue that this Court's reading of section 10102(a)(6) would render the statute's "including" clause superfluous. Barr Br. 21. As Chicago has previously explained, that contention ignores the plain meaning of the word "including": "Whatever follows the word 'including' is a subset of whatever comes before[.]" *Epsilon Elecs., Inc. v. U.S. Dep't of Treasury*, 857 F.3d 913, 922 (D.C. Cir. 2017). Every "including" clause is thus somewhat superfluous to the extent that it serves to "'illustrat[e],'" rather than perform independent substantive work. *Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 459-460 (7th Cir. 2006); *see also* Chicago FY2017 Br. 37-38.

Moreover, the Attorney General and the dicta in the Ninth Circuit decision on which he relies are mistaken that this plain-text reading of "including" "deprives the 2006 amendment to § 10102(a)(6) [which added the "including" clause] of any meaning." Barr Br. 21 (quoting *City of Los Angeles*, 941 F.3d at 939). That assertion hinges on the premise that no other statutory provision gave "the Attorney General or the Assistant AG authority to place 'special conditions'" on grants. *City of Los Angeles*, 941 F.3d at 939.

- 25 -

That view is inconsistent with other statutory provisions that existed as of 2006 and that explicitly conferred authority to impose conditions on grants.

The 1988 Act that created the Bureau of Justice Assistance, for example, directed the Assistant Attorney General to establish discretionary grant programs under the Bureau of Justice Assistance, "on terms and conditions determined by the [Assistant Attorney General]." *City of Los Angeles*, 941 F.3d at 950 (Wardlaw, J., concurring) (quoting 34 U.S.C. § 10142(2)); *accord* Pub. L. No. 100-690, § 402(2), 102 Stat. 4181, 4328 (1988). That same law also established the Office for Victims of Crime, headed by a Director who reports to the Assistant Attorney General, and authorized that Director to provide grant funds to assist crime victims "on terms and conditions determined by the Director." 34 U.S.C. § 20111(c)(3), Pub. L. No. 100-690, § 1411(c)(3), 102 Stat. at 4420-4421. The broad conditioning authority granted by these provisions "clearly includes the [more limited] authority to impose special conditions." *City of Los Angeles*, 941 F.3d at 952 (Wardlaw, J., concurring). The "including" clause added to section 10102(a)(6) by the 2006 Act simply "makes clear that the Attorney General can delegate such authority to the Assistant Attorney General, and that exercising such authority is part of the Assistant Attorney General's 'duties and functions.'" *Id.*

In any event, as the Ninth Circuit majority correctly recognized, section 10102(a)(6) also cannot authorize any of the Attorney General's immigration conditions because they are not "special conditions."[4]  "Special conditions" is a term of art in the grantmaking context, which federal agencies have long used to refer to conditions that address unique performance concerns presented by individual "'high-risk' grantees"—not policy-driven conditions applied uniformly to all grant recipients.  *See City of Los Angeles*, 941 F.3d at 940-941 (quoting 28 C.F.R. § 66.12); Allen, *Federal Grant Practice* § 25:1 (2019 ed.).  At the time Congress adopted section 10102(a)(6), Department of Justice regulations defined "high-risk grantee" as a grantee that, for example, has "a history of unsatisfactory performance" or is "not financially stable"; suitable "special conditions" could include "[r]equiring additional, more detailed financial reports" or "[a]dditional project monitoring."  28 C.F.R. § 66.12 (superseded in 2014).  And, the uniform regulation that the Department of Justice adopted to supplant 28 C.F.R. part 66, 2 C.F.R part 200, replaces the phrase "special conditions" with "specific conditions," further demonstrating that the established regulatory meaning of the term is

---

[4]     The Attorney General has abandoned the argument that he made in the consolidated appeal that section 10102(a)(6)'s reference to "determining priority purposes for formula grants" authorizes the challenged conditions, and so any such argument is forfeited for purposes of this appeal.  *See* Sessions FY2017 Br.  35-36.

far narrower than the Attorney General contends.  *See Federal Awarding Agency Regulatory Implementation of Office of Management and Budget Uniform Administrative Requirements, Cost Principles, and Audit Requirements of Federal Awards*, 79 Fed. Reg. 75,871, 75,882 § 200.207 (Dec. 19, 2014).

