**No. 19-3290**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

CITY OF CHICAGO,

Plaintiff-Appellee,

v.

WILLIAM P. BARR, ATTORNEY
GENERAL OF THE UNITED STATES,

Defendant-Appellant.

On Appeal from the United States District Court for the
Northern District of Illinois, No. 18-cv-06859 (Leinenweber, J.)

**REPLY BRIEF FOR APPELLANT**

JOSEPH H. HUNT
  *Assistant Attorney General*

JOHN R. LAUSCH, JR.
  *United States Attorney*

MARK B. STERN
DANIEL TENNY
BRAD HINSHELWOOD
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7256*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-7823*

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................... 1

ARGUMENT ................................................................................................................. 2

    I.    The Public Disclosure Condition Is Valid ................................................. 2

    II.   Chicago's New Arguments For Nationwide Relief Are Unavailing ............................................................................................................. 5

CONCLUSION ........................................................................................................... 11

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**                                                                                                         **Page(s)**

*Armstrong v. Exceptional Child Ctr., Inc.*,
  135 S. Ct. 1378 (2015) ..............................................................................................9

*Califano v. Yamasaki*,
  442 U.S. 682 (1979) ............................................................................................ 2, 5

*City of Chicago v. Sessions*,
  888 F.3d 272 (7th Cir. 2018) ............................................................................ 3, 10

*City of Los Angeles v. Barr*,
  941 F.3d 931 (9th Cir. 2019) ..................................................................................3

*City of Philadelphia v. Attorney Gen.*,
  916 F.3d 276 (3d Cir. 2019) ....................................................................................3

*Dayton Bd. of Educ. v. Brinkman*,
  433 U.S. 406 (1977) ................................................................................................6

*Department of Homeland Sec. v. New York*,
  No. 19A785, 2020 WL 413786 (S. Ct. Jan. 27, 2020) ................................... 2, 8, 10

*Gill v. Whitford*,
  138 S. Ct. 1916 (2018) .................................................................................... 1, 5, 6

*Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*,
  527 U.S. 308 (1999) ................................................................................................9

*Hecht Co. v. Bowles*,
  321 U.S. 321 (1944) ................................................................................................6

*Los Angeles Haven Hospice, Inc. v. Sebelius*,
  638 F.3d 644 (9th Cir. 2011) ..................................................................................6

*Madsen v. Women's Health Ctr., Inc.*,
  512 U.S. 753 (1994) ............................................................................................ 1, 5

*McKenzie v. City of Chicago*,
    118 F.3d 552 (7th Cir. 1997) .................................................................................. 5, 6

*Missouri v. Jenkins*,
    515 U.S. 70 (1995) ..........................................................................................................6

*Pierce v. Society of Sisters of the Holy Names of Jesus & Mary*,
    268 U.S. 510 (1925) ........................................................................................................8

*United States v. National Treasury Emps. Union*,
    513 U.S. 454 (1995) ........................................................................................................7

*United States v. Stevens*,
    559 U.S. 460 (2010) ........................................................................................................7

*Virginia Soc'y for Human Life, Inc. v. FEC*,
    263 F.3d 379 (4th Cir. 2001) .........................................................................................6

*Weinberger v. Romero-Barcelo*,
    456 U.S. 305 (1982) ........................................................................................................6

**Statutes:**

5 U.S.C. § 706(2) ....................................................................................................................6

34 U.S.C. § 10102(a)(2) ................................................................................................... 2, 5

34 U.S.C. § 10102(a)(4) ................................................................................................... 2, 5

**Rule:**

Fed. R. Civ. P. 23 ...................................................................................................................9

**Other Authorities:**

Samuel Bray, *A Response to The Lost History of the "Universal" Injunction*,
    Yale J. Reg. Notice & Comment (Oct. 18, 2019) ......................................................9

Mila Sohoni:
    *A Reply to Bray's Response*, Yale J. Reg. Notice & Comment (Oct. 18, 2019) ...............9
    *The Lost History of the "Universal" Injunction*, 133 Harv. L. Rev. 920 (2020) ...................9

**INTRODUCTION AND SUMMARY OF ARGUMENT**

Much of Chicago's brief reprises arguments that were fully aired in the consolidated FY 2017 appeal. Rather than offering this Court duplicative briefing on those points, we respectfully refer the Court to our opening and reply briefs in the consolidated appeal. We focus here only on the few new arguments Chicago raises here.

Chicago objects to a condition prohibiting it from disseminating confidential federal law enforcement information. Chicago acknowledges that, if state and local law enforcement agencies cannot be trusted to keep sensitive federal law enforcement information confidential, "bilateral communications may break down." Br. 31. But the City apparently believes that it is free to broadcast such confidential and sensitive information to the public while simultaneously demanding federal law enforcement grant funds. Congress did not compel the Department of Justice to distribute grant funds in these circumstances.