"[W]hen Congress employs a term of art" (here, the phrase "special conditions"), "it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken" (here, the regulations that otherwise addressed "special conditions"). *FAA v. Cooper*, 566 U.S. 284, 292 (2012) (internal quotation marks omitted); *see also Bragdon v. Abbott*, 524 U.S. 624, 645 (1998).  "Special conditions" are therefore limited to those conditions intended to address risks presented by individual grantees—not generally applicable grant conditions intended to enlist local governments in the enforcement of federal immigration law.[5]

---

[5]     The cases cited in this paragraph also demonstrate the flaws in the Attorney General's contention (Barr Br. 22) that Congress would have had no reason to pass legislation recognizing and drawing upon the regulatory definition of "special condition."  As *Cooper* and *Bragdon* demonstrate, Congress often legislates against a regulatory backdrop, and that backdrop can play a critical role in understanding congressional intent and statutory meaning.

**B.**    **Sections 10102(a)(2) And (a)(4) Do Not Authorize The Harboring Condition**

The Attorney General also strains (Barr Br. 23-24) to locate authority for the harboring condition in two provisions assigning the Assistant Attorney General responsibility to "maintain liaison with the executive and judicial branches of the Federal and State governments in matters relating to criminal justice" and "maintain liaison with … State and local governments … relating to criminal justice."  34 U.S.C. § 10102(a)(2), (a)(4).  The Attorney General's attempt "to discover in a long-extant statute an unheralded power" to impose conditions on formula grants must be "greet[ed] … with a measure of skepticism," *Utility Air Regulatory Group v. EPA*, 573 U.S. 302, 324 (2014).  Such skepticism is particularly warranted here, because the Attorney General's interpretation of "maintain liaison" is unsupported by the text or structure of the statute, inconsistent with the strictly circumscribed nature of the Byrne JAG formula grant program, and rightly has been rejected by every court to consider the issue.

1.    The text of sections 10102(a)(2) and (a)(4) cannot bear the weight that the Attorney General asks it to hold.  Unlike section 10102(a)(6), which at least refers to "conditions" and "grants," sections 10102(a)(2) and (a)(4) nowhere mention any power to impose any conditions on any grants or grant programs, let alone on a formula grant like the Byrne JAG.  The Attorney

General's argument is instead that such power is somehow implicit in the term "maintain liaison," because "liaison" means "communication for establishing and maintaining mutual understanding or cooperation." Barr Br. 24 (citing Merriam-Webster). The meaning of "liaison," however, is not in dispute; the Attorney General's dictionary definition is entirely consistent with the district court's conclusion that "maintain liaison" means "maintain[ing] bilateral communications or act[ing] as a point of contact with state and local governments." SA33; *see also City & Cnty. of San Francisco v. Sessions*, 372 F. Supp. 3d 928, 944 (N.D. Cal. 2019) (same). Congress's instruction that the Assistant Attorney General should facilitate communication does not also empower him to do so by whatever means he deems necessary. The Assistant Attorney General is perfectly able to fulfill his responsibility to communicate with and disseminate information regarding criminal justice topics to various institutions and entities without withholding formula grant funding that Congress specifically commanded be disbursed to local governments. That power should therefore not be implied.

Indeed, this Court in the prior appeal recognized the modest scope of sections 10102(a)(2) and (a)(4). Sections 10102(a)(1)-(5), this Court explained, merely "address the communication and coordination duties of the Assistant Attorney General." *City of Chicago*, 888 F.3d at 285. These are largely "ministerial" responsibilities that "all deal with the AAG's power to

disseminate criminal justice information and coordinate with various agencies and officials." *City of Philadelphia*, 916 F.3d at 288; *accord City of Los Angeles*, 941 F.3d at 943 n.14 (section 10102(a) "outline[s]" the AAG's "administrative duties"); *City & Cnty. of San Francisco*, 372 F. Supp. 3d at 944.  No different than section 10102(a)(6), the other "duties and powers" listed in sections 10102(a)(1)-(5) do not include "a sweeping power to impose *any* conditions on *any* grants." *City of Chicago*, 888 F.3d at 285.