Although Chicago attempts to provide additional support for the district court's entry of a nationwide injunction, it still properly does not assert that such broad relief is necessary to remedy its own injury—the basic principle governing injunctive relief as a matter of both Article III and basic equity. *See Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018) ("A plaintiff's remedy must be tailored to redress the plaintiff's particular injury."); *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (injunctive relief should be "no more burdensome to the defendant than necessary to provide complete

relief to the plaintiffs" (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)). The City's new arguments fare no better than its old ones, instead underscoring both the lack of any "basis in traditional equitable practice" for such broad relief and the inequitable asymmetry of nationwide injunctions. *Department of Homeland Sec. v. New York*, No. 19A785, 2020 WL 413786, at *2 (S. Ct. Jan. 27, 2020) (Gorsuch, J., concurring).

## ARGUMENT

### I. The Public Disclosure Condition Is Valid

Pursuant to the public-disclosure condition, grant recipients promise not to publicly disclose sensitive federal law enforcement information in an attempt to "conceal, harbor, or shield from detection" either a fugitive from justice, or certain categories of aliens who have violated immigration laws. While this condition (like the others) is a valid exercise of the Assistant Attorney General's authority under section 10102(a)(6), it is also separately and independently justified as an exercise of that official's authority to "maintain liaison" with state and local governments in matters relating to "criminal justice." 34 U.S.C. § 10102(a)(2), (4). As our opening brief explained, when state and local governments are willing to disclose sensitive law enforcement information, including to an operation's targets and to those who would harbor them, cooperation (*i.e.* "liaison") with the federal government breaks down and thus is not maintained. Opening Br. 23-24.

Chicago does not dispute that we have properly interpreted the term "liaison." Br. 29-30. The City also does not dispute that federal liaisons with state and local governments are difficult to "maintain" when those governments refuse to promise to keep sensitive information confidential, acknowledging that communication "may break down" in those circumstances. Br. 31. Thus, the fact that sections 10102(a)(2) and (4) do not specifically mention "grants" and "conditions" is hardly dispositive. The Assistant Attorney General can take a number of actions to "maintain liaison," and one chosen method entails using a grant program to encourage entities to keep open the lines of communication.

Chicago is not aided by pointing to brief remarks in this Court's preliminary injunction opinion, and other court of appeals opinions, discussing section 10102 in broad strokes. Indeed, this Court's recognition that section 10102(a) addresses "communication and coordination duties," *City of Chicago v. Sessions*, 888 F.3d 272, 285 (7th Cir. 2018), only underscores the propriety of a grant condition designed to keep the lines of communication open. The Third Circuit similarly agreed that section 10102(a) is about the "power to disseminate criminal justice information and coordinate" with others, *City of Philadelphia v. Attorney Gen.*, 916 F.3d 276, 288 (3d Cir. 2019), a point that was not undermined by its passing description of these powers as "ministerial." And the Ninth Circuit explained that it thought even a "ministerial" duty could include the setting of certain grant conditions. *See City of Los Angeles v. Barr*, 941 F.3d 931, 939-943 & n.14 (9th Cir. 2019) (indicating that section 10102(a) authorizes

3

"ministerial" and "administrative" duties, yet also explaining that the setting of various kinds of grant conditions fell within this description).

Chicago also misses the mark by rehashing its argument that the structure of the Byrne JAG program suggests the Assistant Attorney General has a circumscribed power to set conditions. Br. 31. Even crediting this argument on its own terms, *but see* FY 2017 Reply Br. 4-5, we are not contending that the "maintain liaison" provision authorizes any and all conditions. We are instead contending only that it justifies those conditions designed to maintain the federal government's liaison with state and local governments in matters relating to criminal justice—a test met by only one of the six conditions at issue in this litigation. And more generally, Chicago's suggestion that no source of authority allows the Department of Justice to condition federal funding on a promise not to use confidential law enforcement information to help people actively evade detection by the federal government underscores the implausibility of its conception of the Assistant Attorney General's authority.

Finally, Chicago errs in contending that the public disclosure condition is overbroad. The City notes that sections 10102(a)(2) and (4) only deal with matters "relating to criminal justice," and emphasize that the public disclosure condition (which concerns the disclosure of information used to harbor either a fugitive from justice or an individual violating immigration laws) applies even if Chicago's disclosure would not itself be a criminal act. Br. 32-33. This of course ignores that even if the City's disclosure of information is not criminal, other individuals could easily use the disclosed

4

information to commit criminal harboring violations or other criminal offenses. Prophylactic measures designed to prevent the commission of crimes surely "relat[e] to criminal justice." 34 U.S.C. § 10102(a)(2), (4). In any event, Chicago's refusal to promise confidentiality over sensitive matters can more broadly threaten cooperative relationships, including in criminal justice matters, and the condition seeks to maintain those criminal justice relationships.