2.    The Attorney General's expansive reading of "maintain liaison" also cannot be squared with the structure of the Byrne JAG program itself, for reasons this Court has already recognized.  The Byrne JAG program "imposes precise limits on the extent to which the Attorney General can deviate" from the formula imposed by Congress.  *City of Chicago*, 888 F.3d at 286.  "[I]t is inconceivable that Congress would have anticipated that the Assistant Attorney General could abrogate the entire distribution scheme" by imposing his own conditions.  *Id.*; *see also City of Philadelphia*, 916 F.3d at 285-286; *City of Los Angeles*, 941 F.3d at 942-943.

The Attorney General argues that the harboring condition is justified because bilateral communications may break down "without assurances that sensitive information will be kept confidential."  Barr Br. 24.  That may be true.  But, as the Attorney General must apparently be reminded, he may impose conditions on grants only if authorized by Congress to do so.  The

phrase "maintain liaison" simply does not evince congressional intent to allow him or others working for him to impose substantive conditions on a formula grant.  "Congress is unlikely to alter a statute's obvious scope and division of authority through muffled hints."  *Gonzales v. Oregon*, 546 U.S. 243, 274 (2006).

      3.     In all events, the "harboring condition goes far beyond the authority that the Attorney General claims to have derived from §§ 10102(a)(2) and (4)."  SA34.  Both provisions speak not to "information … relat[ing] to federal law enforcement operations" (Barr Br. 24), but more narrowly to "matters relating to *criminal* justice," 34 U.S.C. § 10102(a)(2) (emphasis added); *see also id.* § 10102(a)(4) ("relating to criminal justice"). Yet, the harboring condition applies broadly to "records or information compiled for *any* law enforcement purpose" and prohibits disclosures related to any "direct or *indirect*" attempt to harbor "*any* alien," *regardless* of whether such disclosure violates federal criminal law.  A161 (emphases added).  Of course, most immigration enforcement is *civil*, not criminal, in nature.  *E.g.*, R.52-9 (setting forth ICE's policy for conducting "civil immigration enforcement actions" in courthouses).  And as written, the harboring condition "'has no boundary' and would presumably [be] up for interpretation by the AAG."  SA34 (quoting *City & Cnty. of San Francisco*, 372 F. Supp. 3d at 945).  It could, for example, prohibit the City from publicly objecting to

reports of increased civil immigration enforcement activities at schools, hospitals, or courthouses.  *See supra* pp. 12-13.  "Such sweeping authority is hardly implicit in the AAG's responsibility to communicate with and disseminate criminal justice information to various state and local entities." SA34.

### C.    To The Extent The Attorney General Relies On Section 10153(a)(4), It Does Not Authorize The Additional Certification Condition, Either

In a passing parenthetical (Barr Br. 22), the Attorney General suggests that 34 U.S.C. § 10153(a)(4) authorizes the additional certification condition "to the extent that any active impeding takes the form of withholding information."  Whatever the Attorney General means by this vague half-sentence is insufficient to preserve an argument based on section 10153(a)(4). And in any event, section 10153(a)(4) in no way supports the additional certification condition.  Section 10153(a)(4) provides that grant applications shall include "[a]n assurance that … the applicant shall maintain and report data, records, and information (*programmatic and financial*) as the Attorney General may reasonably require."  34 U.S.C. § 10153(a)(4) (emphasis added). Information relevant to the exercise by federal officers of authority under or relating to various federal immigration statutes is neither "financial" nor "programmatic" information within the meaning of the Byrne JAG statute. While the Byrne JAG statute does not define "programmatic," it does

enumerate the kinds of "programs" for which Byrne JAG funds may be used, including law enforcement, crime prevention, and drug treatment. *See id.* § 10152(a)(1). "Given the use of the word 'program' elsewhere in the same statutory scheme, the term 'programmatic' in § 10153(a)(4) is best read to refer to a program or programs supported by Byrne JAG funding as outlined in § 10152(a)(1), such as a particular law enforcement program or a drug treatment program." *City of Los Angeles*, 941 F.3d at 944. "Accordingly, § 10153(a)(4) merely requires an applicant to maintain and report information relating to the programs funded by the Byrne JAG award." *Id.* at 945; *accord City of Philadelphia*, 916 F.3d at 285; Chicago FY2017 Br. 40-41. It does not authorize the additional certification condition, which has nothing to do with the specific programs that Chicago sought to fund in FY2018.[6]