## II. Chicago's New Arguments For Nationwide Relief Are Unavailing

Chicago's new arguments regarding the scope of injunctive relief do not address any of the core flaws in Chicago's position. Chicago still does not (and cannot) assert that nationwide relief is necessary to remedy its own injury. That basic premise alone demonstrates that the district court's injunction is overbroad. As the Supreme Court and this Court have explained, Article III requires that "[a] plaintiff's remedy must be tailored to redress the plaintiff's particular injury." *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018); *accord McKenzie v. City of Chicago*, 118 F.3d 552, 555 (7th Cir. 1997) ("[P]laintiffs lack standing to seek—and the district court therefore lacks authority to grant—relief that benefits third parties."). And as an equitable matter, injunctive relief should be "no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)).

Chicago continues to invoke cases that have ordered "systemwide" relief, Br. 37, while ignoring this Court's prior explanation that such cases—which typically involve

5

"reapportionment and school desegregation"—are situations in which relief affecting third parties is actually necessary to provide "effective relief to the plaintiffs." *McKenzie*, 118 F.3d at 555; *see Gill*, 138 S. Ct. at 1930. The cases Chicago cites are paradigmatic examples. *See Missouri v. Jenkins*, 515 U.S. 70 (1995) (school desegregation); *Dayton Bd. of Educ. v. Brinkman*, 433 U.S. 406 (1977) (same).

Chicago's continued reliance on the Administrative Procedure Act, Br. 39-40, likewise refuses to engage with the decisions of other courts rejecting the City's premise, *see Los Angeles Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 660, 664-65 (9th Cir. 2011); *Virginia Soc'y for Human Life, Inc. v. FEC*, 263 F.3d 379, 393-94 (4th Cir. 2001). Although Chicago relies on the APA's language that unlawful agency action "shall" be "set aside," 5 U.S.C. § 706(2), "[n]othing in the language of the APA . . . requires" the exercise of "such far-reaching power" to set aside the action as applied to every affected person nationwide, rather than simply as applied to the plaintiff before the court. *Virginia Soc'y for Human Life*, 263 F.3d at 394. On the contrary, as the Supreme Court explained shortly before the APA was enacted, statutory remedies should be construed consistent with "traditions of equity practice." *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944); *accord Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982) (explaining that courts "do not lightly assume that Congress has intended to depart from established [equitable] principles"). Those principles demonstrate that the nationwide relief here, wholly unnecessary to remedy Chicago's injury, is substantially overbroad.

Chicago likewise errs by asserting that recognizing and enforcing basic limits on equitable power "would wholly negate the distinction between facial and as-applied challenges." Br. 38. While the distinction affects the form of the plaintiff's claim, the standard the plaintiff must satisfy, and the nature of the precedent that can be set, a plaintiff cannot obtain an injunction prohibiting application of the law against third parties merely by styling its claim as a facial challenge. In an as-applied challenge, the plaintiff's entitlement to relief depends solely on whether the law is valid as applied to the particular conduct in which the plaintiff seeks to engage. In a facial challenge, the plaintiff makes a broader allegation that the law is invalid as a general matter. Thus, a plaintiff bringing a facial challenge may obtain relief on the merits without relying upon the particulars of the plaintiff's alleged injury, but that does not mean that the plaintiff is entitled to relief on behalf of parties not before the court. As the Supreme Court has explained in narrowing an overbroad injunction, "although the occasional case requires us to entertain a facial challenge in order to vindicate a party's right not to be bound by an unconstitutional statute, we neither want nor need to provide relief to nonparties when a narrower remedy will fully protect the litigants." *United States v. National Treasury Emps. Union*, 513 U.S. 454, 477-78 (1995) (citation omitted). Indeed, facial challenges frequently arise in the context of a defense to a pending criminal prosecution, where relief is necessarily limited to the particular defendant, *see, e.g.*, *United States v. Stevens*, 559 U.S. 460, 472 (2010), and it would be strange to conclude that the relief available for

the same facial challenge should be different simply because the issue is raised as a pre-enforcement challenge rather than as a defense to an individual prosecution.