---

[6]    The Attorney General has not revived his argument below that 34 U.S.C. § 10153(a)(5)(D) (requiring grantees to "comply with all provisions of this part and all other applicable Federal laws") authorizes the additional certification condition. That argument has therefore been forfeited on appeal. In any event, section 10153(a)(5)(D) does not authorize the additional certification condition, because not one of the statutes addressed in the additional certification is "applicable" to Chicago. Each of those statutes applies only to the federal government.

## II.    SECTIONS 1373 AND 1644 ARE UNCONSTITUTIONAL AND THE CORRESPONDING COMPLIANCE CONDITIONS ARE UNLAWFUL

Chicago's brief in the FY2017 appeal fully explains why section 1373 violates the Tenth Amendment's anti-commandeering principle and why, in any event, the section 1373 compliance condition is unlawful.  *See* Chicago FY2017 Br. 16-35.  These same arguments apply equally to section 1644 and the section 1644 compliance condition, each of which is "materially identical" to section 1373 and the section 1373 compliance condition, as both the district court (SA24-SA27) and the Attorney General (Barr Br. 20) recognize.

In brief, the compliance conditions are unlawful for two, independent reasons.  *First*, sections 1373 and 1644 cannot qualify as "applicable Federal laws" under 34 U.S.C. § 10153(a)(5)(D), because neither statute applies specifically to federal grants or grantees.  *See* Chicago FY2017 Br. 18-23; *accord City of Philadelphia*, 916 F.3d at 288-291.  *Second*, sections 1373 and 1644 are unconstitutional under Tenth Amendment's anti-commandeering principles, and thus not "applicable Federal law" at all.  *See* Chicago FY2017 Br. 24-35.  Federal laws that "compromise the structural framework of dual sovereignty," *Printz v. United States*, 521 U.S. 898, 932 (1997), are unconstitutional, and sections 1373 and 1644 do just that by wresting from state and local policymakers the ability to manage their own personnel in a manner consistent with their "traditional[]" prerogative to decide "how to

- 35 -

devote law enforcement resources," *City of Chicago*, 888 F.3d at 282.  Such
unconstitutional laws cannot be enforced directly on Chicago, and so do not
"appl[y]" to Chicago in any sense of that word.  *See* Chicago FY2017 Br. 24-
26.

The compliance conditions can be struck down on either of these
grounds.  The Attorney General is wrong (Barr Br. 20-21) that this case
"presents no basis for addressing the constitutionality of Acts of Congress"
outside of their application as grant conditions.  For one thing, and to
reiterate, a statute cannot be fairly regarded as "applicable Federal law" if it
is unconstitutional to enforce the law independent of the Byrne JAG
program; an unconstitutional law is not in any way a "law" that "appl[ies]" to
Chicago.  *See Branch v. Smith*, 538 U.S. 254, 281 (2003) (plurality opinion)
(terms like "state law," when used to incorporate a separate body of law, do
not import provisions that are otherwise unconstitutional).  But in any event,
in Count IV of its amended complaint in this case, Chicago directly
challenged the constitutionality of sections 1373 and 1644 and sought a
declaration that both statutes were unconstitutional, separate and apart
from Chicago's request for relief from the compliance conditions.  *See* A49-
A51 (¶¶ 160-163, 165); A56 (seeking separate declaration that the conditions
are unlawful *and* that sections 1373 and 1644 are unconstitutional).  The
district court granted Chicago's motion for summary judgment on Count IV,

*see* SA47, and separately declared (as Chicago had requested) that sections 1373 and 1644 are unconstitutional under the Tenth Amendment (*see* SA49), and that the compliance conditions are unlawful (*see* SA51).  The constitutionality of sections 1373 and 1644 is therefore squarely presented here.