Relying on some law review articles, Chicago likewise now asserts that courts have "long enjoined enforcement of unconstitutional laws against parties other than those who themselves sought relief," Br. 37, and "long exercised their equitable power to reach beyond the parties to a particular suit." Br. 40. Yet the only example the City actually identifies, *Pierce v. Society of Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510 (1925), provides no support for this sweeping proposition. In *Pierce*, the Supreme Court affirmed a grant of preliminary injunction that barred enforcement of a law requiring all parents in Oregon to send their children to public schools. The defendants apparently did not contend that the injunction was overbroad, and the Supreme Court did not address the question. That is hardly surprising: the Supreme Court's ruling on the merits necessary resolved the question for everyone in Oregon, rendering any dispute over the proper scope of injunctive relief inconsequential in the circumstances of that case.

All Chicago's fruitless search for historical support demonstrates is that an injunction of the sort it seeks has "little basis in traditional equitable practice." *Department of Homeland Sec. v. New York*, No. 19A785, 2020 WL 413786, at *2 (S. Ct. Jan. 27, 2020) (Gorsuch, J., concurring). And Chicago's attempt to find a case with an unaddressed issue about the scope of relief misses the point in any event. Federal courts' equity jurisdiction is limited to the "system of judicial remedies" applied by "the

High Court of Chancery in England" in 1789. *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 318 (1999). Chicago has never attempted to square the broad relief it seeks with the tools available to courts of equity in 1789, and its suggestion that a particular case involved broad relief in 1925 says nothing about the appropriate scope of equitable authority.*

Chicago's other suggestions are even further afield. Chicago suggests that certain historical principles of equity allowed a party to serve as a "representative" for other similarly situated parties. Br. 40. But Chicago claims no such representative status here. Nor could it: that process is governed by the class action mechanism under Federal Rule of Civil Procedure 23, which the City has chosen not to invoke. "The power of federal courts of equity to enjoin unlawful executive action is subject to express and implied statutory limitation," and Chicago "cannot, by invoking [the court's] equitable powers, circumvent" the class action mechanism. *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1385 (2015).

---

\* As the law review article Chicago cites underscores, the date of the earliest known nationwide injunction is contested. *See* Mila Sohoni, *The Lost History of the "Universal" Injunction*, 133 Harv. L. Rev. 920, 924-25 (2020); Samuel Bray, *A Response to The Lost History of the "Universal" Injunction*, Yale J. Reg. Notice & Comment (Oct. 18, 2019); Sohoni, *A Reply to Bray's Response*, Yale J. Reg. Notice & Comment (Oct. 18, 2019). But the fact that scholars debate whether the first nationwide injunction was in 1913 or 1939 or 1963 simply underscores that it was not a traditional part of equity in 1789.

In any event, Chicago makes no attempt to address the fundamental inequity in its position. Allowing nationwide injunctions circumvents not only the class-action mechanism but also the Supreme Court's admonition that nonmutual collateral estoppel does not apply to the government, allowing any single party to obtain an injunction even if the government successfully fends off other such requests. *See City of Chicago*, 888 F.3d at 296-98 (Manion, J., concurring in part and dissenting in part). This renders litigation "asymmetric," because "[i]f a single successful challenge is enough to stay the challenged rule across the country, the government's hope of implementing any new policy could face the long odds of a straight sweep, parlaying a 94-to-0 win in the district courts into a 12-to-0 victory in the courts of appeal." *New York*, 2020 WL 413786, at *2 (Gorsuch, J., concurring). And it deprives the Supreme Court and the legal system as a whole of "the airing of competing views" occasioned by permitting "multiple judges and multiple circuits to weigh in only after careful deliberation." *Id.* These consequences are especially inappropriate where Chicago has advanced no argument that such broad relief is necessary to remedy its own injury.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed or at least limited to Chicago.

Respectfully submitted,

JOSEPH H. HUNT
   *Assistant Attorney General*

JOHN R. LAUSCH, JR.
   *United States Attorney*

MARK B. STERN
DANIEL TENNY

 *s/ Brad Hinshelwood*
BRAD HINSHELWOOD
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7256*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 514-7823*
   *bradley.a.hinshelwood@usdoj.gov*

FEBRUARY 2020

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Seventh Circuit Rule 32(c) because it contains 2,553 words. This brief also complies with the typeface and type-style requirements of Circuit Rule 32(b) because it was prepared using Microsoft Word 2016 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Brad Hinshelwood*
Brad Hinshelwood

## CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2020, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system. I further certify that I will cause 15 paper copies of this brief to be received by the Clerk within seven days of the Notice of Docket Activity generated upon acceptance of the brief, in compliance with Seventh Circuit Rule 31(b) and ECF Procedure (h)(2).

Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*s/ Brad Hinshelwood*
Brad Hinshelwood