## III.  PROGRAM-WIDE INJUNCTIVE RELIEF IS NECESSARY AND APPROPRIATE TO REMEDY THE SCOPE OF THE ATTORNEY GENERAL'S VIOLATION

The nature and scope of an equitable remedy is determined not simply by the party seeking relief but by the nature and scope of the violation to be remedied.  *See Missouri v. Jenkins*, 515 U.S. 70, 88 (1995); *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979).  A violation with "systemwide impact" therefore warrants "a systemwide remedy."  *Dayton Bd. of Educ. v. Brinkman*, 433 U.S. 406, 420 (1977).  The Attorney General's novel arguments to the contrary lack support and would upset decades of Supreme Court and court of appeals caselaw recognizing courts' inherent Article III and equitable authority to craft remedies that match the shape and scope of the violations they aim to correct.  *See* Chicago FY2017 Br. 45-61.

Courts have long enjoined enforcement of unconstitutional laws against parties other than those who themselves sought relief.  In *Pierce v. Society of Sisters of the Holy Names of Jesus and Mary*, 268 U.S. 510 (1925), for example, the Supreme Court affirmed an injunction prohibiting *any*

enforcement of an Oregon law against *anyone*, not just against the two plaintiffs challenging the law.  *Id.* at 536; *Society of Sisters of the Holy Names of Jesus and Mary v. Pierce*, 296 F. 928, 938 (D. Or. 1924) (issuing preliminary injunction "restraining the defendants from threatening or attempting to enforce the act complained against").  The Supreme Court was fully aware of the state-wide consequences of its order, recognizing that the "practical result of enforcing the act under consideration would be destruction of appellees' primary schools, *and perhaps all other private primary schools … within the state of Oregon*."  268 U.S. at 534 (emphasis added).  *See also* Sohoni, *The Lost History of the 'Universal' Injunction*, 133 Harv. L. Rev. 920, 961 (2020).

Indeed, to now restrict courts' authority to order system-wide relief for system-wide violations would wholly negate the distinction between facial and as-applied challenges.  After all, the distinction between these challenges is what determines "the breadth of the remedy employed by the Court," *Citizens United v. Federal Election Commission*, 558 U.S. 310, 331 (2010); "[w]here the 'claim and the relief that would follow … reach beyond the particular circumstances of the [] plaintiffs,' '[t]hey must … satisfy [the] standards for a facial challenge to the extent of that reach.'"  *Center for Individual Freedom v. Madigan*, 697 F.3d 464, 475 (7th Cir. 2012) (alterations in original) (quoting *Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010)).

And where a plaintiff succeeds in a facial challenge—that is, where a plaintiff establishes that the "violation inheres in the terms of the statute, not its application"—"[t]he remedy is necessarily directed at the statute itself and *must* be injunctive and declaratory; a successful facial attack means the statute is wholly invalid and cannot be applied *to anyone*."  *Ezell v. City of Chicago*, 651 F.3d 684, 698 (7th Cir. 2011); *accord CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 624 (3d Cir. 2013); *Eide v. Sarasota Cnty.*, 908 F.2d 716, 722 (11th Cir. 1990).

Moreover, the Attorney General's proposed limitation on Article III authority would invalidate one of the key remedies under the Administrative Procedure Act.  The APA expressly authorizes courts to "set aside" unlawful agency action.  5 U.S.C. § 706(2); *see also* Chicago FY2017 Br. 42-44.  When agency action is "set aside," it is "vacate[d]," "annul[led]," "render[ed] void," "deprive[d] of force," and "ma[d]e of no authority or validity."  *Action on Smoking & Health v. Civil Aeronautics Bd.*, 713 F.2d 795, 797 (D.C. Cir. 1983) (per curiam).  And where the challenged agency action is unlawful on a program-wide basis, the APA requires that action to be "set aside" on a program-wide basis.  *See Harmon v. Thornburgh*, 878 F.2d 484, 495 n.21 (D.C. Cir. 1989) ("When a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed.").  As the Supreme

Court has recognized, a single adversely affected plaintiff can "of course" challenge final agency actions that apply "across the board" and thereby "affect[]" the "entire" agency program. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 890 n.2 (1990). This is precisely the relief that the district court granted in this case: It "set aside" the program-wide agency action that it had held unlawful. SA50.

Finally, no equitable bar precludes program-wide relief in this case. *See* Chicago FY2017 Br. 54-61. Courts have long exercised their equitable power to reach beyond the parties to a particular suit. Traditionally, courts sitting in equity "permit[ted] one or several plaintiffs to sue 'on behalf of all others similarly situated,' and accepting the suit as 'representative' of all, render[ed] a decision on the theory that the other class members [were] before the court through representation." McLaughlin, *Mystery of the Representative Suit*, 26 Geo. L.J. 878, 890 (1938). To invoke that equitable jurisdiction—itself rooted in the interest of "avoid[ing] multiplicity"—a plaintiff needed only allege that those not before the court were similarly situated. *Id.* at 890-892. Moreover, the absent parties, while benefiting from a court's order, were not always bound by it. *See id.* at 891 n.114; Hazard, Jr. et al., *An Historical Analysis of the Binding Effect of Class Suits*, 146 U. Pa. L. Rev. 1849, 1924-1938 (1998). Historically, equitable judgments thus could look quite similar to the injunction the district court issued here, which

benefits all Byrne JAG recipients subjected to the Attorney General's

uniformly unlawful conditions.[7]

## CONCLUSION

The judgment of the district court should be affirmed.

---

[7]     The Attorney General did not dispute below that the Department's
stubborn insistence on imposing the same unlawful conditions year after year
entitled Chicago to injunctive relief extending to future grant years and not
just FY2018.  *See* R.85-1 at 3 (agreed final order restraining Attorney
General from imposing the challenged conditions in FY2018, FY2019, or "any
other future program year").  And he again fails to challenge that relief on
appeal.  Any challenge to the forward-looking relief that the district court
granted is therefore doubly forfeited.

Respectfully submitted,

/s/ Benna Ruth Solomon

JAMIE S. GORELICK
DAVID W. OGDEN
ARI HOLTZBLATT
MOLLY JENNINGS
JUSTIN BAXENBERG
ALLISON SCHULTZ
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6000

DEBO P. ADEGBILE
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

January 21, 2020

MARK A. FLESSNER
*Corporation Counsel of the City of Chicago*
BENNA RUTH SOLOMON
*Deputy Corporation Counsel*
MYRIAM ZRECNZY KASPER
ANDREW W. WORSECK
*Chief Assistant Corporation Counsel*
JUSTIN A. HOUPPERT
SCOTT D. SPEARS
*Senior Assistant Corporation Counsel*
30 N. LaSalle Street, Suite 800
Chicago, IL 60602
(312) 744-7764

RONALD S. SAFER
MATTHEW C. CROWL
NICK KAHLON
RILEY SAFER HOLMES & CANCILA LLP
Three First National Plaza
70 West Madison Street, Suite 2900
Chicago, IL 60602
(312) 471-8700

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), the undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) and Cir. R. 32(c).

1.     Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(f), the brief contains 8,995 words.

2.     The brief has been prepared in proportionally spaced typeface using Microsoft Word 2016 in 13-point Century Schoolbook font.  As permitted by Fed. R. App. P. 32(g)(1), the undersigned has relied upon the word-count feature of this word processing system in preparing this certificate.

/s/ Benna Ruth Solomon
BENNA RUTH SOLOMON
Deputy Corporation Counsel
30 N. LaSalle Street, Suite 800
Chicago, IL  60602
(312) 744-7764

January 21, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of January, 2020, I electronically

filed the attached Brief for Plaintiff-Appellee with the Clerk of Court for the

United States Court of Appeals for the Seventh Circuit by using the CM/ECF

system.  I certify that service for all CM/ECF registered users will be

accomplished by the CM/ECF system.

/s/ Benna Ruth Solomon
BENNA RUTH SOLOMON
Deputy Corporation Counsel
30 N. LaSalle Street, Suite 800
Chicago, IL  60602
(312) 744-7764